A

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF SUFFOLK

-------------------------------------------------------------------X

ABL ONE, LLC,

                                             Plaintiff,

              -against-

TEIGNMOUTH HALL, LLC; ABL, LLC A/K/A ABL
ONE, LLC; CHRISTOPHER P. QUINN; JOHN DOE
AND MARY DOE, said names being fictitious, it being
the intention of Plaintiff to designate any and all
occupants, tenants, persons or corporations, if any, having
or claiming an interest in or lien upon the premises being
foreclosed herein,

                                        Defendants.

-------------------------------------------------------------------X

Index No.

**VERIFIED COMPLAINT**

The Plaintiff herein, by its Attorneys **PULVERS, PULVERS, THOMPSON & FRIEDMAN, LLP**, complains of the Defendants above named herein and, upon information and belief, alleges as follows:

Plaintiff, ABL ONE, LLC (hereinafter "Plaintiff"), at all times hereinafter mentioned was and still is a duly organized Corporation or Association with offices at 66 Hudson Street, Suite 301, Hoboken, New Jersey 07030.

1.     The object of the instant action is to foreclose a Mortgage securing the premises known as 21 Bridge Lane, Port Jefferson, New York 11777 (hereinafter "Mortgaged Premises"). The Mortgaged Premises is more fully described in Schedule "A" annexed hereto.

2.     On October 16, 2014, Teignmouth Hall, LLC, being indebted to ABL ONE, LLC in the sum of $742,000.00 (hereinafter "Loan Amount"), executed a Note to secure that sum with interest at initial interest rate of 12.000% per annum, payable in successive monthly installments of $4,220.00, due and payable on the first day of each month commencing December 1, 2014 and the final payment to be made November 1, 2015. A copy of the Note is attached hereto as

**Exhibit "A"**.

3.      To secure payment of the obligation described in Paragraph 2, on October 16, 2014, Teignmouth Hall, LLC, executed to ABL One, LLC a Building Loan Mortgage (hereinafter "Mortgage") of even date with said Note, and thereby mortgaged the mortgaged premises as collateral security for the Note. Said Mortgage was recorded in the County Clerk's Office of Suffolk County, on December 10, 2014 in Liber M00022547, Page 850. A copy of the Mortgage is attached hereto as **Exhibit "B"**.

4.      On October 16, 2014, as further security for the indebtedness of Teignmouth Hall, LLC, Christopher P. Quinn (hereinafter "Guarantor") executed a guaranty in favor of ABL One, LLC. Said guaranty provided that in the event Teignmouth Hall, LLC defaults on the mortgage and note, the guarantor will become responsible for all sums due and owing. A copy of the guaranty is attached hereto as **Exhibit "C"**.

5.      In connection with the Building Loan Mortgage, Teignmouth Hall, LLC executed to ABL One, LLC a Building Loan Agreement, making the unadvanced portion of the Loan Amount conditional upon the satisfaction of the provisions set forth therein. A copy of the Building Loan Agreement is attached hereto as **Exhibit "D"**.

6.      In an assignment dated October 16, 2014, Teignmouth Hall, LLC executed a Collateral Assignment of Leases and Rents to ABL One, LLC which assignment was recorded in the County Clerk's Office of Suffolk County on December 10, 2014 in Liber D00012799, Page 417. A copy of the Assignment of Leases and Rents is attached hereto as **Exhibit "E"**.

7.      Plaintiff is in possession of the original note and is therefore, the holder of both the Note and Mortgage.

8.      The mortgage is for a commercial loan, and therefore, neither RPAPL §1304 or

RPAPL §1306 is applicable to the instant action and Plaintiff was not required to comply with the restrictions imposed by said statutes.

9. Where applicable, Plaintiff has complied with Banking Law §§595.

10. That the Mortgage provides that in the case of default in the payment of any principal or interest or any other terms, covenants or conditions of the Mortgage, the holder of the Mortgage could, by notice given to Mortgagor, declare the entire indebtedness secured by the Mortgage immediately due and payable, and that the holder of the Mortgage is empowered to sell the mortgaged premises according to the law. A copy of the notice of demand is attached hereto as **Exhibit "F"**.

11. That the defendant Teignmouth Hall, LLC, defaulted on the mortgage on January 1, 2015 and since that date has failed to comply with the conditions of the Mortgage by failing to pay portions of principal, interest or taxes, assessments, water rates, insurance premiums, escrow and/or other charges.

12. That pursuant to Section 2.01, Subsection II of the Mortgage, Lender may require immediate payment in full of all sums secured by the security instrument if the Borrower(s) fail to pay in full any monthly payment required by said Mortgage within ten days of any installment. As the Borrower(s) defaulted on the Mortgage by failing to pay the monthly payment due on January 1, 2015, Plaintiff herein, by reason of said default, elected that the whole principal sum, together with all unpaid interest and advances made by the Plaintiff, shall now become due.

13. That in order to protect its security, the Plaintiff has paid, or may be compelled to pay during the Pendency of this action, local taxes, assessments, water rates, insurance premiums and other charges assessed to the Mortgaged Premises.

14.     That, pursuant to the Mortgage, the mortgagor promised to pay, in addition to principal and interest, all the additional charges mentioned in the preceding paragraph, and Plaintiff hereby requests that any sums paid by Plaintiff for such purposes, with interest thereon, be added to the sum otherwise due and be deemed secured by the Mortgage and be adjudged to be a valid lien on the Mortgaged Premises.

15.     That there is now due and owing to the Plaintiff under said Note and Mortgage the principal sum of $457,000.00 with interest thereon from December 1, 2014, plus late charges and advances made by the Plaintiff on behalf of the defendants and any other charges due and owing pursuant to the terms of the Note and Mortgage.

16.     Pursuant to Paragraph 4 of the Note, in the event any installment shall become overdue for a period in excess of 10 days, a late charge on the overdue sum may be charged for the purpose of defraying the expense in handling such delinquent payment.

17.     Plaintiff has complied with all conditions precedent, required by the Mortgage, prior to the commencement of this action.

18.     That Defendant Teignmouth Hall, LLC is a named party Defendant to this action because it is the record owner and original obligor under the Bond secured by the Mortgage recorded on December 10, 2014 under Liber M00022547, Page 850.

19.     That Defendant ABL, LLC a/k/a ABL One, LLC is a named party Defendant to this action because it is a possible Subordinate Lienor by virtue of an UCC-1 Financing Statement filed on January 9, 2015, UCC No. U20150000070 given by Teignmouth Hall, LLC, 1303 Main Street, Port Jefferson, NY 11777, to ABL, LLC a/k/a ABL One, LLC, 66 Hudson Street, Suite 301, Hoboken, NJ 07030.

20.     That Christopher P. Quinn is a named party Defendant to this action because he is

a guarantor by virtue of a guaranty executed on October 16, 2014, in favor of ABL One, LLC, which provided that in the event Teignmouth Hall, LLC defaults on the mortgage and note that Christopher P. Quinn would become responsible for all sums due and owing.

21.     That John Doe and Mary Doe are named party Defendants, said names being fictitious, it being the intention of Plaintiffs to designate any and all occupants, tenants, persons or corporations, if any, having or claiming an interest in or lien upon the premises being foreclosed herein.

22.     That each of the above named defendants have or claim to have some interest in, or lien upon, the Mortgaged Premises or some part thereof, which interest or lien, if any, accrued subsequent to the lien of the Plaintiffs mortgage and is subject and subordinate thereto.

23.     That the Plaintiff is now the sole, true and lawful holder of the record of the said Note and is the mortgagee of record or has been delegated the authority to institute a mortgage foreclosure action by the owner and holder of the subject Mortgage and Note; and there have been no prior proceedings, at law or otherwise, to collect or enforce the Note or Mortgage and no such proceedings are currently pending.

24.     The Plaintiff shall not be deemed to have waived, altered, released or changed its election herein by reason of any payment after the commencement of this action of any or all of the defaults mentioned herein and such election shall continue to be effective.

25.     That the Mortgage provides that, in the case of foreclosure, the mortgaged premises may be sold in one parcel and that if the premises consist of more than one parcel, Plaintiff respectfully requests that the Judgment of Foreclosure and Sale provide for the parcels to be sold as one parcel.

26.     The sale of the mortgaged premises under foreclosure herein is subject to any state

of facts that an inspection of the premises would disclose, any state of facts an accurate survey would show, and to covenants, restrictions and easements, if any, of record affecting said mortgaged premises and any violation thereof, any equity of redemption of the United States to redeem the premises within 120 days from the date of sale, prior mortgages and liens of record, if any, any rights of tenants or persons in possession of the subject premises, and to zoning regulations and ordinances of the city, town, or village in which said mortgaged premises lies and any violations thereof.

27.     In the event that the Plaintiff possess any other lien(s) against the mortgaged premises either by way of Judgment, Junior Mortgage or otherwise, Plaintiff requests that such other lien(s) not be merged in Plaintiff's cause(s) of action set forth herein, but that Plaintiff shall be permitted to enforce said other lien(s) and/or seek determination of priority thereof in any independent action(s) or proceeding(s), including, without limitation, any surplus money proceedings.

**WHEREFORE**, Plaintiff demands judgment:

(a)     Adjudging and decreeing the amounts due the Plaintiff for principal, interest, costs, advancements and reasonable attorney's fees, if fees were provided for in the said Mortgage;

(b)     That the Defendants and all persons claiming by, through and under them, or either or any of them, subsequent to the commencement of this action and every other person or corporation whose right, title conveyance or encumbrance is subsequent to or subsequently recorded, may be barred and forever foreclosed of all right, claim, lien or interest, or equity of redemption in and to said mortgaged premises;

(c)     That the said mortgaged premises, or such part thereof as may be necessary to

raise the amounts then due for principal, interest, costs, reasonable attorney's fees, allowances and disbursements, together with any monies advanced and paid, may be decreed to be sold according to law;

(d)     That out of the monies arising from the sale thereof, the Plaintiff may be paid the amounts then due on said Note and Mortgage as herein set forth, with interest upon said amounts from the dates of the respective payments and advances thereof, the costs and expenses of this action, additional allowance, if any, and reasonable attorney's fees, if and as provided for in the Mortgage, rider or other agreement, so far as the amount of such money is properly applicable thereto will pay the same;

(e)     That any of the parties to this action may become a purchaser upon such sale;

(f)     That should the mortgaged premises be sold by foreclosure sale and the proceeds of said sale be insufficient to pay the total debt due plaintiff, the Defendants Teignmouth Hall, LLC and Christopher P. Quinn, unless discharged in bankruptcy, may be adjudged to pay the amount of the deficiency.

(g)     That the United States of America shall have the right of redemption, if applicable;

(h)     That the Plaintiff may have such other or further relief, or both, in the premises as may be just and equitable.

Dated: New York, New York
      April 9, 2015

Megha C. Patel, Esq.
PULVERS,    PULVERS,    THOMPSON    &
FRIEDMAN, LLP
Attorneys for Plaintiff
950 Third Avenue, 11th Floor
New York, New York 10022
T: (212) 471-5199
F: (212) 355-9000

# VERIFICATION

Megha C. Patel, Esq., an attorney admitted to practice in the courts of New York State, hereby affirms under penalty of perjury that:

I am associated with the firm of **PULVERS, PULVERS, THOMPSON & FRIEDMAN, LLP**, the attorneys of record for the Plaintiff in the within action.

I have read the foregoing complaint and know the contents thereof; the same is true to my own knowledge except as to the matters therein stated to be alleged on information and belief, and as to those matters I believe it to be true.

The grounds of my beliefs as to all matters not stated on my own knowledge are books and records in my possession, conversations with officers or employees of Plaintiff or its agents, and the public record.

Dated: April 9, 2015
       New York, New York

_____
Megha C. Patel, Esq.

## SCHEDULE A
## DESCRIPTION OF MORTGAGED PREMISES

ALL that certain plot, piece or parcel of land, situate, lying and being in the Town of Brookhaven, County of Suffolk and State of New York, bounded and described as follows:

BEGINNING at a point in the northerly line of Upper Devon Road where the same is intersected by the dividing line between Plot Nos. 73 and 74 at Monument No. 145-B, as shown on a map of a portion of Belle Terre Estates, filed in the Office of the Clerk of the County of Suffolk on the 3rd day of November 1910, by the File No. 469;

RUNNING THENCE along said dividing line North 03 degrees 55 minutes East one hundred seventy-eight and six-tenths (178.6) feet to the southerly line of High Path at Monument No. 145-B;

THENCE North 03 degrees 55 minutes East thirty-three and five-tenths (33.5) feet to a point in High Path;

THENCE along High Path South 84 degrees 15 minutes East seventy and one-tenth (70.1) feet;

THENCE along said path on a curve to the left having a radius of three hundred forty-six and nine-tenths (346.9) feet and the chord of which curve bears North 87 degrees 48 minutes East and has a length of ninety-nine (99) feet a distance of ninety-nine and threetenths (99.3) feet;

THENCE on a curve to the right having a radius of forty-four and seven-tenths (44.7) feet and the chord of which curve bears South 67 degrees 14 minutes East and has a length of forty-eight and six-tenths (48.6) feet, a distance of fifty-one and three-tenths (51.3) feet to the center line of Bridge Lane;

THENCE along the line of said Lane South 34 degrees 19 minutes East one hundred and nine and two-tenths (109.2) feet;

THENCE along said line of said Lane on a curve to the right having a radius of four hundred and fifty-four and five-tenths (454.5) feet and the chord of which curve bears South 32 degrees 12 minutes East and has a length of thirty-three and seven-tenths (33.7) feet, a distance of thirty-three and seven-tenths (33.7) feet;

THENCE on a curve to the right having a radius of fifty (50) feet and the chord of which curve bears South 24 degrees 55 minutes West and has a length of eighty-one and nine tenths (81.9) feet, a distance ninety-six (96) feet to the center line of Upper Devon Road;

THENCE along said line of said road on a curve to the right having a radius of ten hundred and fifty-two and eight-tenths (1052.8) and the chord of which curve bears South 87 degrees 23 minutes West and has a length of two hundred and seventy-four (274) feet, a distance of two hundred seventy-four and eight-tenths (274.8) feet;

THENCE North 03 degrees 55 minutes East sixteen (16) feet to the point of place or beginning containing within said bounds one and thirty-seven one-hundredths of an acre (1.37 acres) be the same more or less, the said premises being shown on said map as Plot No. 74.

Exhibit A

# BUILDING LOAN NOTE

*copy*

**$742,000.00**                                   **ROCKVILLE CENTRE, NEW YORK**

 

 

**FOR VALUE RECEIVED,** the undersigned, TEIGNMOUTH HALL LLC. a Delaware Limited Liability Company, having an office at  1303 MAIN STREET, PORT JEFFERSON, NEW YORK 11777 (the "Maker") hereby promises to pay to the order of ABL ONE, LLC or to its successors or assigns (the "Payee"), at  66 HUDSON STREET, SUITE 301, HOBOKEN, NEW JERSEY 07030 (, or at such other place as Payee may designate to Maker from time to time in writing, the principal amount of SEVEN HUNDRED FORTY-TWO THOUSAND  and No/100 ($742,000.00) Dollars ("Principal Amount") in legal tender of the United States, on  NOVEMBER 1, 2015(the "Maturity Date"), together with all accrued and unpaid interest thereon.

Maker shall also pay interest on the Principal Amount on a daily basis at a rate of interest equal to  TWELVE percent (12 %") per annum , to be computed on an actual 360-day basis. (i.e., interest for each day during which any of the Principal Amount is outstanding shall be computed at such interest rate, divided by 360), but in no event higher than the maximum rate of interest permitted by applicable law.

Interest shall be payable on DECEMBER 1, 2014 in the amount of $4,220.00, and on the first (1st) day of each month thereafter in arrears on the outstanding principal balance advanced until this Note is paid in full. In the event of any default by Maker in its obligations hereunder and/or any of the documents securing payment of this loan, interest shall accrue at the "Involuntary Rate" (as defined below).

In the event payment provided for in this Note or the Mortgage, shall not be made timely by the tenth (10) day of the month due, a late charge of ten (10) cents for each dollar so overdue shall become immediately due for the purpose of defraying the expenses incident to handling such delinquent payment, and such charge shall be deemed to be part of the debt.

Maker shall be entitled to prepay in whole or in part the Principal Amount at any

time without charge, penalty or premium.

Notwithstanding any other provision of this Note, all payments made hereunder shall be applied first to payment of interest on the principal balance outstanding hereunder from time to time, secondly, to sums payable hereunder or under the Mortgage (hereinafter defined) other than interest and principal, and thirdly to principal.

This Note is secured by a Building Mortgage ("Mortgage") in the Principal Amount of SEVEN HUNDRED FORTY-TWO THOUSAND XX/100 ($742,000.00) DOLLARS on certain real property located at and known by the street address 21 BRIDGE LANE, PORT JEFFERSON, NEW YORK 11777, BLOCK 02.00, LOT 008.000, SUFFOLK County and State of New York , as more fully described in the Mortgage (the "Mortgaged Property"). The Mortgage specifies various defaults upon the happening of which all sums owing on this Note may, at the option of Payee, be declared immediately due *and* payable.

From and after the Maturity Date and from and after any event of default by Maker in its obligations hereunder or any of the other loan documents, a this Note shall bear interest at a rate equal to twenty four percent (24%) per annum ("Involuntary Rate"). Such interest shall be due and payable to Payee on demand.

Maker agrees that it shall be bound by any agreement extending the time or modifying the above terms of payment, made by Payee and the then owners of the property secured by the Mortgage, whether with or without notice to Maker, and Maker shall continue to be liable to pay the amount due hereunder, but with interest at a rate no greater than the interest rate provided for herein, according to the terms of any such agreement of extension and modification.

This Note may not be changed, extended or modified nor may any term or provision hereof be waived, except by an instrument in writing by Maker and Payee.

In the event the indebtedness represented by this Note or any part thereof shall be collected at law or in equity, or in bankruptcy, receivership or any other court proceedings (whether at trial or at the appellate level) or in the event this Note shall be placed in the hands of attorneys for collection upon default, Maker shall pay, in addition to other items provided hereunder, all costs of collection or attempting to collect the amount of this Note, including reasonable attorneys' fees and expenses.

A default by borrower on any loan outstanding with  ABL ONE, LLC., its successors and/or assigns and affiliated companies shall constitute a default on all loans made by TEIGNMOUTH HALL LLC,  its successors and/or assigns and affiliated companies to borrower. In the event of any such default, all sums due on each separate loan will be immediately due and payable in full.

All parties to this Note, whether Maker, principal, surety, guarantor or endorser, hereby waive presentment for payment, demand, protest, notice of protest, notice of dishonor and

all other notices in connection with this Note.

Notwithstanding anything to the contrary contained herein, the obligations of Maker under this Note and all documents securing payment of this Note shall be subject to the limitation that payments of interest shall not be required to the extent that receipt of any such payment by Payee would be contrary to provisions of law applicable to Payee limiting the maximum rate of interest that may be charged or collected by Payee.

Payee shall be entitled to assign all or any portion of its interest in this Note and/or the Mortgage at its sole discretion without notice to Maker, provided that Maker shall continue to make payments required hereunder to Payee until it has received notice of change of address for payments as provided herein.

The Maker irrevocably waives all right to trial by jury in any action, or proceeding arising out of or relating to this Note.

This Note has been delivered in, and shall be construed and enforced in accordance with, the laws of the State of New York.

TEIGNMOUTH HALL LLC

BY:_____ MBR.
CHRISTOPHER P. QUINN, MEMBER.

STATE OF NEW YORK ) ss.:
COUNTY OF NASSAU)

On the 16TH day of OCTOBER in the year 2014, before me, the undersigned, a Notary Public in and for said State, personally appeared CHRISTOPHER P. QUINN personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his capacity, and that by his signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed this instrument.

NOTARY PUBLIC

DOUGLAS VALENTE
Notary Public, State of New York
No. 01VA5003388
Qualified in Suffolk County
Commission Expires October 19, 20 18

Exhibit B

EXHIBIT B





## SUFFOLK COUNTY CLERK
## RECORDS OFFICE
## RECORDING PAGE

Type of Instrument: MORTGAGE
Number of Pages: 29
Receipt Number : 14-0162448
MORTGAGE NUMBER: DF031797

Recorded: 12/10/2014
At: 09:42:40 AM

LIBER: M00022547
PAGE: 850

| District: | Section: | Block: | Lot: |
|---|---|---|---|
| 0201 | 008.00 | 02.00 | 008.000 |

EXAMINED AND CHARGED AS FOLLOWS

Mortgage Amount: $742,000.00

Received the Following Fees For Above Instrument

| | | Exempt | | | Exempt |
|---|---|---|---|---|---|
| Page/Filing | $145.00 | NO | Handling | $20.00 | NO |
| COE | $5.00 | NO | NYS SRCHG | $15.00 | NO |
| Affidavit | $0.00 | NO | Notation | $0.00 | NO |
| Cert.Copies | $0.00 | NO | RPT | $60.00 | NO |
| Mort.Basic | $3,710.00 | NO | Mort.Addl | $2,196.00 | NO |
| Mort.SplAddl | $0.00 | NO | Mort.SplAsst | $1,855.00 | NO |
| | | | Fees Paid | $8,006.00 | |

MORTGAGE NUMBER: DF031797

### THIS PAGE IS A PART OF THE INSTRUMENT
### THIS IS NOT A BILL

JUDITH A. PASCALE
County Clerk, Suffolk County

Number of pages __29__

This document will be public record. Please remove all Social Security Numbers prior to recording.

RECORDED
2014 Dec 10 09:42:40 AM
JUDITH A. PASCALE
CLERK OF
SUFFOLK COUNTY
L N00022547
P 850
DF031797

| Deed / Mortgage Instrument | Deed / Mortgage Tax Stamp | Recording / Filing Stamps |
|---|---|---|

**3** FEES

| | | | 3 | Mortgage Amt. 742,000 |
|---|---|---|---|---|
| Page / Filing Fee | 145 | | | 1. Basic Tax _____ |
| Handling | 20. 00 | | | 2. Additional Tax _____ |
| TP-584 | _____ | | | Sub Total _____ |
| Notation | _____ | | | Spec./Assit. _____ |
| EA-52 17 (County) | _____ | Sub Total 165 | | or |
| EA-5217 (State) | 60 | | | Spec./Add. _____ |
| R.P.T.S.A. | | | | TOT. MTG. TAX 7761 |
| Comm. of Ed. | 5. 00 | | | Dual Town ____ Dual County ____ |
| Affidavit | _____ | | | Held for Appointment _____ |
| Certified Copy | _____ | | | Transfer Tax _____ |
| NYS Surcharge | 15. 00 | Sub Total 80 | | Mansion Tax _____ |
| Other | _____ | Grand Total 245 | | |

The property covered by this mortgage is or will be improved by a one or two family dwelling only.

YES ✓ or NO _____

If NO, see appropriate tax clause on page # _____ of this instrument.

| 4 | Dist. 20 | 2832621 | 0201 00800 0200 008000 | 10 | 5 | Community Preservation Fund |
|---|---|---|---|---|---|---|

Real Property Tax Service Agency Verification

P T S R VIT A 19-NOV-14

Consideration Amount $ _____

CPF Tax Due $ _____

Improved _____
Vacant Land _____

**6** Satisfactions/Discharges/Releases List Property Owners Mailing Address
RECORD & RETURN TO:

ABL ONE, LLC
66 Hudson St
Su. 6301
Hoboken NJ 07030

TD _____
TD _____
TD _____

Mail to: Judith A. Pascale, Suffolk County Clerk
310 Center Drive, Riverhead, NY 11901
www.suffolkcountyny.gov/clerk

| 7 | Title Company Information |
|---|---|
| Co. Name | T. Mcleod Agency |
| Title # | MTG 06149160 |

## Suffolk County Recording & Endorsement Page

This page forms part of the attached __Mtge__ made
by:
(SPECIFY TYPE OF INSTRUMENT)

Teignmouth Hall LLC

TO

ABL One LLC

The premises herein is situated in
SUFFOLK COUNTY, NEW YORK.

In the TOWN of __Brookhaven__

In the VILLAGE __Port Jefferson__
or HAMLET of __Belle Terre__

BOXES 6 THRU 8 MUST BE TYPED OR PRINTED IN BLACK INK ONLY PRIOR TO RECORDING OR FILING.

(over)

# BUILDING LOAN MORTGAGE

DATED: OCTOBER 16, 2014

TEIGNMOUTH HALL LLC.    ("Mortgagor")

1303 MAIN STREET

PORT JEFFERSON, NEW YORK 11777

TO

ABL ONE, LLC.    ("Mortgagee")

ADDRESS: 66 HUDSON STREET, STE 301

HOBOKEN, NEW JERSEY 07030

BUILDING LOAN MORTGAGE AMOUNT: $742,000.00
TAX MAP DESIGNATION: Block: 02.00.    Lot: 008.000
PREMISES: 21 BRIDGE LANE, PORT JEFFERSON, NY 11777
SUFFOLK COUNTY, STATE OF NEW YORK
After recording return to: STEVEN RUBEL, ESQ., 100 MERRICK RD, STE 340W

ROCKVILLE CENTRE, NEW YORK 11570

R + R

AbL One, LLc
66 Hudson St
Sul 301
Hoboken NJ   07030

DManage:1097294.2



# STEWART TITLE
## INSURANCE COMPANY

### SCHEDULE A
*(continued)*

### Description

ALL that certain plot, piece or parcel of land, situate, lying and being in the Town of Brookhaven, County of Suffolk and State of New York, bounded and described as follows:

BEGINNING at a point in the northerly line of Upper Devon Road where the same is intersected by the dividing line between Plot Nos. 73 and 74 at Monument No. 145-B, as shown on a map of a portion of Belle Terre Estates, filed in the Office of the Clerk of the County of Suffolk on the 3rd day of November 1910, by the File No. 469;

RUNNING THENCE along said dividing line north 03 degrees 55 minutes east one hundred seventy-eight and six-tenths (178.6) feet to the southerly line of High Path at Monument No. 145-B;

THENCE north 03 degrees 55 minutes east thirty-three and five-tenths (33.5) feet to a point in High Path;

THENCE along High Path south 84 degrees 15 minutes east seventy and one-tenth (70.1) feet;

THENCE along said path on a curve to the left having a radius of three hundred forty-six and nine-tenths (346.9) feet and the chord of which curve bears north 87 degrees 48 minutes east and has a length of ninety-nine (99) feet a distance of ninety-nine and three-tenths (99.3) feet;

THENCE on a curve to the right having a radius of forty-four and seven-tenths (44.7) feet and the chord of which curve bears south 67 degrees 14 minutes east and has a length of forty-eight and six-tenths (48.6) feet, a distance of fifty-one and three-tenths (51.3) feet to the center line of Bridge Lane;

THENCE along the line of said Lane south 34 degrees 19 minutes east one hundred and nine and two-tenths (109.2) feet;

THENCE along said line of said Lane on a curve to the right having a radius of four hundred and fifty-four and five-tenths (454.5) feet and the chord of which curve bears south 32 degrees 12 minutes east and has a length of thirty-three and seven-tenths (33.7) feet, a distance of thirty-three and seven-tenths (33.7) feet;

THENCE on a curve to the right having a radius of fifty (50) feet and the chord of which curve bears south 24 degrees 55 minutes west and has a length of eighty-one and nine-tenths (81.9) feet, a distance ninety-six (96) feet to the center line of Upper Devon Road;

THENCE along said line of said road on a curve to the right having a radius of ten hundred and fifty-two and eight-tenths (1052.8) and the chord of which curve bears south 87 degrees 23 minutes west and has a length of two hundred and seventy-four (274) feet, a distance of two hundred seventy-four and eight-tenths (274.8) feet;

THENCE north 03 degrees 55 minutes east sixteen (16) feet to the point of place or beginning containing within said bounds one and thirty-seven one-hundredths of an acre (1.37 acres) be the same more or less, the said premises being shown on said map as Plot No. 74.

FOR INFORMATION ONLY, NOT FOR POLICY.

Section: 008.00 Block: 02.00 Lot: 008.000.

Premises being known as:     21 Bridge Lane
                             Port Jefferson, NY 11777

The real property covered by this mortgage is or will be improved by only a one or two family residence or dwelling.

TitleLand Agency, Inc.

## RECITAL

Mortgagor is the owner of the premises described in Schedule "A" hereto to be developed as a One Family Dwelling. In order to finance the construction thereof, Mortgagor has borrowed the Mortgage Amount from Mortgagee pursuant to a building loan agreement between them dated the date hereof and has executed and delivered to Mortgagee its building loan note, dated the date hereof, obligating Mortgagor to pay the Mortgage Amount, or so much thereof as may be advanced in, accordance with the terms of said building loan agreement. The said building loan agreement and note, together with any modifications or amendments thereof, are hereinafter respectively referred to as the "Building Loan Agreement" and the "Building Loan Note".

## CERTAIN DEFINITIONS

Mortgagor and Mortgagee agree that, unless the context otherwise specifies or requires, the following terms shall have the meanings herein specified, such definitions to be applicable equally to the singular and the plural forms of such terms.

"Chattels" means all fixtures, fittings, appliances, apparatus, equipment, machinery and articles of personal property and replacements thereof, other than those owned by lessees, now or at any time hereafter affixed to, attached to, placed upon, or used in any way in connection with the complete and comfortable use, enjoyment, occupancy or operation of the Improvements on the Premises.

"Construction Period" means the period from the date hereof until completion of the improvements.

"Events of Default" means the events and circumstances described as such in Section 2.01 hereof.

"Guarantor" shall mean CHRISTOPHER P. QUINN

"Improvements" means all structures or buildings, and replacements thereof, to be erected or now or hereafter located upon the Premises by Mortgagor, including all plant equipment, apparatus, machinery and fixtures of every kind and nature whatsoever forming part of said structures or buildings.

"Mortgage Amount" means SEVEN HUNDRED FORTY-TWO THOUSAND

XX/100 ($742,000.00) DOLLARS. Premises" means the premises described in

Schedule "A" hereto including all of the easements, rights, privileges and

appurtenances (including air rights) thereunto belonging or in anywise appertaining,

and all of the estate, right, title, interest, claim or demand whatsoever of Mortgagor therein and in the streets and ways adjacent thereto, either in law or in equity, in possession or expectancy, now or hereafter acquired.

All terms of this Mortgage which are not defined above shall have the meaning set forth elsewhere in this Mortgage.

## GRANTING CLAUSE

NOW, THEREFORE, Mortgagor, in consideration of the premises and in order to secure the payment of both the principal of, and the interest and any other sums payable on, the Building Loan Note or this Mortgage and the performance and observance of all the provisions hereof and of the Building Loan Note and Building Loan Agreement, including, without limitation, the payment of any sums advanced by Mortgagee to complete the Improvements to the extent the aggregate of such sums and any other sums expended pursuant hereto exceed the sum of the Mortgage Amount, hereby gives, grants, bargains, sells, warrants, alienates, demises, releases, conveys, assigns, transfers, mortgages, hypothecates, deposits, pledges, sets over and confirms unto Mortgagee, all of its estate, right, title and interest in, to and under any and all of the following described property (the "Mortgaged Property") whether now owned or held or hereafter acquired:

(i) the Premises;

(ii) the Improvements;

(iii) the Chattels;

(iv) all proceeds of the conversion, voluntary or involuntary, of any of the foregoing into cash or liquidated claims, including, without limitation, proceeds of insurance and condemnation awards and any unearned premiums accrued, accruing or to accrue under any and all insurance policies now or hereafter obtained by Mortgagor, and all rights of Mortgagor to refunds of real estate taxes and assessments; and all leases and subleases of the Premises or any part thereof now or hereafter entered into and all right, title and interest of Mortgagor thereunder, including, without limitation, cash or securities deposited thereunder to secure performance by the lessees of their obligations thereunder, whether such cash or securities are to be held until the expiration of the terms of such leases or subleases or applied to one or more of the installments of rent coming due immediately prior to the expiration of such terms, including, the right upon the happening of an Event of Default, to receive and collect the rents thereunder, all in accordance with an Assignment of Rents and Leases of even date herewith from Mortgagor to Mortgagee.

**TO HAVE AND TO HOLD** unto Mortgagee, its successors and assigns forever.

## ARTICLE I

### PARTICULAR COVENANTS, WARRANTIES AND REPRESENTATIONS OF MORTGAGOR

Mortgagor covenants, warrants, represents and agrees as follows:

SECTION 1.01.    Mortgagor warrants that the information provided in the mortgage application, credit statement, financing statement and in other information presented to Mortgagee is true, accurate and complete, in all material respects, and to the best of its knowledge does not omit any material facts, and no material change of the condition of the Land or the financial condition of Mortgagor and Guarantor or any other item therein considered by Mortgagee for the purposes of making this Loan known to Mortgagor have occurred since the date of such application; and no insolvency or bankruptcy proceedings are pending against either Mortgagor or Guarantor.

SECTION 1.02.    Mortgagor warrants that it is the actual record and beneficial owner and holder of marketable title to an indefeasible fee estate in the Premises described in Schedule "A" hereto, subject to no lien, charge or encumbrance except such as are listed as exceptions to title in the title policy insuring the lien of this Mortgage; that it will own the Chattels free and clear of any liens and claims; and that this Mortgage is and will remain a valid and enforceable lien on the Mortgaged Property subject only to the exceptions referred to above. Mortgagor has full power and lawful authority to mortgage the Mortgaged Property in the manner and form herein done or intended hereafter to be done. Mortgagor will preserve such title, and will forever warrant and defend the same to Mortgagee and will forever warrant and defend the validity and priority of the lien hereof against the claims of all persons and parties whomsoever, subject to the foregoing.

SECTION 1.03.    The delivery of this mortgage has been duly authorized by all necessary action on Mortgagor. Mortgagor will, at its sole cost and expense, and without expense to'Mortgagee, do, execute, acknowledge and deliver all and every such further acts, deeds, conveyances, mortgages, assignments, notices of assignment, transfers and assurances as Mortgagee shall from time to time reasonably require, for the better assuring, conveying, assigning, transferring and confirming unto Mortgagee the property and rights hereby conveyed, mortgaged or assigned or intended now or hereafter so to be, or which Mortgagor may be or may hereafter become bound to convey, mortgage or assign to Mortgagee, or for carrying out the intention or facilitating the performance of the terms of this Mortgage, or for filing, registering or recording this Mortgage and, within ten (10). days after demand therefor, will execute and deliver, and hereby authorizes Mortgagee to execute and file in Mortgagor's name, to the extent it may lawfully do so, one or more financing statements, chattel mortgages or comparable security instruments, and

renewals thereof, to evidence more effectively the lien hereof upon the Chattels.

SECTION 1.04.    (a)    Mortgagor forthwith upon the execution and delivery of this Mortgage, and thereafter from time to time, will cause this Mortgage, and any security instrument creating a lien or evidencing the lien hereof upon the Chattels and each instrument of further assurance to be filed, registered or recorded in such manner and in such places as may be required by any present or future law in order to publish notice of and fully protect the lien hereof upon, and the interest of Mortgagee in, the Mortgaged Property.

(b)    Mortgagor will pay all filing, registration or recording fees, and all expenses incident to the execution and acknowledgment of this Mortgage, any mortgage supplemental hereto, any security instrument with respect to the Chattels, and any instrument of further assurance, and all federal, state, county and municipal stamp taxes and other taxes, duties, imposts, assessments and charges arising out of or in connection with the execution and delivery of the Building Loan Note, this Mortgage, any mortgage supplemental hereto, any security instrument with respect to the Chattels or any instrument of further assurance.

SECTION 1.05. Mortgagor will punctually pay the principal and interest and all other sums to become due in respect of the Building Loan Note at the time and place and in the manner specified in the Building Loan Note, according to the true intent and meaning thereof, and without offset, counterclaim or defense thereto, all in any coin or currency of the United States of America which at the time of such payment shall be legal tender for the payment of public and private debts.

SECTION 1.06.    Neither the acceptance hereof, the consummation of the transaction contemplated hereby nor compliance with the terms and provisions hereof or of any loan documents will conflict with or result in the breach of any of the terms, conditions or provisions of Mortgagor's By-Laws and Shareholder agreement, of any law, regulation, order, writ, injunction or decree of any court or governmental authority having jurisdiction over the Project or any agreement or instrument to which Mortgagor is a party or by which any of them are bound, nor shall any of the foregoing result in the creation or imposition of any lien, charge or encumbrance of any nature whatsoever upon any of Mortgagor's property pursuant to the terms of any such agreement or instrument. Mortgagor, will, so long as it is owner of all or part of the Mortgaged Property, do all things necessary to preserve and keep in full force and effect its existence, franchises, rights and privileges as a business or stock corporation, partnership, trust or other entity, as, the case may be, under the laws of the state of its formation and will comply with all regulations, rules, statutes, orders and decrees of any governmental authority or court applicable to it or to the Mortgaged Property or any part thereof.

SECTION 1.07.    (a) Mortgagor, from time to time when the same shall become due and payable, will pay and discharge all taxes of every kind and nature (including real and personal property taxes and income, franchise, withholding, profits and gross receipts taxes), all general and special assessments, levies, permits, inspection and license fees, all water and sewer

rents and charges, and all other public charges whether of a like or different nature, imposed upon or assessed against it or the Mortgaged Property or any part thereof or upon the revenues, rents, issues, income and profits of the Mortgaged Property or arising in respect of the occupancy, use or possession thereof. Mortgagor will, within thirty (30) days after due date of any installment of any imposition, deliver, after request is made by Mortgagee, to Mortgagee, receipts evidencing the payment of all such taxes, assessments, levies, fees, rents and other public charges imposed upon or assessed against it or the Mortgaged Property or the revenues, rents, issues, income or profits thereof.

(b)     At the Mortgagee's request, Mortgagor shall deposit with Mortgagee, such amounts as Mortgagee shall reasonably determine to be necessary to establish a reserve for payment of the items listed in (a) above and Mortgagee may, at its option, require the deposit by Mortgagor, at the time of each payment of any installment of interest or principal under the Note, of an additional amount sufficient to discharge such obligations as and when they become due. The determination of the amounts so payable and of the fractional part thereof to be deposited with Mortgagee, so that the aggregate of such deposits shall be sufficient for this purpose, shall be made by Mortgagee in its reasonable discretion. Such amounts shall be held by Mortgagor in a non-interest bearing account(s) with Mortgagee and applied to the payment of the obligations in respect of which such amounts were deposited or, at Mortgagee's option, to the payment of said obligation in such order or priority as Mortgagee shall determine, on or before the respective dates on which the same or any of them would become delinquent. If one (1) month prior to the due date of any of the aforementioned obligations the amounts then on deposit therefor shall be insufficient for the payment of such obligation in full, Mortgagor within ten (10) days after demand shall deposit the amount of the deficiency with Mortgagee. Nothing herein contained shall be deemed to affect any right or remedy of Mortgagee under any provisions of this Mortgage or of any statute or rule of law to pay any such amount and to add the amount so paid, together with interest, to the indebtedness hereby secured.

(c)     Mortgagor will pay, from time to time when the same shall become due, all lawful claims and demands of mechanics, materialmen, laborers, and others which, if unpaid, might result in, or permit the creation of, a lien on the Mortgaged property or any part thereof, or on the revenues, rents, issues, income and profits arising therefrom and in general will do or cause to be done everything necessary so that the lien hereof shall be fully preserved, at the cost of Mortgagor and without expense to Mortgagee.

(d)     Nothing in this Section 1.07 shall require the payment or discharge of any obligation imposed upon Mortgagor by this Section so long as Mortgagor shall in good faith and at its own expense contest the same or the validity thereof by appropriate legal proceedings which shall operate to prevent the collection thereof or other realization thereof to satisfy the same, .provided that during such contest Mortgagor shall, at the option of Mortgagee, provide security satisfactory to Mortgagee, assuring the discharge of Mortgagor's obligation hereunder and of any additional charge, penalty or expense arising from or incurred as a result of such contest; and provided further, that if at any time payment of any obligation imposed upon Mortgagor by clause

DMamage:1097294.2

(a) above shall become necessary to prevent the delivery of a tax deed or other similar instrument conveying the Mortgaged Property or any portion thereof because of non-payment, then Mortgagor shall pay the same in sufficient time to prevent the delivery of such tax deed or other similar instrument.

SECTION 1.08.    Mortgagor will pay any taxes, except income taxes,. franchise taxes, or taxes of like nature, imposed on Mortgagee by reason of its ownership of the Building Loan Note or this Mortgage.

SECTION 1.09.    (a)    Mortgagor shall keep the Improvements and Chattels insured or shall cause the same to be insured against loss by fire, casualty and such other hazards as maybe specified by Mortgagee for the benefit of Mortgagee. Such insurance shall be written in forms, amounts, and by companies satisfactory to Mortgagee, and losses thereunder shall be payable to Mortgagee pursuant to a standard first mortgage endorsement substantially equivalent to the New York standard mortgage endorsement. The policy or policies of such insurance shall be delivered to Mortgagee: Mortgagor shall give Mortgagee prompt notice of any loss covered by such insurance and Mortgagee shall have the right to join Mortgagor in adjusting any loss in excess of $25,000.00. Except as provided in the following paragraph, any monies received as payment for any loss under any such insurance shall be paid over to Mortgagee to be applied, at Mortgagee's option, either to the prepayment of the Building Loan Note without premium, or to the reimbursement of Mortgagor from time to time for expenses incurred by it in the restoration of the Improvements in the same manner as advances of loan proceeds are made by Mortgagee.

Provided, at Mortgagee's sole discretion, that: (i) the Mortgagor is not in default under this Mortgage, the Building Loan Note or the Building Loan Agreement, (ii) the Improvements contemplated by the Building Loan Agreement are reasonably expected by Mortgagee to be completed by the "Completion Date" set forth in the Building Loan Agreement, and (iii) the Mortgagor, promptly after the insurance claims are settled, proceeds with the restoration, replacement, rebuilding or repair (hereinafter collectively referred to as "Restoration") of the Improvements and Chattels as nearly as possible to the condition they were in immediately prior to such fire or other casualty, then all insurance proceeds received by the Mortgagee, on account of such damage or destruction, less the actual cost, fees and expenses, if any, incurred in connection with the adjustment of the loss, shall be paid by the Mortgagee in accordance with the provisions of the Building Loan Agreement, upon the written request of the Mortgagor, which shall be accompanied by a title company or official search, or other evidence satisfactory to the Mortgagee, showing that there have not been filed with respect to the Premises any vendor's, contractor's, mechanic's, laborer's or materialman's statutory or similar liens which have not been bonded or otherwise discharged of record, except such as will be discharged upon payment of the sum requested.

If the available insurance proceeds less the actual cost, fees and expenses, if any, incurred in connection with the adjustment of the loss, shall be insufficient to pay the entire cost of such Restoration, Mortgagor will promptly pay the deficiency. It is intended that no trust shall be created

by the receipt by the Mortgagee of any proceeds of insurance, but only a debtor-creditor relationship between the Mortgagee and Mortgagor for an amount equal to such proceeds, nor shall there be any obligation on the Mortgagee to pay any interest thereon.

(b)     Mortgagor shall not take out and/or maintain separate insurance concurrent in form or contributing in the event of loss with that required to be maintained under this Section 1.09 unless Mortgagee is included thereon as a named insured with loss payable to Mortgagee under a standard mortgage endorsement of the character above described. Mortgagor shall immediately notify Mortgagee whenever any such separate insurance is taken out and shall promptly deliver to Mortgagee the policy or policies of such insurance.

(c)     If the Premises are located in an area which has been identified by the Secretary of the United States Department of Housing and Urban Development as a flood hazard area, Mortgagor will keep the Improvements insured against loss by floods and mud slides, until all sums secured hereby have been repaid in full, by flood insurance in an amount at least equal to the full amount of the Building Loan Note or the maximum limit of coverage available for the Premises under the National Flood Insurance Act of 1968, as amended by the Flood Disaster Protection Act of 1973, whichever is less.

(d)     Thirty (30) days prior to the expiration date of each policy furnished by the Mortgagor pursuant to this Section 1.09, the Mortgagor will deliver to the Mortgagee, a renewal policy or policies marked "premium paid" or accompanied by other evidence of payment satisfactory to the Mortgagee.

SECTION 1.10.     If Mortgagor shall fail to perform any of the covenants contained herein, Mortgagee may make advances to perform the same on its behalf, and all sums so advanced shall be a lien upon the Mortgaged Property and shall be secured hereby. Mortgagor will repay on demand all sums so advanced on its behalf together with interest thereon at the Involuntary Rate. The provisions of this Section shall not prevent any default in the observance of any covenant contained herein from constituting an Event of Default.

SECTION 1.11.     (a)     The Mortgagor will keep adequate records and books of account in accordance with generally accepted accounting principles or,- if such books are prepared on a cash basis, in a manner such that they fairly present the financial condition of Mortgagor, and will permit the Mortgagee, by its agents, accountants and attorneys, to visit and inspect the Premises and examine its records and books of account and to discuss its affairs, finances and accounts with the Mortgagor, at such reasonable times as may be requested by the Mortgagee.

(b)     Throughout the term of this Mortgage, Mortgagor and Guarantor with reasonable promptness, will deliver to Mortgagee such other information with respect to Mortgagor and Guarantor as Mortgagee may reasonably request from time to time.

(c)     Mortgagor, within three (3) days upon request in person or within five (5)

days upon request by mail, will furnish a written statement, duly acknowledged, of the amount due whether for principal or interest on this Mortgage and whether any offsets, counterclaims or defenses exist against the indebtedness secured hereby. The nature of each such offset, defense or counterclaim shall be set forth in full detail.

SECTION 1.12.    As used herein, the following terms shall have the following meanings:

(a)    "Environment" means any surface or subsurface water, water vapor, surface or subsurface land, air, fish, wildlife, microorganisms and all other natural resources.

(b)    "Environmental Law" means any law, ordinance, rule, regulation or requirement, issued by any federal, state or local governmental or quasi-governmental authority whether now existing or hereinafter enacted, and any judicial or administrative interpretations thereof, regulating the disposal, distribution, generation, handling, manufacture, possession, processing, production, sale, storage, transport, treatment or use of Hazardous Substances or relating to the protection of the Environment.

(c)    "Environmental Permits" mean all permits, licenses, approvals, authorizations, consents or registrations required by any applicable Environmental Law in connection with the ownership, use and/or operation of the Premises, including, without limitation those required for the disposal, distribution, generation, handling, manufacture, possession, processing, production, sale, storage, treatment, transport or use of Hazardous Substances.

(d)    "Hazardous Substance" means any material whatsoever, which is or may potentially be harmful to the health or safety of human or animal life or vegetation, regardless of whether such material be found on or below the surface of the ground, in any surface or underground water, airborne in ambient air or in the air inside of any structure built or located upon or below the surface of the ground, or in any machinery, equipment or inventory located or used in any such structure, including but not limited to, all hazardous materials, hazardous substances, imminently hazardous substances, hazardous wastes, toxic substances, infectious wastes, pollutants and contaminants from time to time defined, listed, identified, designated or classified as such under any Environmental Law regardless of the quantity of any such material.

(e)    "Premises" means the land surface and the entire subsurface of soil, sand, gravel, stone and rock, all surface water and subsurface water, whether flowing or stagnant, the ambient air, and all structures, fixtures and buildings located, situated or erected on the land, and all machinery and equipment located at or in connection with any such structure.

(f)    "Release" means any discharging, disposing, emitting, leaking, pumping, pouring, emptying, injecting, escaping, leaching, dumping or spilling into the Environment (including the abandonment or discarding of barrels, containers and other closed receptacles).

SECTION 1.13. The Mortgagor further represents and warrants that to the best of its knowledge:

(a) Neither the Mortgagor, any existing or prior tenant of the Premises, any prior owner thereof nor any other person is the subject of any civil or criminal investigation or enforcement proceeding, whether administrative or judicial, respecting: (i) any Hazardous Substance or threat of a Release on or affecting the Premises; or (ii) any violation of Environmental Law by the Mortgagor, any existing or prior tenant of the Premises, any prior owner thereof or any other person with respect to or affecting the Premises;

(b) No litigation involving the Premises is pending against the Mortgagor, any existing or prior tenant of the Premises, any prior owner thereof or any other person in any way related to any of the aforementioned persons, or to the best of the Mortgagor's knowledge is any such litigation threatened, which seeks to enjoin, remove or remediate a Release or threatened Release, or which seeks any remedy based upon a violation of any Environmental Law or for any injury to any person, property, animal life or vegetation caused by a Hazardous Substance or which seeks to remove or remediate a Hazardous Substance;

(c) Neither the Mortgagor, any existing or prior tenant of the Premises, any prior owner thereof, or any other person has received any notice from any governmental or quasi-governmental agency with respect to any Hazardous Substance or any threatened Release on or affecting the Premises, or any violation of Environmental Law by any of the aforementioned persons with respect to or affecting the Premises;

(d) There is no environmental condition on or affecting the Premises which is not set forth in the report prepared by the environmental consultant (the "Consultant") prior to the closing of the loan secured by this Mortgage;

(e) The Premises are not currently used, nor have they been used in the past, by the Mortgagor, prior owners, tenants or any other persons in a manner which violates any Environmental Law or which could give rise to liability for Hazardous Substances, nor do conditions exist on or affect the Premises which could violate any such law or give rise to such liability;

(f) There has not been a Release on or affecting the Premises nor is there presently the threat of such a Release; and

(g) The Mortgagor and all tenants of the Premises are in compliance with all Environmental Laws and Environmental Permits affecting the Premises.

SECTION 1.14. The Mortgagor further covenants that:

IMsage:I097294.2

(a)     The Mortgagor shall not use or permit the use of the Premises in a manner which would violate any Environmental Law or give rise to liability for Hazardous Substances, nor shall the Mortgagor cause or permit conditions to exist on or affect the Premises which would violate any such law or give rise to such liability.

(b)     The Mortgagor shall not permit any federal, state or local environmental lien to be levied against the Premises, even if such lien is subordinate to the lien of this Mortgage.

(c)     The Mortgagor shall provide the Mortgagee with copies of any communications with or notices from any governmental or quasi-governmental authority alleging or responding to an allegation that the Premises are not in compliance with any Environmental Law, within (5) days of the Mortgagor's receipt or sending thereof.

(d)     The Mortgagor and all tenants of the Premises shall possess all required Environmental Permits and shall be in compliance with such permits.

(e)     There shall be no Release on or affecting the Premises.

(f)     No asbestos shall exist on the Premises in any form, condition or quantity, except as set forth in the assessment(s) prepared by the Consultant (provided that applicable Environmental Laws as may exist from time to time do not prohibit the existence of the asbestos in such form, condition or quantity).

(g)     The Mortgagor and all tenants of the Premises shall at all times be in compliance with the terms of any asbestos monitoring plan prescribed by the Consultant. Pre-existing non-friable asbestos may not be exposed to conditions under which there is a reasonable likelihood that the asbestos or its covering will become damaged, deteriorated, delaminated or any other conditions under which the asbestos could become friable.

(h)     The Mortgagor and all tenants of the Premises shall comply with any obligations they may have under any Environmental Law affecting the Premises, including but not limited to reporting requirements.

(i)     The Mortgagor shall provide the Mortgagee with a copy of any environmental assessment of the Premises which the Mortgagor may obtain, within ten (10) days of the date when the Mortgagor receives the assessment.

SECTION 1.15.     A breach of any representation or warranty contained in Section 1.13, or covenant contained in Section 1.14 shall be an event of default hereunder after notice by Mortgagee to Mortgagor and thirty (30) days opportunity to cure said default and the Mortgagee shall have all of its right, at its option, to declare the entire principal sum and all interest immediately due and payable. Notwithstanding anything herein to the contrary, no right or period of time to cure, shall be given to the Mortgagor for breach of any covenant, representation or

warranty contained in Section 1.13.

SECTION 1.16. The Mortgagee may, provided that Mortgagee had reasonable cause to conduct such tests as the result of information which indicated that a hazardous condition might exist, cause to be conducted environmental assessments of the Premises and surrounding areas from time to time until the loan secured by this Mortgage shall be repaid in full, as it deems necessary in its sole discretion, such audits and tests to be performed by an environmental consultant chosen by the Mortgagee. The Mortgagor shall pay to the Mortgagee on demand the costs of such audits or tests. Any such environmental assessments shall be considered the property of the Mortgagee, and the Mortgagee shall owe no duty of confidentiality to the Mortgagor with respect to the contents thereof. It is hereby acknowledged by the Mortgagor that the Mortgagee shall not vouch for or assume any responsibility for the scope of detail, contents or accuracy of any such environmental assessment, and that neither the Mortgagor nor any other party shall have any recourse to or claim against the Mortgagee for any act of omission or commission of the environmental consultant. The Mortgagor shall fully cooperate with the environmental consultant in its preparation of the assessment, including, but not limited to responding to questions of the consultant, providing the consultant with unlimited access at reasonable times to the Premises, the books and records of the Mortgagor, and employees of the Mortgagor, and the Mortgagor shall cause all tenants of the Premises to do the same. The Mortgagee may also from' time to time at the expense of the Mortgagor procure the opinion of an attorney competent in environmental law when it believes such an opinion to be reasonably necessary, respecting the environmental condition of the Premises and the terms, conditions, sufficiency of, compliance with the transferability of all existing and/or required Environmental Permits.

In addition, the Mortgagee shall have the right to require, from time to time, a certification by the Mortgagor and any tenants of the Premises that there has been no change in the environmental condition of the Premises. If there has been an asbestos monitoring plan prescribed by the Consultant, the Mortgagor must also from time to time at the request of the Mortgagee show evidence of its compliance therewith.

SECTION 1.17. The Mortgagor shall fully indemnify and hold harmless the Mortgagee, its successors and assigns against: (i) any third party claims involving Hazardous Substances Releases on or affecting the Premises or violation of Environmental Law in any way related to the Mortgagor or the Premises; and (ii) any fines, penalty payments, reasonable attorney's fees, sums paid in connection with any judicial or administrative investigation or proceedings, costs of cleanup assessed by a governmental or quasi-governmental agency, and similar expenditures, that relate in any way to the Mortgagor or the Premises, without regard to whether the Mortgagor would have ultimately been responsible for such third party claims, fines, payments, fees, sums or costs. The foregoing indemnity shall survive payment of the Building Loan Note and satisfaction of this Mortgage. Any amounts which the Mortgagor must pay to the Mortgagee under this paragraph are payable upon demand and, if unpaid, shall bear interest per annum at the default interest rate set forth in the Building Loan Note and such amounts, with interest, shall be added to the indebtedness secured hereby and shall be secured by this Mortgage.

SECTION 1.18.          (a) To Mortgagor's knowledge, there are no actions, suits or proceedings pending or threatened against Mortgagor, or the Premises, the result of which might have a materially adverse effect upon the Premises or Mortgagor's ability to perform under the Loan Documents.

(b)  Mortgagor, immediately upon obtaining knowledge of the institution or pending institution of any proceedings for the condemnation of the Premises (a "Taking") or any portion thereof, will notify Mortgagee thereof. Mortgagee may participate in any such proceedings and may be represented therein by counsel of its selection. Mortgagor from time to time will deliver to Mortgagee all instruments requested by it to permit or facilitate such participation. In the event of such condemnation proceedings, the award or compensation payable is hereby assigned to and shall be paid to Mortgagee. Mortgagee shall be under no obligation to question the amount of any such award or compensation and may accept the same in the amount in which the same shall be paid. The proceeds of any award or compensation so received shall, at the option of Mortgagee, either be applied without premium to the prepayment of the Building Loan Note at the rate of interest provided therein regardless of the rate of interest payable on the award by the condemning authority, or be paid over to Mortgagor from time to time for restoration of the Improvements.

(c)  Provided (i) the Premises and Improvements are capable of restoration, and (ii) the Mortgagor is not in default under this Mortgage or the Building Loan Note beyond any applicable grace period, and (iii) the Mortgagor, promptly after the condemnation award is settled and/or awarded, proceeds with the restoration, replacement, rebuilding or repair (hereinafter collectively referred to as "Restoration") of the Improvements and Chattels as nearly as possible to the condition they were in immediately prior to such Taking, then all awards received by the Mortgagee, on account of such Taking, less the actual cost, fees and expenses, if any, incurred in connection with the adjustment of the loss, shall be paid by the Mortgagee, out of such awards as restoration progresses, as the same may be certified by a licensed engineer approved by Mortgagee, upon the written request of the Mortgagor, which request shall be accompanied by a title company or official search, or other evidence satisfactory to the Mortgagee, showing that there have not been filed with respect to the Premises any vendor's, contractor's, mechanic's, laborer's or materialman's statutory or similar liens which have not been bonded or otherwise discharged of record, except such as will be discharged upon payment of the sum requested.

If the award, less the actual cost, fees and expenses, if any, incurred in connection with the Taking, shall be insufficient to pay the entire cost of such Restoration, Mortgagor will promptly pay the deficiency. It is intended that no trust shall be created by the receipt by the Mortgagee of any proceeds of insurance, but only a debtor-creditor relationship between the Mortgagee and Mortgagor for an amount equal to such proceeds, nor shall there be any obligation on the Mortgagee to pay any interest thereon.

SECTION 1.19.          (a)     Mortgagor will not (i) execute an assignment of the rents or any part thereof from the Premises without Mortgagee's prior written consent, (ii) except

where the lessee is in default thereunder, terminate or consent to the cancellation or surrender of any lease of the Premises or of any part thereof, now existing or hereafter to be made, having an unexpired term of one (1) year or more, provided, however, that any lease may be canceled if promptly after the cancellation or surrender thereof a new lease is entered into with a new lessee having a credit standing, in the judgment of Mortgagee, at least equivalent to that of the lessee whose lease was canceled, on substantially the same terms as the terminated or canceled lease, (iii) modify any such lease so as to shorten the unexpired term thereof or so as to decrease the amount of the rents payable thereunder, (iv) accept prepayments of any installments of rents to become due under such leases, except prepayments in the nature of security for the performance of the lessees thereunder, (v) enter into any leases, lettings or license arrangements affecting the Premises or any part thereof without the written consent and approval of the Mortgagee, which consent shall not be unreasonably withheld or delayed, or (vi) in any other manner impair the value of the Mortgaged Property or the security of this Mortgage.. Mortgagee's consent shall not be required for residential leases entered into by Mortgagor, provided the form of lease has been approved by Mortgagee. Mortgagee's approval of all other leases shall not be unreasonably withheld or delayed.

(b)     Mortgagor will not execute any lease of all or a substantial portion of the Premises except for actual occupancy by the lessee thereunder, and will at all times promptly and faithfully perform, or cause to be performed, all of the covenants, conditions and agreements contained in all leases of the Premises now or hereafter existing, on the part of the lessor thereunder to be kept and performed and will at all times do all things necessary to compel performance by the lessee under each lease of all obligations, covenants and agreements by such lessee to be performed thereunder. If any of such leases provide for the giving by the lessee of certificates with respect to the status of such leases, Mortgagor shall exercise its right to request such certificates within five (5) days after any demand therefor by Mortgagee.

(c)     Each lease or sublease of the Premises, or of any part thereof, shall provide that, in the event of the enforcement by Mortgagee of the remedies provided for by law or by this Mortgage, or in the event of termination of any leasehold estate, the lessee thereunder will, upon request of any person succeeding to the interest of Mortgagor as a result of such enforcement and termination, automatically become the lessee of said successor in interest, without change in the terms or other provisions of such lease, provided, however, that said successor in interest shall not be bound by (i) any payment of rent or additional rent for more than one (1) month in advance, except prepayments in the nature of security for the performance by said lessee of its obligations under said lease but only to the extent such security deposits have been actually delivered to such successor, (ii) any amendment or modification of the lease made without the consent of Mortgagee or such successor in interest and (iii) any credits or offsets to which such lessee shall claim entitlement under the lease. Each lease shall also provide that, within ten (10) days after request by said successor in interest, such lessee shall execute and deliver an instrument or instruments confirming such attornment.

(d)     Mortgagor shall furnish to Mortgagee, within fifteen (15) days after a request by Mortgagee, a written statement containing the names of all lessees of the Premises, the

IManage:1097294.2

terms of their respective leases, and the space occupied and the rentals payable thereunder.

SECTION 1.20    The Mortgaged Property will be provided with adequate sewerage facilities and gas,. electricity, water and other necessary utilities at all times, in compliance with all applicable laws and regulations.

SECTION 1.21.    Mortgagor agrees that in the event of the passage after the date of this Mortgage of any law deducting any lien from the value of land for the purpose of taxation, or changing in any way the laws now enforced for the taxation of mortgages or debts secured by mortgages, or the manner of the collection of any such taxes, so as to affect and lessen the net income on the indebtedness secured by this Mortgage, the whole of the principal sum secured by this Mortgage, together with interest due thereon, shall, at the option of the Mortgagee, become immediately due and payable.

SECTION 1.22.    Mortgagor will, in compliance with Section 13 of the New York Lien Law, receive the advances secured hereby and will hold the right to receive such advances as a trust fund to be applied first for the purpose of paying the cost of the Improvements and will apply the same first to the payment of the cost of such Improvements before using any part of the total of the same for any other purpose.

Mortgagor will indemnify and hold Mortgagee harmless against any loss, liability, cost or expense, including, without limitation, any judgments, attorney's fees, costs of appeal bonds and printing costs, arising out of or relating to any proceeding instituted by any claimant alleging a violation by Mortgagor of any applicable lien law, including, without limitation, any section of Article 3-A of the New York Lien Law.

SECTION 1.23.    Mortgagor has not dealt with any brokers other in connection with this commitment or the loan and based thereon Mortgagor hereby indemnifies and holds Mortgagee harmless from and against any and all claims, including legal fees incurred in defense thereof, which may be made by any person or entity in connection with this commitment or the Loan, whether or not the Loan closes, and under no circumstances is the Mortgagee to be liable in any way for any brokerage fees, commissions or related expenses. These warranties and representations shall survive the closing of the Loan.

SECTION 1.24.    The Mortgagor will not, directly or indirectly, by transfer, mortgage, conveyance or sale of stock, permit, do or suffer the assignment, transfer, sale, conveyance or encumbrance of the Mortgaged Property or any part thereof or any interest therein without the prior written consent of the Mortgagee.

SECTION 1.25.    The Mortgagor agrees that if any action or proceeding be Commenced, excepting an action to foreclose this Mortgage or to collect the indebtedness hereby secured, to which action or proceeding the Mortgagee is made a party by reason of the execution of this Mortgage or the Building Loan Note which it secures, or in which it becomes necessary to

defend or uphold the lien of this Mortgage, all sums paid by the Mortgagee for the expense of any litigation to prosecute or defend the transactions and the rights and lien created hereby (including reasonable attorneys' fees) shall be paid by the Mortgagor together with interest thereof from the date of payment by the Mortgagee at the Involuntary Rate. All such sums paid and the interest thereon shall be immediately due and payable, shall be a lien upon the Mortgaged Property, and shall be secured hereby.

SECTION 1.26.    Mortgagor will not threaten, commit or permit or suffer any waste on the Premises or make any change in the use of the Premises which will in any way increase any ordinary fire or other hazard arising out of construction or operation. Mortgagor will, at all times, maintain the Improvements and Chattels in good operating order and condition and will promptly make, from time to time, all repairs, renewals, replacements, additions and improvements in connection therewith which are needful or desirable to such end. After completion of the Improvements, they shall not be demolished or substantially altered, nor shall any Chattels be removed except where appropriate replacements free of superior title, liens and claims are immediately made of value at least equal to the value of the removed Chattels.

SECTION 1.27. N/A.

SECTION 1.28.    These covenants, warranties and representations shall survive the closing of the loan.

## ARTICLE II

## EVENTS OF DEFAULT AND REMEDIES

SECTION 2.01.    If one or more of the following Events of Default shall happen, that is to say:

(a)    if (i) default shall be made in the payment of any principal, interest or other sums under the Building Loan Note, when and as the same shall become due and payable, whether at maturity or by acceleration or as part of any payment or prepayment or otherwise, in each case, as in the Building Loan Note and this Mortgage provided and such default shall have continued for a period of ten (10) days or (ii) default shall be made in the payment of any tax required hereunder, to be paid by Mortgagor and said default shall have continued for a period of twenty (20) days; or

(b)    if default shall be made in the due observance or performance of any covenant or agreement on the part of Mortgagor hereunder or in the Building Loan Note, the Building Loan Agreement, any guaranty executed by Guarantor or in any other document executed or delivered to Mortgagor in connection with the loan secured hereby, and such default shall have continued for a period of twenty (20) days after notice thereof shall have been given to Mortgagor by Mortgagee or, in the case of such other documents, such shorter grace period, if any, as may be provided for therein, [except that if such default may not be reasonably cured within such time period, and

IMa arg: 1097294.2

Mortgagor shall have commenced work to cure such default and shall be diligently pursuing the cure of same, then Mortgagor shall have an additional period of time reasonable in duration to cure such default. For the purposes of this clause, if any representation made in Section 1.01 hereof shall be incorrect, it shall be deemed to be an Event of Default]; or

(c)    if by order of a court of competent jurisdiction, a trustee, receiver or liquidator of the Mortgaged property or any part thereof, or of Mortgagor shall be appointed and such order shall not be discharged or dismissed within sixty (60) days after such appointment; or

(d)    in the event of any materially adverse change in the aggregate financial conditions of Borrower and/or Guarantor, or if Mortgagor or Guarantor shall file a petition in bankruptcy or for an arrangement or for reorganization pursuant to the Federal Bankruptcy Act or any similar law, federal or state, or if, by decree of a court of competent jurisdiction, Mortgagor shall be adjudicated a bankrupt, or be declared insolvent, or shall make an assignment for the benefit of creditors, or shall admit in any action or proceeding its inability to pay its debts generally as they become due, or shall consent of the appointment of a receiver or receivers of all or any material part of its property; or

(e)    if any of the creditors of Mortgagor shall file a petition in bankruptcy against Mortgagor or for reorganization of Mortgagor pursuant to the Federal Bankruptcy Act or any similar law, federal or state, and if such petition shall not be discharged or dismissed within sixty (60) days from the entry thereof, or shall not appeal therefrom or from the order, decree or process upon which or pursuant to which said judgment was granted, based or entered, and secure a stay of execution pending such appeal; or

(f)    if any of the events enumerated in clauses (c) through (e) of this Section shall happen to Guarantor; or

(g)    if it shall be illegal for Mortgagor to pay any tax referred to herein or if the payment of such tax by Mortgagor would result in the violation of applicable usury laws; or

(h)    if there should occur a default which is not cured within the applicable grace period, if any, under any other mortgage or deed of trust of all or part of the Premises, regardless of whether any such other mortgage or deed of trust is prior or subordinate to this Mortgage; it being further agreed by Mortgagor that an Event of Default hereunder shall constitute an Event of Default under any such other mortgage or deed of trust held by Mortgagee. (This subsection (h) shall not be construed to imply that Mortgagee consents to any junior or senior lien or encumbrance); or

(i)    if Mortgagor shall transfer or agree to transfer, in any manner, either voluntarily or involuntarily, by operation of law or otherwise, all or any portion of the Mortgaged Property, or any interest therein or any transfer of an interest in Mortgagor, or if Mortgagor is a corporation, a transfer of a controlling interest therein (including any air or development rights)

DMamage:1097294.2

without, in any such case, the prior written consent of Mortgagee. Mortgagee may grantor deny such consent in its sole discretion and, if consent should be given, any such transfer shall be subject to this Mortgage and any other documents which evidence or secure the loan secured hereby, and any such transferee shall assume all of Mortgagor's obligations hereunder and thereunder and agree to be bound by all provisions and perform all obligations contained herein and therein. Consent to one such transfer shall not be deemed to be a waiver of the right to require consent to future or successive transfers; or

(j)     If Mortgagor shall encumber all or any portion of the Mortgaged Property, or any interest therein (including any air or development rights) without, in any such case, the prior written consent of Mortgagee. Mortgagee may grant or deny such consent in its sole discretion and, if consent should be given, any such encumbrance shall be subject to this Mortgage and any other documents which evidence or secure the loan secured hereby. Consent to one such encumbrance shall not be deemed to be a waiver of the right to require consent to future or successive encumbrances. As used herein "encumber" shall include, without limitation, the placing or permitting the placing of any mortgage, easement, deed of trust, assignment of rents or other security device; or

(k)     N/A

(1)     in the event Mortgagor, any other entity in which CHRISTOPHER P. QUINN is a principal or Guarantor shall become in default, beyond applicable grace periods, under the terms of any other loan or agreement with Mortgagee; or

(m) N/A

(n)     there shall occur the death of any individual Guarantor.

Then and in every such case: L

N/A

II.     During the continuance of any such Event of Default, Mortgagee, by notice given to Mortgagor, may declare the entire principal of the Note then outstanding (if not then due and payable), and all accrued and unpaid interest thereon, to be due and payable immediately, and upon any such declaration the principal of the Note and said accrued and unpaid interest shall become and be immediately due and payable, anything in the Note or in this Mortgage to the contrary notwithstanding.

III.     During the continuance of any, such Event of Default, Mortgagee personally, or by its agents or attorneys, may enter into and upon all or any part of the Premises, and each and every part thereof, and is hereby given a right and license and appointed Mortgagor's attorney in fact to do so, and may exclude Mortgagor, its agents and servants wholly therefrom; and having

and holding the same, may use, operate, manage and control the Premises and conduct the business thereof, either personally or by its superintendents, managers, agents, servants, attorneys, or receivers; and upon every such entry, Mortgagee, at the expense of the Mortgagor, from time to time, either by purchase, repairs or construction, may maintain and restore the Mortgaged Property, whereof it shall become possessed as aforesaid, and may insure the same, and likewise, from time to time, at the expense of the Mortgagor, Mortgagee may make all necessary or proper repairs, renewals and replacements and such useful alterations, additions, betterments and improvements thereto and thereon as to it may seem advisable; and in every such case Mortgagee shall have the right to manage and operate the Mortgaged Property and to carry on the business thereof and exercise all rights and powers of Mortgagor with respect thereto either in the name of Mortgagor or otherwise as it shall deem best; and Mortgagee shall be entitled to collect and receive all earnings, revenues, rents, issues, profits and income of the Mortgaged Property and every part thereof, all of which shall for all purposes constitute property of Mortgagee, and in furtherance of such right Mortgagee may collect the rents payable under all leases of the Premises directly from the lessees thereunder upon notice to each such lessee that an Event of Default exists hereunder accompanied by a demand on such lessee for the payment to Mortgagee of all rents due and to become due under its lease, and Mortgagor FOR THE BENEFIT OF MORTGAGEE AND EACH SUCH LESSEE hereby covenants and agrees that the lessee shall be under no duty to question the accuracy of Mortgagee's statement of default and shall unequivocally be authorized to pay said rents to Mortgagee without regard to the truth of Mortgagee's statement of the existence of an Event of Default such that the payment of rent by the lessee to Mortgagee pursuant to such a demand shall constitute performance in full of the lessee's obligation under the lease for the payment of rents by the lessee to Mortgagor; and after deducting the expenses of conducting the business thereof and of all maintenance, repairs, renewals, replacements, alterations, additions, betterments and improvements and amounts necessary to pay for taxes, assessments, insurance and other proper charges upon the Mortgaged Property or any part thereof, as well as just and reasonable compensation for the services of all attorneys, independent contractors and agents, clerks, servants and other employees engaged and employed by Mortgagee, Mortgagee shall apply the moneys arising as aforesaid, first, to the payment of the principal of the Note and the interest thereon, when and as the same shall become payable and second, to the payment of any other sums required to be paid by Mortgagor under the Note and/or this Mortgage.

IV. Mortgagee, with or without entry, personally or by its agents or attorneys, insofar as applicable, may:

(1)     sell the Mortgaged Property to the extent permitted and pursuant to the procedures provided by law, and all estate, right, title and interest, claim and demand therein, and right of redemption thereof, at one or more sales as an entity or in parcels or parts, and at such time and place upon such terms and after such notice thereof as may be required or permitted by law; or

(2)     institute proceedings for the complete or partial foreclosure of this Mortgage; or

(3)     take such steps to protect and enforce its rights whether by action, suit or

DMamage:1097294.2

proceeding in equity or at law for the specific performance of any covenant, condition or agreement in the Note or in this Mortgage, or in aid of the execution of any power herein granted, or for any foreclosure hereunder, or for the enforcement of any other appropriate legal or equitable remedy or otherwise as Mortgagee shall elect..

SECTION 2.02. (a) Mortgagee may adjourn from time to time any sale by it to be made under or by virtue of this Mortgage by announcement at the time and place appointed for such sale or for such adjourned sale or sales; and, except as otherwise; provided by any applicable provision of law, Mortgagee, without further notice or publication, may make such sale at the time and place to which the same shall be so adjourned.

(b) Upon the completion of any sale or sales made by Mortgagee under or by virtue of this Article II, Mortgagee, or an officer of any court empowered to do so, shall execute and deliver to the accepted purchaser or purchasers a good and sufficient instrument or instruments conveying, assigning and transferring all estate, right, title and interest in and to the Mortgaged Property sold, and for that purpose Mortgagee may execute all necessary instruments of conveyance, assignment and transfer, and may substitute one or more persons with like power. Any such sale or sales made under or by virtue of this Article II, whether made under the power of sale herein granted or under or by virtue of judicial proceedings or of a judgment or decree of foreclosure and sale, shall operate to divest all estate, right, title, interest, claim and demand whatsoever, whether at law or in equity, of Mortgagor in and to the Mortgaged Property so sold, and shall be a perpetual bar both at law and in equity against Mortgagor and against any and all persons claiming or who may claim the same, or any part thereof from, through or under Mortgagor.

(c) In the event of any sale or sales made under or by virtue of this Article II (whether made under the power of sale herein granted or under or by virtue of judicial proceedings or of a judgment or decree of foreclosure and sale), the entire principal of, and interest on, the Building Loan Note, if not previously due and payable, and all other sums required to be paid by Mortgagor pursuant to this Mortgage, immediately thereupon shall, anything in the Building Loan Note or in this Mortgage to the contrary notwithstanding, become due and payable.

(d) The purchase money proceeds or avails of any sale or sales made under or by virtue of this Article II, together with any other sums which then may be held by Mortgagee under this Mortgage, whether under the provisions of this Article II or otherwise, shall be applied as follows:

FIRST: To the payment of the costs and expenses of such sale, including reasonable compensation to Mortgagee, its agents and counsel, and of any judicial proceedings wherein the same maybe made, and of all expenses, liabilities and advances made or incurred by Mortgagee under this Mortgage, together with interest at on all advances made by Mortgagee, and of all or other charges, except any taxes, assessments or other charges subject to which the Mortgaged Property shall have been sold.

DMsnage:1097294.2

SECOND: To the payment of the whole amount then due, owing or unpaid upon the Building Loan Note for principal and interest, with interest on the unpaid principal at the Involuntary Rate from and after the happening of any Event of Default described in Section 2.01 hereof from the due date of any such payment of principal until the same is paid.

THIRD: To the payment of any other sums required to be paid by Mortgagor pursuant to any provision of this Mortgage or of the Building Loan Note, all with interest at the Involuntary Rate, from the date such sums were or are required to be paid under this Mortgage or the Building Loan Note.

FOURTH: To the payment of the surplus, if any, to whomsoever may be lawfully entitled to receive the same.

(e) Upon any sale or sales made under or by virtue of this Article II, whether made under the power of sale herein granted or under or by virtue of judicial proceedings or of a judgment or decree of foreclosure and sale, Mortgagee may bid for and acquire the Mortgaged property or any part thereof and in lieu of paying cash therefor may make settlement for the purchase price by crediting upon the indebtedness secured by this Mortgage the net sales price after deducting therefrom the expenses of the sale and the costs of the action and any other sums which Mortgagee is authorized to deduct under this Mortgage.

SECTION 2.03. (a) In case an Event of Default described in clause (a) of Section 2.01 hereof shall have happened and be continuing, then, upon written demand of Mortgagee, Mortgagor will pay to Mortgagee the whole amount which then shall have become due and payable on the Building Loan Note, for principal or interest or both, as the case may be, and after the happening of said Event of Default will also pay to Mortgagee on the then unpaid principal of the Building Loan Note, and the sums required to be paid by Mortgagor pursuant to any provision of this Mortgage and/or Building Loan Agreement, and in addition thereto such further amount as shall be sufficient to cover the costs and expenses of collection, including reasonable compensation to Mortgagee, its agents and counsel and any expenses incurred by Mortgagee hereunder. In the event Mortgagor shall fail forthwith to pay such amounts upon such demand, Mortgagee shall be entitled and empowered to institute such action or proceedings at law or in equity as may be advised by its counsel for the collection of the sums so due and unpaid, and may prosecute any such action or proceedings to judgment or final decree, and may enforce any such judgment or final decree against Mortgagor and collect, out of the property of Mortgagor wherever situated, as well as out of the Mortgaged Property, in any manner provided by law, monies adjudged or decreed to be payable with interest thereon at the applicable rate.

(b) Mortgagee shall be entitled to recover judgment as aforesaid either before, after or during the pendency of any proceedings for the enforcement of the provisions of this Mortgage; and the right of Mortgagee to recover such judgment shall not be affected by any entry of sale hereunder, or by the exercise of any other right, power or remedy for the enforcement of the provisions of this Mortgage, or the foreclosure of the lien hereof, and in the event of a sale of the Mortgaged Property, and of the application of the proceeds of sale, as in this property, and of the

DMmage:1097294.2

application of the proceeds of sale, as in this Mortgage provided, to the payment of the debt hereby secured, Mortgagee shall be entitled to enforce payment of, and to receive all amounts then remaining due and unpaid upon, the Building Loan Note, and to enforce payment of all other charges, payments and costs due under this Mortgage, and shall be entitled to recover judgment for any portion of the debt remaining unpaid, with interest. In case of proceedings against Mortgagor and/or Guarantor in insolvency or bankruptcy or any proceedings for its reorganization or involving the liquidation of its assets, then Mortgagee shall be entitled to prove the whole amount of principal and interest due upon the Building Loan Note to the full amount thereof, and all other payments, charges and costs due under this Mortgage, without deducting therefrom any proceeds obtained from the sale of the whole or any part of the Premises, provided, however, that in no case shall Mortgagee receive a greater amount than such principal and interest and such other payments, charges and costs due hereunder from the aggregate amount of the proceeds of the sale of the mortgaged Property and the distribution from the estate of Mortgagor.

(c)     No recovery of any judgment by Mortgagee and no levy of an execution under any judgment upon the Mortgaged property or upon any other property of Mortgagor shall affect in any manner or to any extent, the lien of this Mortgage upon the Mortgaged property or any part thereof, or any liens, rights, powers or remedies of Mortgagee hereunder, but such liens, rights, powers and remedies of Mortgagee shall continue unimpaired as before.

(d)     Any monies thus collected by Mortgagee under this Section 2.03 shall be applied by Mortgagee in accordance with the provisions of clause (d) of Section 2.02 hereof.

SECTION 2.04.     After the happening of any Event of Default and immediately upon the commencement of any action, suit or other legal proceedings by Mortgagee to obtain judgment for the principal of, or interest on, the Building Loan Note and other sums required to be paid by Mortgagor pursuant to any provision of this Mortgage, or of any other nature in aid of the enforcement of the Note or of this Mortgage, Mortgagor will (a) enter its voluntary appearance in such action, suit or proceeding and (b) if required by Mortgagee, not consent to the appointment of a receiver or receivers of the Premises and of all the earnings, revenues, rents, issues, profits and income thereof. After the happening of any Event of Default and during its continuance, and upon the commencement of any proceedings to foreclose this Mortgage or to enforce the specific performance hereof, or in aid thereof, or upon the commencement of any other judicial proceeding to enforce any right of Mortgagee, Mortgagee shall be entitled, as a matter of right, if it shall so elect, without the giving of notice to any other party and without regard to the adequacy or inadequacy of any security for the indebtedness secured hereby, forthwith either before or after declaring the unpaid principal of the Note to be due and payable, to the appointment of such a receiver or receivers.

SECTION 2.05. Notwithstanding the appointment of any receiver, liquidator or trustee of Mortgagor, or of any of its property, or of the Mortgaged Property or any party thereof, Mortgagee shall be entitled. to retain possession and control of all property now or hereafter held under this Mortgage.

SECTION 2.06. No remedy herein conferred upon or reserved to Mortgagee is intended to be exclusive of any other remedy or remedies, and each and every such remedy shall be cumulative, and shall be in addition to every other remedy given hereunder or now or hereafter existing at law or in equity or by statute. No delay or omission of Mortgagee to exercise any right or power accruing upon any Event of Default shall impair any such right or power, or shall be construed to be a waiver of any such Event of Default or any acquiescence therein; and every power and remedy given by this Mortgage to Mortgagee may be exercised from time to time as often as may be deemed expedient by Mortgagee. Nothing in this Mortgage or in the Building Loan Note shall affect the obligation of Mortgagor to pay the principal of, and interest on, the Building Loan Note in the manner and at the time and place therein respectively expressed.

SECTION 2.07. Mortgagor will not at any time insist upon, or plead, or in any manner whatever claim or take any benefit or advantage of any stay or extension or moratorium law, any exemption from execution or sale of the Mortgaged Property or any part thereof, wherever enacted, now or at any time hereafter in force, which may affect the covenants and terms of performance of this Mortgage, nor claim, take or insist upon any benefit or advantage of any law now or hereafter in force, providing for the valuation or appraisal of the Mortgaged Property, or any part thereof, prior to any sale or sales thereof which may be made pursuant to any provision herein, or pursuant to the decree,. judgment or order of any court of competent jurisdiction; nor, after any such sale or sales, claim or exercise any right under any statute heretofore or hereafter enacted or redeem the property so sold or any party thereof and Mortgagor hereby expressly waives all benefit or advantage of any such law or laws, and covenants not to hinder, delay or impede the execution of any power herein granted or delegated to Mortgagee, but to suffer and permit the execution of every power as though no such law or laws had been made or enacted. Mortgagor, for itself and all who may claim under it, waives, to the extent that it lawfully may, all right to have the Mortgaged Property marshaled upon any foreclosure hereof.

SECTION 2.08. During the continuance of any Event of Default and pending the exercise by Mortgagee of its right to exclude Mortgagor from all or any part of the Premises, if Mortgagor is using and occupying the Premises, Mortgagor agrees to pay the fair and reasonable rental value for the use and occupancy of the Premises or any portion thereof which is in its possession for such period and, upon default of any such payment, will vacate and surrender possession of the Premises to Mortgagee or to a receiver, if any, and in default thereof may be evicted by any summary action or proceeding for the recovery of possession of Premises for non-payment of rent, however designated.

## ARTICLE III

### MISCELLANEOUS

SECTION 3.01. In the event any one or more of the provisions contained in this Mortgage or in the Building Loan Note shall for any reason be held to be invalid, illegal or

unenforceable in any respect, such invalidity, illegality or unenforceability shall not affect any other provision of this Mortgage, but this Mortgage shall be construed as if such invalid, illegal or unenforceable provision had never been contained herein or therein.

SECTION 3.02.     All notices hereunder shall be in writing and shall be deemed to have been sufficiently given or served for all purposes when presented personally or sent by registered or certified mail, at each party's address above stated or at such other address which a party shall have notified the other party in writing. Any written notice sent by registered or certified mail shall be deemed to have been served forty-eight (48) hours after the date the same is mailed in accordance with the foregoing provisions.

SECTION 3.03.     Whenever in this Mortgage the giving of notice by mail or otherwise is required, the giving of such notice may be waived in writing by the person(s) entitled to receive such notice.

SECTION 3.04.     All of the grants, covenants, terms, provisions and conditions herein shall run with the land and shall apply to, bind and inure to the benefit of, the successors and assigns of Mortgagor and the successors and assigns of Mortgagee. If there be more than one mortgagor, the covenants and warranties hereof shall be joint and several. As used herein, the singular shall include the plural as the context requires.

SECTION 3.05.     No provision in this Mortgage or in the Building Loan Note shall require the payment or permit the collection of interest in excess of the maximum amount permitted by law in commercial construction or permanent mortgage loan transactions between parties of the character of the parties hereto. Mortgagor shall not be obligated to pay any interest in excess of such maximum amount. Any interest paid by Mortgagor in excess of the maximum legal rate of interest shall be retained by Mortgagee as additional cash collateral for repayment of the indebtedness.

SECTION 3.06.     This Mortgage may be executed in any number of counterparts and each of such counterparts shall for all purposes deemed to be an original; and all such counterparts shall together constitute but one and the same mortgage.

SECTION 3.07. The covenants and conditions contained herein, other than those included in the New York Statutory Short Form of Mortgage, shall be construed as affording to Mortgagee rights additional to, and not exclusive of, the rights conferred under the provisions of Section 254 of the Real Property Law of the State of New York.

SECTION 3.08.     N/A

SECTION 3.09. Mortgagor recognizes that Mortgagee may sell and transfer interests in the loan to one or more participants and that all documentation, financial statements, appraisals and other data, or copies thereof, relevant to Mortgagor, any Guarantor or the loan, may

DMssage:1097294.2

be exhibited to and retained by *any* such participant or prospective participant.

SECTION 3.10.     Neither this Mortgage nor any provision hereof may be changed, waived, discharged or terminated, except by an instrument in writing signed by Mortgagee.

SECTION 3.11.     The information set forth on the cover hereof is hereby incorporated herein.

SECTION 3.12.     In the case of a foreclosure sale, the Mortgaged Property may be sold in one parcel.

SECTION 3.13.     This Mortgage shall be deemed to be a security agreement pursuant to the Uniform Commercial Code of the State of New York and is intended to be filed as a financing statement if permitted under the provisions of the Laws of the State of New York.

SECTION 3.14.     Whenever reference is made in this Mortgage to a lease, lessee tenancy or tenant, such reference shall be deemed to include a sublease, sublessee, subtenancy or subtenant, as the case maybe.

SECTION 3.15.     All time periods provided herein shall be deemed to be of the essence.

SECTION 3.16.     The Mortgagor hereby assigns to the Mortgagee, as further security for the payment of the indebtedness secured hereby, the rents, issues and profits of the Mortgaged Property, together with all leases and other documents evidencing such rents, issues and profits now or hereafter in effect and any and all deposits held as security under said leases, and shall deliver to the Mortgagee an executed counterpart of each such lease or other document. This assignment shall be construed in accordance with the terms and provisions of an Assignment of Rents and Leases of even date herewith from Mortgagor to Mortgagee.

SECTION 3.17. Notwithstanding anything to the contrary in this Mortgage, the maximum aggregate principal amount of indebtedness that is, or under any contingency may be, secured by this Mortgage (including Mortgagor's obligation to reimburse advances made by Mortgagee), either at execution or at any time thereafter (the "Secured Amount"), is SEVEN HUNDRED FORTY-TWO THOUSAND XX/100($742,000.00) Dollars plus amounts that Mortgagee expends after a declaration of default under this Mortgage to the extent that any such amounts shall constitute payment of i) taxes, charges or assessments that may be imposed by law upon any Mortgaged Property; ii) premiums on insurance policies covering any Mortgaged Property; iii) expenses incurred in upholding the lien of this Mortgage, including the expenses of any litigation to prosecute or defend the rights and lien created by this Mortgage; or iv) any amount, cost, or change to which Mortgagee becomes subrogated, upon payment, whether under recognized principles of law or equity, or under express statutory authority; then, and in each such event, such amounts or costs together with

interest thereon, shall be added to the indebtedness secured hereby and shall be secured by this Mortgage.

SECTION 3.18. Mortgagee may, either with or without entry or taking possession of the Mortgaged Property as provided in this Mortgage or otherwise, personally or by its agents or attorneys, and without prejudice to the right to bring an action for foreclosure of this Mortgage, sell the Mortgaged Property or any part thereof pursuant to the any procedures provided by applicable law, including, without limitation, the procedures set fourth in Article 14 of the New York Real Property Actions and Proceedings Law (and any amendments or substitute statutes in regard thereto), and all estate, right, title, interest, claim and demand therein, and right of redemption thereof, at one or more sales as an entity or in parcels, and at such time and place upon such terms and after such notice thereof as may be required or permitted by applicable law.

SECTION 3.19. Upon payment in full of the indebtedness, at the request of Mortgagor, Mortgagee shall deliver an assignment of this Mortgage, provided that Mortgagor shall pay all reasonable expenses of Mortgagee in connection therewith.

SECTION 3.20.      N/A

SECTION 3.21. N/A .



**IN WITNESS WHEREOF**, this Mortgage has been duly executed by the Mortgagor this 16TH day of OCTOBER, 2014

TEIGNMOUTH HALL LLC

BY: _____ MBR.
CHRISTOPHER P. QUINN, MEMBER.

STATE OF NEW YORK )
                          Ss.
COUNTY OF NASSAU)

On the 16TH day of OCTOBER in the year 2014 before me, the undersigned, a Notary Public in and for said State, personally appeared CHRISTOPHER P. QUINN personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he exec d the same in his capacity, and that by his signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed this instrument.

SWORN TO BEFORE ME THIS

16TH DAY OF OCTOBER, 2014

_____
NOTARY PUBLIC

LAURA BUTLER
Notary Public, State of New York
No. 41-4964188
Qualified in Queens County
Commission Expires March 26,

IMannge:1097294.2

Exhibit C

## GUARANTY

**GUARANTY** (this "Guaranty") dated OCTOBER 16, 2014 made by CHRISTOPHER P. QUINN ("Guarantor"), an individual whose address is 1303 MAIN STREET, PORT JEFFERSON, NEW YORK 11777 (hereinafter referred to as the "undersigned" or the "Guarantor"), for the benefit of ABL ONE, LLC , having offices at 66 HUDSON STREET, STE 301, HOBOKEN, NEW JERSEY 07030, , (hereinafter referred to as "Lender").

**WHEREAS,** TEIGNMOUTH HALL LLC, a DELAWARE LIMITED LIABILITY COMPANY , having an address at , 1303 MAIN STREET, PORT JEFFERSON, NEW YORK 11777 ("Borrower"), has applied to Lender for a loan in the principal sum of SEVEN HUNDRED FORTY-TWO THOUSAND and 00/100 Dollars ($742,000.00) (hereinafter referred to as the "Loan"), which Loan will be evidenced by the note described in Exhibit A hereto (the "Note") and secured by the mortgage described in Exhibit A hereto (the "Mortgage");

**WHEREAS,** Guarantor is a MEMBER of Borrower and has a financial interest in Borrower's obtaining the Loan; and

**WHEREAS,** Lender is willing to make the Loan to Borrower only upon the condition that the undersigned executes and delivers this Guaranty.

**NOW, THEREFORE,** in consideration of the premises and other good and valuable consideration, the receipt of which is hereby acknowledged, and in order to induce Lender to make the Loan to Borrower, the undersigned hereby covenants and agrees with Lender as follows:

1. The undersigned hereby absolutely, unconditionally and irrevocably guarantees to Lender (a) the full and prompt payment of all debts and other sums heretofore due and owing and hereafter to become due and owing from Borrower to Lender under the Note, the Mortgage and all other documents executed by Borrower in connection with or related to the Loan (collectively, the "Loan Documents") and (b) the full and timely performance and observance of each and every obligation, term, condition, provision, covenant, representation and warranty of Borrower under the Note, the Mortgage and the Loan Documents. All such debts, other sums, obligations, terms, conditions, provisions, covenants, representations and warranties of the Borrower are hereinafter collectively referred to, collectively, as the "Obligations." Guarantor hereby covenants and agrees to and with Lender, its successors and/or assigns, that if Borrower shall at any time default in the payment or performance of the Obligations, Guarantor, in each and every instance, shall and will forthwith pay such Obligations to the Lender, its successors and assigns, and shall and will forthwith faithfully perform and fulfill all of the Obligations, and will forthwith pay to Lender any and all damages that may arise as a result of any default by Borrower under the Note, the Mortgage or the Loan Documents (including, without limitation, all reasonable attorneys' fees, disbursements and court costs suffered or paid by Lender in any action or proceeding between Lender and Borrower, between

Lender and Guarantor or between Lender and any third party or otherwise) caused by any such default and/or by the enforcement of this Guaranty.

2. The undersigned agrees that, with or without notice or demand, the undersigned shall reimburse Lender for all costs and expenses (including, without limitation, reasonable attorney's fees, disbursements and court costs) incurred by Lender in connection with any action or proceeding brought by Lender to enforce the obligations of the undersigned under this Guaranty.

3. The undersigned agrees that all moneys available to Lender for application in payment or reduction of the Obligations may be applied by Lender in such manner and in such amounts and at such time or times and in such order, priority and proportions as Lender may elect.

4. The undersigned hereby consents that, from time to time, before or after any default by Borrower, with or without further notice to or assent from the undersigned, any security at any time held by or available to Lender for any obligation of Borrower, or any security at any time held by or available to Lender for any obligation of any other person or party secondarily or otherwise liable for all or any portion of the Obligations, may be exchanged, surrendered or released and any obligation of Borrower, or of any such other person or party, may be changed, altered, renewed, extended, continued, surrendered, compromised, waived or released in whole or in part, or any default with respect thereto waived, and Lender may fail to set off and may release, in whole or in part, any balance of any deposit account or credit on its books in favor of Borrower, or of any such other person or party, and may extend further credit in any manner whatsoever to Borrower, and generally deal with Borrower or any such security or other person or party as Lender may see fit; and the undersigned shall remain bound under this Guaranty notwithstanding any such exchange, surrender, release, change, alteration, renewal, extension, continuance, compromise, waiver, inaction, extension of further credit or other dealing.

5. The undersigned hereby waives (a) notice of acceptance of this Guaranty and of the making of the Loan or any advance thereof by Lender to Borrower; (b) presentment and demand for payment of the Obligations or any portion thereof; (c) protest and notice of dishonor or default to the undersigned or to any other person or party with respect to the Obligations or any portion thereof, (d) all other notices to which the undersigned might otherwise be entitled; and (e) any demand for payment under this Guaranty.

6. This Guaranty is an absolute and unconditional guaranty of payment and performance and not of collection. The undersigned waives any right to require that any action be brought against Borrower or any other person or party or to require that resort be had to any security or to any balance of any deposit account or credit on the books of Lender in favor of Borrower or any other person or party.

7. Guarantor's obligations under this Guaranty shall remain in full force and effect without regard to, and shall not be modified, impaired or affected by, or diminished by reason of, any event or circumstance that might otherwise

constitute a legal or equitable discharge of Guarantor, including, without limitation: (a) any amendment, extension or modification of, or addition or supplement to, any of the terms, conditions or provisions of the Note, the Mortgage or the Loan Documents or any assignment thereof; or (b) any compromise, release, consent, extension, indulgence or other action or inaction in respect to any of the terms, conditions or provisions of the Note, the Mortgage or the Loan Documents; or (c) any consent, indulgence, exercise or non-exercise by Lender of any right, power or remedy under or in respect of the Note, the Mortgage or the Loan Documents or any waiver of any such right, power or remedy or any dealings or transactions or matter or thing of any kind or nature between Borrower and Lender; or (d) any bankruptcy, insolvency, reorganization, arrangement, adjustment, composition, liquidation, or the like of Borrower, or the discharge or release of Borrower in any such bankruptcy proceeding; or (e) any limitations of Borrower's liability that may now or hereafter be imposed by any statute, regulation or rule of law, or any illegality, irregularity, invalidity or unenforceability, in whole or in part, of the Note, the Mortgage or the Loan Documents; or (f) any other circumstance, whether or not the Guarantor shall have had notice or knowledge thereof; or (g) any modification or waiver of or change in any of the terms, covenants, conditions or provisions of the Note, the Mortgage or the Loan Documents by Borrower and Lender, notwithstanding that such modifications or amendments increase the liability of Guarantor hereunder.

8. Each reference herein to Lender shall be deemed to include its successors and assigns, in whose favor the provisions of this Guaranty shall also inure. Each reference herein to the undersigned shall be deemed to include the heirs, executors, administrators, legal representatives, successors and assigns of the undersigned, all of whom shall be bound by the provisions of this Guaranty, provided, however, that the undersigned shall in no event or under any circumstance have the right without obtaining the prior written consent of Lender, in Lender's sole and absolute discretion, to assign or transfer the obligations and liabilities of the undersigned under this Guaranty, in whole or in part, to any other person, party or entity.

9. The terms "undersigned" and "Guarantor" as used herein, if this Guaranty is signed by more than one party, shall mean the "undersigned and each of them" and "Guarantor and each of them" and each undertaking herein contained shall be their joint and several undertaking, provided, however, that in the next succeeding paragraph hereof the term "undersigned" and "Guarantor" shall mean the "undersigned or any of them" and "Guarantor and each of them." If any party hereto shall be a limited liability company, the agreements and obligations on the part of the undersigned herein contained shall remain in force and application notwithstanding any changes in the individuals composing the limited liability company, and the term "undersigned" and "Guarantor" shall include any altered or successive limited liability company or companies, but the predecessor limited liability company and its members shall not thereby be released from any obligations or liability

hereunder.

10. No delay on the part of Lender in exercising any right or remedy under this Guaranty or failure to exercise the same shall operate as a waiver in whole or in part of any such right or remedy. No notice to or demand on the undersigned shall be deemed to be a waiver of the obligation of the undersigned or of the right of Lender to take further action without notice or demand as provided in this Guaranty.

11. This Guaranty may be modified, amended, changed or terminated only by an agreement in writing signed by Lender and the undersigned. No waiver of any term, covenant or provision of this Guaranty shall be effective unless given in writing by Lender, and if so given by Lender, shall be effective only in the specific instance in which given.

12. The undersigned acknowledges that this Guaranty and the obligations of the undersigned under this Guaranty are and shall at all times continue to be absolute and unconditional in all respects, and shall at all times be valid and enforceable irrespective of any other agreements or circumstances of any nature whatsoever that might otherwise constitute a defense to this Guaranty and the obligations of the undersigned under this Guaranty or the obligations of any other person or party (including, without limitation, Borrower) relating to this Guaranty or otherwise with respect to the Loan. This Guaranty sets forth the entire agreement and understanding of Lender and the undersigned, and the undersigned absolutely, unconditionally and irrevocably waives any and all right to assert any defense, setoff, counterclaim or crossclaim of any nature whatsoever with respect to this Guaranty or the obligations of the undersigned under this Guaranty or the obligations of any other person or party (including, without limitation, Borrower) relating to this Guaranty or otherwise with respect to the Loan, or in any action or proceeding brought by Lender to collect the Guaranteed Obligations, or any portion thereof, or to enforce the obligations of the undersigned under this Guaranty. The undersigned acknowledges that no oral or other agreements, understandings, representations or warranties exist with respect to this Guaranty or with respect to the obligations of the undersigned under this Guaranty, except those specifically set forth in this Guaranty.

13. The undersigned hereby irrevocably and unconditionally waives, and Lender by its acceptance of this Guaranty irrevocably and unconditionally waives, any and all rights to trial by jury in any action, suit or counterclaim arising in connection with, out of or otherwise relating to this Guaranty.

14. Notwithstanding any payments made by the undersigned pursuant to the provisions of this Guaranty, the undersigned shall have no right of subrogation in and to the Note or the Mortgage or the Loan Documents or any other security held by or available to Lender for the Obligations or the payment thereof until the Obligations have been paid in full to Lender or performed and all preference periods have lapsed. The undersigned agrees that if any payment made by the Borrower or the Guarantor to Lender or any portion of the Obligations is rescinded, recovered from or repaid by Lender, in whole or

in part, in any bankruptcy, insolvency or similar proceeding instituted by or against the Borrower or Guarantor, this Guaranty shall continue to be fully applicable to such Obligations to the same extent as though the payment so recovered or repaid had never originally been made on such Obligations regardless of, and, without giving effect to, any discharge or release of the Guarantor's obligations hereunder granted by Lender after the date hereof.

15. Any notice, request or demand given or made under this Guaranty shall be in writing and shall be hand delivered or sent by Federal Express or other reputable overnight courier service or by postage prepaid registered or certified mail, to the respective addresses set forth at the beginning of this Guaranty, and shall be deemed given (i) if sent by hand, when delivered; (ii) if sent by Federal Express or other reputable courier service, one (1) day following deposit with such courier service; or (iii) if sent by registered or certified mail, three (3) business days after being postmarked. Refusal to accept delivery of a notice shall be deemed delivery thereof. Each party to this Guaranty may designate a change of address by notice given to the other party fifteen (15) days prior to the date such change of address is to become effective. Notices required or permitted to be given hereunder may be given by a party's attorneys.

16. This Guaranty is, and shall be deemed to be, a contract entered into under and pursuant to the laws of the State of New York and shall in all respects be governed, construed, applied and enforced in accordance with the laws of the State of New York without regard to the principles of conflicts of law of such State. No defense given or allowed by the laws of any other state or country shall be interposed in any action or proceeding hereon unless such defense is also given or allowed by the laws of the State of New York. Guarantor irrevocably submits to the jurisdiction of the state and federal courts sitting in the State of New York and County of SUFFOLK and waives any objection to said venue.

17. The undersigned agrees to submit to personal jurisdiction in the State of New York in any action or proceeding arising out of this Guaranty and, in furtherance of such agreement, the undersigned hereby agrees and consents that, without limiting other methods of obtaining jurisdiction, personal jurisdiction over the undersigned in any such action or proceeding may be obtained within or without the jurisdiction of any court (including, without limitation, a United States court) located in and for New York and that any process or notice of motion or other application to any such court in connection with any such action or proceeding may be served upon the undersigned by registered or certified mail to or by personal service at the last known address of the undersigned, whether such address is within or without the jurisdiction of any such court.

18. Each of the undersigned hereby represents and warrants:

(a) That this Guaranty constitutes the legal, valid and binding obligations of the Guarantor, enforceable against the Guarantor in accordance with its terms,

subject to any applicable bankruptcy, insolvency or other similar law now or hereinafter in effect;

(b) Neither this Guaranty nor any of the documents executed in connection with the Loan to which the Guarantor is a party will violate any provision of law, rule, or regulation or any order of any court or other governmental agency to which the Guarantor is subject, the organizational documents of Guarantor, if any, the provisions of any agreement or instrument to which the Guarantor is a party or by which the Guarantor or any of the Guarantor's properties or assets are bound, or be in conflict with, result in a breach of, or constitute a default under (with or without notice or lapse of time), any such agreement or instrument, or result in the creation or imposition of any lien, charge or encumbrance of any nature whatsoever upon any properties or assets of the Guarantor.

(c) No action or approval by or of and no filing or registration with any governmental or public body or authority, any subdivision thereof, or the consent of any other person or entity, or any other legal formality is required in connection with the entering into, performance or enforcement of this Guaranty, except those as have been obtained or taken and with respect to which a copy or other satisfactory evidence thereof has been furnished to Lender.

(d) The financial statements and tax returns of the undersigned delivered to Lender are true, complete and accurate.

(e) The undersigned shall not terminate or dissolve or suspend Guarantor's usual business activities, or convey, sell, lease, transfer or otherwise dispose all or a substantial part of the Guarantor's assets during the term of this Guaranty.

19. No exculpatory provisions, if any, contained in the Note, the Mortgage, the Loan Documents or in any other document or instrument executed and delivered in connection therewith or otherwise with respect to the Loan shall in any event or under any circumstance be deemed or construed to modify, qualify or affect in any manner whatsoever the personal recourse obligations and liabilities of the undersigned under this Guaranty.

20. This Guaranty may be executed in one or more counterparts by some or all of the parties hereto, each of which counterparts shall be an original and all of which together shall constitute a single agreement of guaranty. The failure of any party listed below to execute this Guaranty, or any counterpart hereof, shall not release any other party from his obligations hereunder.

21. Notwithstanding anything to the contrary contained herein, each of the undersigned hereby consents and agrees that any Summons, Notice of Petition, Order to Show Cause or other form of process may be served upon the undersigned, inside or outside of the State of New York, by Certified Mail, Return Receipt Requested, at the address given herein for the undersigned. Any such service shall be deemed to be personal service upon the undersigned for all purposes in connection with any lawsuit and shall be deemed to have been received by the undersigned five (5) days after the deposit of such Certified Mail in the United State Postal Service, regardless of whether or not actual delivery is made to the undersigned by the Postal Service. Failure to accept delivery of such Certified Mail, whether due to refusal or otherwise, shall not affect the validity of such service. Failure of the undersigned to provide a current address for the Mortgagor herein stated shall not in any manner negate the validity of service effected by Certified Mail as herein set forth.

**IN WITNESS WHEREOF**, the undersigned has duly executed this Guaranty the day and year first above set forth.

CHRISTOPHER P. QUINN

STATE OF NEW YORK COUNTY OF NASSAU ss.:

On , OCTOBER 16, 2014 before me, the undersigned, a Notary Public in and for said state, personally appeared , CHRISTOPHER P. QUINN personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that she executed the same in her capacity, and that by her signature on the instrument, the individual, or the person on behalf of which the individual a executed the instrument.

_____
Notary Public

DOUGLAS VALENTE
Notary Public, State of New York
No. 01VA5003388
Qualified in Suffolk County
Commission Expires October 19, 20_8

## EXHIBIT A

Note:   The term "Note" as used in this Guaranty shall mean that certain Mortgage Note in the principal sum of $ 742,000.00 of even date herewith, given by Borrower to Lender.

Mortgage:                The term "Mortgage" as used in this Guaranty shall mean that certain Mortgage (and Assignment of Leases and Rents and Security Agreement) of even date herewith made by Borrower in favor of Lender, securing the Note and constituting a first lien on the fee estate of Borrower in certain premises located in the County of  SUFFOLK and State of New York and known as 21 BRIDGE LANE, PORT JEFFERSON, NEW YORK 11777 , as such premises are more particularly described therein as Block 02.00, Lot 008.000, and intended to be duly     recorded     in     the     Office     of     the     clerk     for     Suffolk     County.

Exhibit D

# BUILDING LOAN AGREEMENT

Dated the 16TH day of OCTOBER, 2014

BETWEEN   ABL ONE, LLC

a limited liability company
having an office at 66 HUDSON STREET, STE 301 HOBOKEN, NEW JERSEY
07030

**("Lender")**

**and**

TEIGNMOUTH HALL LLC

1303 MAIN STREET, PORT JEFFERSON, NEW YORK 11777

**("Borrower")**

**LOCATION OF PREMISES:**

21 BRIDGE LANE, PORT JEFFERSON, NY 11777; BL 02.00,LOT 008.000

COUNTY OF SUFFOLK
STATE OF NEW YORK



# STEWART TITLE
## INSURANCE COMPANY

### SCHEDULE A
*(continued)*

### Description

ALL that certain plot, piece or parcel of land, situate, lying and being in the Town of Brookhaven, County of Suffolk and State of New York, bounded and described as follows:

BEGINNING at a point in the northerly line of Upper Devon Road where the same is intersected by the dividing line between Plot Nos. 73 and 74 at Monument No. 145-B, as shown on a map of a portion of Belle Terre Estates, filed in the Office of the Clerk of the County of Suffolk on the 3rd day of November 1910, by the File No. 469;

RUNNING THENCE along said dividing line north 03 degrees 55 minutes east one hundred seventy-eight and six-tenths (178.6) feet to the southerly line of High Path at Monument No. 145-B;

THENCE north 03 degrees 55 minutes east thirty-three and five-tenths (33.5) feet to a point in High Path;

THENCE along High Path south 84 degrees 15 minutes east seventy and one-tenth (70.1) feet;

THENCE along said path on a curve to the left having a radius of three hundred forty-six and nine-tenths (346.9) feet and the chord of which curve bears north 87 degrees 48 minutes east and has a length of ninety-nine (99) feet a distance of ninety-nine and three-tenths (99.3) feet;

THENCE on a curve to the right having a radius of forty-four and seven-tenths (44.7) feet and the chord of which curve bears south 67 degrees 14 minutes east and has a length of forty-eight and six-tenths (48.6) feet, a distance of fifty-one and three-tenths (51.3) feet to the center line of Bridge Lane;

THENCE along the line of said Lane south 34 degrees 19 minutes east one hundred and nine and two-tenths (109.2) feet;

THENCE along said line of said Lane on a curve to the right having a radius of four hundred and fifty-four and five-tenths (454.5) feet and the chord of which curve bears south 32 degrees 12 minutes east and has a length of thirty-three and seven-tenths (33.7) feet, a distance of thirty-three and seven-tenths (33.7) feet;

THENCE on a curve to the right having a radius of fifty (50) feet and the chord of which curve bears south 24 degrees 55 minutes west and has a length of eighty-one and nine-tenths (81.9) feet, a distance ninety-six (96) feet to the center line of Upper Devon Road;

THENCE along said line of said road on a curve to the right having a radius of ten hundred and fifty-two and eight-tenths (1052.8) and the chord of which curve bears south 87 degrees 23 minutes west and has a length of two hundred and seventy-four (274) feet, a distance of two hundred seventy-four and eight-tenths (274.8) feet;

THENCE north 03 degrees 55 minutes east sixteen (16) feet to the point of place or beginning containing within said bounds one and thirty-seven one-hundredths of an acre (1.37 acres) be the same more or less, the said premises being shown on said map as Plot No. 74.

FOR INFORMATION ONLY, NOT FOR POLICY.

Section: 008.00 Block: 02.00 Lot: 008.000.

Premises being known as:     21 Bridge Lane
                             Port Jefferson, NY 11777

TitleLand Agency, Inc.

# ARTICLE I

## PARTICULAR TERMS AND DEFINITIONS

SECTION 1.01. As used in this Agreement, the following terms shall have the respective meanings indicated opposite each of them; where the meaning of any term is stated to be "None", provisions involving the application of that term shall be disregarded.

"Borrower's Interest in the Premises" — Holder of fee simple title to the Premises secured by the Mortgage.

"Commitment Fee (Non-Refundable)" — such fee charged by lender.

"Completion Date" — date contemplated for completion of construction.

"Financial Statement" — Statement of the assets, liabilities, income, expenses and cash flow of Borrower and Guarantor, prepared in accordance with generally accepted accounting principles.

"General Contractor and General Contract" — such chosen by Borrower.

"Governmental Authorities" — Any political subdivision, agency, department, commission, board, bureau or instrumentality of either the United States of America, the State of New York, including any local authorities, which exercises jurisdiction over the Premises or the Improvements.

"Guaranty of Payment" — Guaranty as to payment of all amounts due under the Loan Documents given by

"Improvements" — Construction of a

"Initial Closing" — The date of the execution and delivery hereof by Borrower and Lender.

"Lien Law"; "Lien Law Section 22 of Statement" — The Lien Law of the State of New York, as amended; the verified statement of Borrower, annexed hereto as Exhibit "A", required by the Lien Law.

IManage:1097294.2

| | |
|---|---|
| "Loan Amount" or "Loan" | $742,000.00 |
| "Loan Documents" | |
| | - The Note and Mortgage (as hereinafter defined) this building loan agreement;; the Guaranty of Payment; the Assignment of Leases and Rents, and such other documents as may be required by Lender and/or its counsel to evidence and/or secure the Loan or any part thereof (collectively the Loan Documents). |
| "Mortgage" | - The building loan mortgage of even date herewith delivered by Borrower to Lender to secure the Note. |
| "Mortgaged Property" | - The Premises and other property constituting the "Mortgaged Property", as such terms are defined in the Mortgage. |
| "Note" | - The building loan note in the principal sum of the Loan made by Borrower to Lender to evidence the Loan. |
| "Premises" | - The real property described on Schedule "A" to the Mortgage and located as indicated on the cover hereof, upon which the Improvements are to be constructed. |

# ARTICLE II

## LOAN ADVANCES

SECTION 2.01. Subject to the further provisions of this Agreement, the Lender shall make and the Borrower shall accept, the Loan.

SECTION 2.02.          The unadvanced portion of the Loan Amount shall be advanced by Lender upon the satisfaction of the conditions set forth herein and thereafter in phases as construction progresses.

SECTION   2.03.   N/A

SECTION   2.04.   N/A

SECTION   **2.05.**   N/A

SECTION **2.06.** N/A

SECTION 2.07. (a) At its option, upon and after the occurrence of a default under any of the Loan Documents, Lender may make all advances thereafter directly to subcontractors or to the General Contractor for deposit in an appropriately designated special bank account or may issue its official checks directly to subcontractors or the General Contractor, or to the Borrower and the General Contractor or subcontractors and the execution of this Agreement by the Borrower shall, and hereby does, constitute an irrevocable direction and authorization to so advance the funds. No further direction or authorization from Borrower shall be necessary to warrant such direct advances and all such advances shall satisfy pro tanto the obligations of Lender hereunder and shall be secured by the Building Loan Mortgage as fully as if made to Borrower, regardless of the disposition thereof by any Subcontractor or the General Contractor. (b) Contractors,

subcontractors, laborers, materialmen and suppliers are hereby cautioned and put on notice that if loan advances are made as provided in subparagraph (a) above, proceeds of the Loan remaining to be advanced at the time of the completion of the Improvements, or any time prior thereto, may be inadequate to pay all lienable claims incurred by Borrower and unpaid at that time. All potential lienors are therefore cautioned and put on notice to exercise sound business judgment in the extension of credit to Borrower and should not expect Lender to make Loan advances in such amounts and at such times that it will not be necessary for said parties to exercise such judgment for themselves.

(c)     Construction delays shall not exceed thirty (30) days, which delays must be reported to and explained to the satisfaction of the Lender.

**SECTION 2.08.** N/A

SECTION **2.09.** All advances of the Loan, shall be subject to the satisfactory progression and completion of the Improvements, as determined by Lender in its sole discretion, and at the option of Lender.

SECTION 2.10. Each Request for Advance shall be based upon the Approved Construction Budget and/or Schedule and shall be in writing and shall be accompanied, at the sole option of LENDER by (I) a currently dated sworn statement and request for partial payment from the Borrower in a form specified by Lender or in such other forms which may be acceptable to Lender and the Title Company, as approved by Lender (ii) such waivers of lien and other documents and instruments as may be requested or required by Lender with respect to General Contractor, subcontractors and materialmen engaged in the construction of the Improvements or as may be requested or required by the Title Company (to induce the Title Company to insure each

advance of the Loan made by the Lender pursuant to this Agreement against all mechanics' and materialmen's liens for labor furnished and materials supplied in connection with the construction of the Improvements), (iii) N/A (iv) such other information and documents as may be reasonably requested or required by Lender. All requests and requisitions for payment shall be approved by Borrower and recommended for payment by Lender.

**SECTION 2.11** N/A

## . ARTICLE III
## CONDITIONS PRECEDENT TO LENDER'S OBLIGATION TO MAKE ADVANCES

SECTION 3.01.      Lender shall not be obligated to make advances until the following conditions shall have been satisfied:

(a) The representations and warranties made in Article IV hereof shall be true and accurate in all material respects on and as of the date of any advance with the same effect as if made on such date;

r(b)      The Improvements, if any, shall not have been materially injured or damaged by fire or other casualty unless Lender shall have received insurance proceeds sufficient in the judgment of the Construction Consultant to effect the satisfactory restoration of the Improvements;

(c)      There shall exist no default after applicable notice and the expiration of any grace period, under this Agreement, the Mortgage, or any other Loan Document, irrespective of whether or not the same shall constitute an Event of Default thereunder;

(d)      N/A

(e)      Lender shall have received and approved builder's all risk (as applicable) and hazard

IManage:1097294.2

insurance (including fire and full extended coverage) in amount equal to the greater of one hundred percent (100%) of the full replacement value of the Improvements containing a standard New York mortgagee clause in favor of Lender naming Lender as additional insured and loss payee and a clause prohibiting the cancellation of such policy except after thirty (30) days' prior written notice of such cancellation has been given to Lender; a policy for the maximum available flood insurance or evidence reasonably satisfactory to Lender that the Property is not located in a federally defined flood hazard area which policies shall contain an endorsement specifically providing that, in the case of any damage, all insurance proceeds will be paid to Lender so long as it certifies to the insurer that the unpaid principal amount of the Mortgage exceeds the proceeds of insurance. Thereafter, not later than thirty (30) days prior to the date any coverage would otherwise expire, evidence or renewal and/or replacements coverage shall be delivered to Lender with evidence of payment of premiums therefor;

(f)     Lender shall have received and approved a request for the advance;

(g)     Evidence reasonably satisfactory to the Lender that there are no mechanic's or other liens prior to the Mortgage and certificates from contractors which have at that time performed work at the Premises waiving their lien rights for work performed up to such date or subordinating such rights to the Mortgage;

(h)     Evidence satisfactory to the Lender that there are no actions or proceedings pending or (to Borrower's actual knowledge) threatened at the time of closing relating to the proposed or actual use of the Project;

(i)     Copies of any contracts related to the construction including a complete trade payment cost breakdown, on forms prescribed by Lender with individual amounts listed for each general

contractor and subcontractor or materialmen which shall be certified by Borrower for each

;respective service to be provided.

## ARTICLE IV

## BORROWER'S REPRESENTATIONS, WARRANTIES AND COVENANTS

SECTION 4.01.          Borrower represents and warrants that:

(a)          It is a corporation duly formed, validly existing and in good standing under the laws of the State of New York and qualified to do business in the State of New York with full power and authority to consummate the transactions contemplated hereby and that Borrower has taken all action to authorize the execution and delivery of the Loan Documents; it is and will continue to be the bona fide owner of the Borrower's Interest in the Premises in its own right; there is not, and will not be, without the prior written consent of Lender, any contract or other obligation providing for or requiring Borrower to convey the Borrower's Interest in the Premises or any estate or interest therein to any party, except as permitted by the Mortgage, and no party other than Borrower has any beneficial or equitable right, title or interest in the Premises or any part thereof; and, the proceeds of the Loan shall be used solely for the proper costs of completing the Improvements;

(b)          The Plans, if in existence as of this date, and all construction, if any, already performed on the Premises comply with and has been performed in accordance applicable zoning ordinances, regulations, laws, rules and codes of any governing municipality regulations and restrictive covenants affecting the Premises as well as all environmental, ecological, landmark, and other applicable laws and regulations; and all requirements for such use have been satisfied;

(c)          Financial information, if any, which has been heretofore delivered to Lender are true,

correct and current in all respects and fairly present the respective financial conditions of the subjects thereof as of the respective dates thereof; no material adverse change has occurred in the financial conditions reflected therein since the respective dates thereof and no borrowings (other than the Loan) which might give rise to a lien or claim against the Mortgaged Property or Loan proceeds have been made by Borrower since the date thereof;

(d)     There are no actions, suits or proceedings pending or to the knowledge of Borrower threatened against or affecting it, Guarantor, the Premises, the validity or enforceability of the Mortgage or the priority of the lien thereof at law, in equity or before or by any Governmental Authorities except actions, suits or proceedings which either are fully covered by insurance or would, if adversely determined, not substantially impair the ability of Borrower or Guarantor to pay when due any amounts which may become payable under the Note or Guaranty; to Borrower's knowledge, it is not in default with respect to any order, writ, injunction, decree or demand of any court or Governmental Authorities;

(e)     The consummation of the transactions contemplated hereby and performance of this Agreement, the Note, Mortgage and Guaranty and any other Loan Document have not and will not result in any breach of, or constitute a default under, any mortgage, deed of trust, lease, bank loan or credit agreement, corporate charter, by-laws or other instrument to which Borrower or Guarantor is a party or by which either of them may be bound or affected;

('c) Cause the construction once begun to be prosecuted with diligence and continuity in a good and workmanlike manner

(d)     Receive and deposit in a checking account maintained by Borrower all advances made - hereunder; hold the same and the right to receive the same as a trust fund for the purpose of paying

only the "cost of improvement", as such quoted term is defined in the Lien Law;

(g)     Upon request, deliver to Lender copies of all contracts, bills of sale, statements, receipted vouchers or agreements under which Borrower claims title to any materials, fixtures or articles incorporated in the Improvements or subject to the lien of the Mortgage, or under which it has incurred costs for which it is entitled to a Loan advance, and deliver to Lender such other data or documents in connection with the Improvements as Lender may from time to time request;

(h)     It will, at all times, maintain insurance on the Premises and the Improvements in such amounts, with such companies, against such risks and in such form as Lender may reasonably direct;

SECTION 4.02. Borrower covenants and agrees with Lender that it will:

(a)     Promptly comply in the exercise of due diligence with all laws, ordinances, orders, rules, statutes and regulations of Governmental Authorities and promptly furnish Lender with reports of any official searches made by Governmental Authorities and any claims of violations thereof;

(b)     Permit Lender to enter upon the Premises, at reasonable times upon reasonable notice, to inspect the Improvements. An amount of $150.00 will be charged for any inspection.

(c)     Pay all costs and expenses required for completion of the Improvement

(d)     Cause the construction once begun to be prosecuted with diligence and continuity in a good and workmanlike manner in accordance with the Plans.

(e)     Receive and deposit in a checking account maintained by Borrower with Lender all advances made hereunder; hold the same and the right to receive the same as a trust fund for the purpose of paying only the "cost of improvement", as such quoted term is defined in the Lien Law;

(f)     N/A

(g)     N/A

(h)     N/A

(i)     N/A

(j)     N/A

(k)     N/A

## ARTICLE V
## GENERAL CONDITIONS

SECTION 5.01.     The following conditions shall be applicable at all times:

(a)     This Agreement is subject to the trust fund provisions of the Lien Law.

(b)     Any advance by Lender of Loan proceeds hereunder made prior to or without the fulfillment by Borrower of all of the conditions precedent thereto, whether or not known to Lender, shall not constitute a waiver by Lender of the requirement that all conditions, including the non-performed conditions, shall be required with respect to all future advances.

(c)     N/A

(d)     N/A

(e)     During the existence of any default under the Mortgage beyond the expiration of any applicable grace and/or cure periods, Borrower does hereby irrevocably authorize Lender to advance any undisbursed Loan proceeds directly to the General Contractor, Major Subcontractors, and other persons to pay for completion of the Improvements then in progress., but Lender is under

IManage:1097294.2

no obligation to do so. No further direction or authorization from Borrower shall be necessary to warrant such direct advances and all such advances shall satisfy pro tanto the obligations of Lender hereunder and shall be secured by the Mortgage as fully as if made to Borrower regardless of the disposition thereof by the General Contractor, any Major Subcontractor or other person.

(f)     This Agreement is solely for the benefit of Lender and Borrower. All conditions to the obligations of Lender to make advances hereunder are imposed solely and exclusively for the benefit of Lender and may be freely waived or modified in whole or in part by Lender at any time if in its sole discretion it deems it advisable to do so, and no person other than Borrower (provided, however, that all conditions have been satisfied) shall have standing to require Lender to make any Loan advances or to be a beneficiary of this Agreement or any advances to be made hereunder. Any waiver or modification asserted by Borrower to have been agreed to by Lender must be in writing and comply with the provisions of Paragraph (h) of this Section 5.01.

(g)     All notices hereunder shall be in writing and shall be deemed to have been sufficiently given or served for all purposes when presented personally or sent by registered or certified mail, return receipt requested, Federal Express or other reputable overnight courier with receipt issued therefore, at each party's address above stated, or at such other address which a party shall have notified the other party in writing. Any written notice sent by registered or certified mail shall be deemed to have been served upon receipt or refusal thereof by the addressee or forty-eight (48) hours after the date the same is mailed in accordance with the foregoing provisions, whichever is sooner.

(h)     No provision of this Agreement may be changed, waived, discharged or terminated orally, by telephone or by any. other means except by an instrument in writing signed by the party against

whom enforcement of the change, waiver, discharge or termination is sought.

(i) Except as otherwise herein provided, this Agreement shall be binding upon and inure to the benefit of Borrower and Lender and their respective heirs, personal representatives, successors and assigns. Notwithstanding the foregoing, Borrower, without the prior written consent of Lender in each instance, may not assign, transfer or set over to another, in whole or in part, all or any part of its benefits, rights, duties and obligations hereunder, including, but not limited to, the performance of and compliance with conditions hereof and the right to receive the proceeds of current or future advances.

(j) Borrower recognizes that Lender may sell and transfer less than all of Lender's interest in the Loan, this Agreement, the Note, Mortgage, Guaranty and any other instrument evidencing or securing the Loan, to one or more participants and that all documentation, financial statements, appraisals and other data, or copies thereof, relevant to Borrower, Guarantor or the Loan, and to any advances hereunder, may be exhibited to and retained by any such participant or prospective participant for its files;

Cl() Borrower shall not assign or transfer, by operation of law or otherwise, any of its rights or obligations hereunder without the prior written consent of Lender, except as expressly permitted in this Agreement.

(1) The Lender shall at all times and at any time have the right, privilege and power to waive any of the obligations of Borrower hereunder and such waiver shall not be deemed a modification of this Agreement.

(m) If at any time Lender notifies Borrower that, in Lender's reasonable judgment, the undisbursed balance of the Loan is insufficient to pay the remaining costs of completion of the Improvements,

or that Borrower does not have the financial capacity to invest sufficient sums to complete the project, Borrower shall either (i) deposit with the Lender an amount equal to such deficiency which Lender may from time to time apply or allow Borrower to apply to such costs or (ii) pay for such costs in the amount of such deficiency so that the amount of the Loan which remains to be disbursed shall be sufficient to complete the Improvements, and Borrower shall furnish Lender with such evidence thereof as Lender shall require. Borrower hereby agrees that Lender shall have a lien on and security interest in any sums deposited pursuant to clause (I) above and that Borrower shall have no right to withdraw any such sums except for the payment of the aforesaid costs as approved by Lender. Any such sums not used as provided in said clause (I) shall be released to Borrower when and to the extent that Lender determines that the amount thereof is more than the excess, if any, of the total remaining costs of completion of the Improvements over the undisbursed balance of the Loan, provided, however, that should an Event of Default occur under the Building Loan Mortgage, Lender may, at its option, apply such amounts either to the costs of completion of the Improvements or to the immediate reduction of outstanding principal and/or interest under the Note.

SECTION 5.02.       The cover page and the Exhibits annexed hereto are incorporated as a part of this Agreement with the same effect as if set forth in the body hereof.

SECTION 5.03.       This agreement may be executed in one or more counterparts.

IN WITNESS WHEREOF, the parties have executed this Agreement as of the day and year first above written, the execution hereof by Borrower constituting (a) a certification by the party or parties executing on its behalf that the representations and warranties made in Article N are true and correct as of the date hereof and that each of them duly holds and is incumbent in the position indicated under his name, and (b) the undertaking of said party or parties that each advance request, whether or not personally made by any or all of them, shall constitute the personal affirmation on the part of each of them on behalf of Borrower that at the time thereof said representations and warranties are true and correct.

TEIGNMOUTH HALL LLC

BY: _____ MBR.
CHRISTOPHER P. QUINN, MEMBER

ABL ONE, LLC

BY: _____
STEVEN RUBEL, authorized signer

STATE OF NEW YORK

COUNTY OF NASSAU )

On the 16TH day of OCTOBER, in the year 2014 before me, the undersigned, a Notary Public in and for said State, personally appeared CHRISTOPHER P. QUINN, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his capacity and that by his signature on the instrument, the individual, or the person upon behalf of which this individual acted, executed this instrument.

_____
NOTARY PUBLIC

DOUGLAS VALENTE
Notary Public, State of New York
No. 01VA5003388
Qualified in Suffolk County
Commission Expires October 19, 20__

STATE OF NEW YORK

COUNTY OF NASSAU )

On the 16TH day of OCTOBER, in the year 2014 before me, the undersigned, a Notary Public in and for said State, personally appeared STEVEN RUBEL, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his capacity and that by his signature on the instrument, the individual, or the person upon behalf of which this individual acted, executed this instrument.

_____
NOTARY PUBLIC

AUDREY COFFIN
Notary Public, State of New York
01C06034599
Qualified in Nassau County
Commission Expires December 13, 20___

## EXHIBIT "B"

### (Pending Disbursements Clause)

Pending disbursement of the full proceeds of the loan secured by the insured mortgage or deed of trust described herein, this policy insures only to the extent of the amount actually disbursed but increases as each disbursement is made in good faith and without knowledge of any defects in, or objections to, the title, up to the face amount of the policy.

Title shall be continued down to the date of each disbursement and the Company shall furnish to the Insured a continuation report which shall note (1) the new effective date and amount of the policy, (2) all assessments, taxes, liens, encumbrances, leases, mortgages, easements and other items including survey variations, encroachments and setback violations then affecting the insured premises which have been filed, recorded or discovered by the Company since the original date of the policy regardless of whether they affect the lien of the insured mortgage or deed of trust, (3) which of the aforesaid items have been filed or recorded since the date of the last preceding continuation report, and (4) which said items are intended to be added as exceptions to the coverage of the policy as to (a) all amounts secured by the insured mortgage or deed of trust, and (b) only amounts secured by the insured mortgage or deed of trust advanced on or after the new effective date of the policy.

In addition, each continuation search will notify Lender of any liens which have been discharged by bonding, court deposit or any other means other than full payment.

In the event that the lien of the insured mortgage or deed of trust described herein is insured by more than one insurer, this Company agrees that it shall be bound by the continuation reports of a single company specified as "lead" insurer herein.

IManage:1097294.2

INDEX NO. 603713/2015

RECEIVED NYSCEF: 04/09/2015

Exhibit E







**SUFFOLK COUNTY CLERK**
**RECORDS OFFICE**
**RECORDING PAGE**

Type of Instrument: ASSIGNMENT OF LEASES / RENTS     Recorded:    12/10/2014
Number of Pages: 7                                           At:          09:42:40 AM
Receipt Number : 14-0162448
MORTGAGE NUMBER: DF031798

LIBER:     D00012799
PAGE:      417

District:            Section:           Block:           Lot:
0201                 008.00            02.00           008.000

EXAMINED AND CHARGED AS FOLLOWS

Received the Following Fees For Above Instrument

| | | Exempt | | | | Exempt |
|---|---|---|---|---|---|---|
| Page/Filing | $35.00 | NO | Handling | $20.00 | | NO |
| COE | $5.00 | NO | NYS SRCHG | $15.00 | | NO |
| Affidavit | $5.00 | NO | TP-584 | $0.00 | | NO |
| Notation | $0.50 | NO | Cert.Copies | $0.00 | | NO |
| RPT | $60.00 | NO | | | | |
| | | | Fees Paid | $140.50 | | |

THIS PAGE IS A PART OF THE INSTRUMENT
THIS IS NOT A BILL

JUDITH A. PASCALE
County Clerk, Suffolk County

| 1 | 2 |

Number of pages ___7___

This document will be public record. Please remove all Social Security Numbers prior to recording.

RECORDED
2014 Dec 10 09:42:40 AM
JUDITH A. PASCALE
CLERK OF
SUFFOLK COUNTY
L D00012799
P 417
DF031798

| Deed / Mortgage Instrument | Deed / Mortgage Tax Stamp | Recording / Filing Stamps |
|---|---|---|

3 | FEES | 742,000

| 4 | Mortgage Amt. |
|---|---|
| Page / Filing Fee ___35___ | 1. Basic Tax _____ |
| Handling ___20. 00___ | 2. Additional Tax _____ Sub Total _____ |
| TP-584 _____ | Spec./Assit. or |
| Notation ___50___ | Spec./Add. _____ |
| EA-52 17 (County) _____ Sub Total ___55.50___ | TOT. MTG. TAX _____ |
| EA-5217 (State) _____ | Dual Town ____ Dual County ____ Held for Appointment _____ |
| R.P.T.S.A. ___60___ | Transfer Tax _____ |
| Comm. of Ed. ___5. 00___ | Mansion Tax _____ |
| 25 Affidavit ___5___ | The property covered by this mortgage is or will be improved by a one or two family dwelling only. |
| Certified Copy _____ | YES _____ or NO _____ |
| NYS Surcharge ___15. 00___ Sub Total ___85___ | |
| Other _____ Grand Total ___140.50___ | If NO, see appropriate tax clause on page # _____ of this instrument. |

| 4 | Dist. 2 | | 5 | Community Preservation Fund |
|---|---|---|---|---|
| | 2832621 | 0201 00800 0200 008000 | | Consideration Amount $ _____ |
| Real Property Tax Service Agency Verification | P T S R VIT A 19-NOV-14 | [barcode] | | CPF Tax Due $ _____ |
| | | | | Improved _____ |
| | | | | Vacant Land _____ |

6 | Satisfactions/Discharges/Releases List Property Owners Mailing Address RECORD & RETURN TO:

Steven Rubell PC
100 Merrick Rd Sue 340W
Rockville Centre, NY 11570

TD _____
TD _____
TD _____

Mail to: Judith A. Pascale, Suffolk County Clerk
310 Center Drive, Riverhead, NY 11901
www.suffolkcountyny.gov/clerk

| 7 | Title Company Information |
|---|---|
| Co. Name | Titleod |
| Title # | MTG 06149160 |

8 | # Suffolk County Recording & Endorsement Page

This page forms part of the attached ___Assignment of Leases___ made
by: (SPECIFY TYPE OF INSTRUMENT)

___Teignmouth Hall LLC___

The premises herein is situated in
SUFFOLK COUNTY, NEW YORK.

TO

___ABL One, LLC___

In the TOWN of ___Brookhaven___
In the VILLAGE ___Port Jefferson___
or HAMLET of ___Belle Terre___

BOXES 6 THRU 8 MUST BE TYPED OR PRINTED IN BLACK INK ONLY PRIOR TO RECORDING OR FILING.

(over)

NyTG-0614 9160/1082 SS

# COLLATERAL ASSIGNMENT OF LEASES AND RENTS

This Assignment made this OCTOBER 16, 2014, by and between TEIGNMOUTH HALL LLC, with an office at 1303 MAIN STREET, PORT JEFFERSON, NEW YORK 11777 ("Assignor") and ABL ONE, LLC, with an office at 66 HUDSON STREET, STE 301, HOBOKEN, NEW JERSEY 07030 ("Assignee")

**WITNESSETH:**

Assignor is the fee owner of premises known as 21 BRIDGE LANE, PORT JEFFERSON, NEW YORK 11777, designated tax block 02.00, lot no. 008.000 ("Premises"), and has agreed to make a mortgage note to Assignee in the amount of $742,000.00 ("Note") secured by a mortgage in like amount secured by the Premises ("Mortgage"), (both the Note and Mortgage collectively referred to as "Loan Documents") dated even date herewith and intended to be recorded simultaneously herewith.

As a condition to making such a loan to Assignor, Assignee requires Assignor to execute and deliver this Collateral Assignment of Rents and Leases further securing Assignor's indebtedness to Assignee.

NOW THEREFORE, in order to better secure the payment to the Assignee of the principal amount due under the Loan Documents, with interest now due or hereafter to become due, and of all monetary obligations of the Assignee under and pursuant to the Loan Documents, the Assignor hereby assigns to the Assignee all of the rents, profits and issues due and to become due from the Premises, together with all documents, leases, agreements, service contracts and insurance policies affecting the Premises.

## 1. RENTS

Upon Assignor's default under the Loan Documents, Assignee shall have the power and authority to enter upon and take possession of the Premises and to demand, collect and receive from the tenants, lessees or parties in possession of the Premises or part thereof, rents now due or to become due; to endorse Assignor's name or any subsequent owner of the Premises, on any checks, notes or any other instruments for the payment of money; to deposit same in Assignee's accounts; to give any and all instruments in connection thereto in Assignor's name or in the name of Assignee; to institute, prosecute, settle or discontinue any summary or other legal proceedings for the recovery of rents or profits or to recover the whole or part of the Premises; to institute, prosecute, settle or discontinue any other legal proceeding for the protection and security of the Premises, for damages sustained to the Premises or from any other cause or for the abatement of any nuisance thereon. Assignee shall also have the right and power to defend any legal proceeding brought against Assignor or any subsequent owner of the Premises arising out of the operation of the Premises.

## 2. AUTHORITY TO LEASE

Upon the default by Assignor under the Loan Documents, Assignee shall have the right, power and authority to lease or rent the Premises or any part thereof; to employ an agent to manage and rent the Premises, to make any and all improvements to the Premises deemed solely by Assignee to be necessary for the leasing of the Premises, to maintain and keep the Premises in a rentable condition and in a good state of repair, to purchase any and all supplies, materials and equipment deemed necessary by Assignee in the continued operation and maintenance of the Premises, to pay all utilities, taxes and assessments for the Premises now due and to become due which are or may become liens against the Premises, to pay the principal and interest which are or may become due under the Loan Documents, to pay the premiums on

all insurance policies affecting the Premises which are or may become due, to comply with all orders or notices of any governmental authority having jurisdiction over the Premises, to discharge Mechanic's Liens or any other interests or liens filed against the Premises either by payment to the lienor or by filing with the appropriate court a bond pursuant to court order, and to pay all charges and expenses incurred in the operation of the Premises.

### 3. EXPENSES

The Assignee shall have the authority, which is expressly given by Assignor, to pay for all matters from the rents and revenues collected from the Premises. These costs and expenses and any other payment made by Assignee in connection with the operation of the Premises, including reasonable attorneys' fees, shall be a charge to Assignor and for any and all purposes shall be deemed to be secured by the Loan Documents and may be deducted from the rents and profits received from the operation of the Premises.

### 4. ASSIGNEE'S LIABILITY

Except for the willful malfeasance or gross negligence of Assignee, the Assignee shall not be liable for any act or omission but shall only be liable to account for moneys received by Assignee. Notwithstanding the foregoing, nothing herein contained shall be deemed to prejudice Assignee's rights to institute and prosecute the foreclosure of the Mortgage or to enforce any lien on other collateral which the Assignee has or to prejudice any other right of Assignee which may arise due to Assignor's default under the Loan Documents.

### 5. ASSIGNMENT OF LEASES UPON DEFAULT

In the event of a default under the Loan Documents, Assignor hereby assigns and transfers to Assignee all the leases and subleases, if any, made to the occupants of the Premises and all of its right, title and interest to the security stated in those leases and subleases and the Assignor further authorizes and empowers Assignee to honor the terms, conditions and provisions of the leases and subleases or to rent any one or more of the units in the Premises upon such terms, conditions and provisions as Assignee, in its sole discretion deems prudent and to execute any and all documents necessary to accomplish that end. Assignee shall have the full power and authority to do any and all acts with respect to the Premises as the Assignor might or be permitted to do, with full power and substitution and Assignor hereby expressly ratifies and confirms those acts which might be done by Assignee.

### 6. LEASE MODIFICATION

Assignor will not, except if expressly permitted in the Loan Documents, without the prior written consent of Assignee cancel, modify or surrender any lease now or in the future existing with respect to any unit in the Premises; abate or reduce any rent due under any lease; modify, alter or amend any of the terms, provisions and conditions of any lease; and/or execute any new lease for any unit in the Premises.

### 7. ACCOUNTABILITY

Assignee, except for its acts of gross negligence or willful misconduct, shall not be liable or responsible in any way for the failure to account or fraud or defalcation of rents received by Assignee's agent designated to manage the Premises or collect the rents. Assignee shall in no way be liable for its failure or refusal to make repairs to the Premises nor for any debt incurred in connection with the operation of the Premises.

## 8. DEFAULT

Notwithstanding anything to the contrary contained in this Collateral Assignment of Leases and Rents, the default provisions contained in the Loan Documents shall in no way be affected by the terms, provisions and conditions contained in this document.

## 9. ASSIGNEE'S RIGHT IN THE COLLATERAL

This Collateral Assignment of Leases and Rents supplements the Loan Documents. It is expressly agreed by the parties hereto that the rights and powers given to Assignee contained in this document shall in no way prejudice or estop the Assignee in the exercise of the rights afforded to it in the Loan Documents or against any other collateral of Assignor that Assignee may have.

## 10. SURPLUS

Except as required by law, Assignee may but shall be under no obligation to do so, turn over to the Assignor any surplus moneys which the Assignee may have after paying all expenses incurred in connection with the operation of the Premises and establishing a reserve fund necessary for the payment of fixed charges due or to become due for such time as Assignee, in its sole discretion deems reasonable. The tender by Assignee to Assignor of surplus moneys on one occasion shall not obligate Assignee to tender surplus moneys thereafter.

## 11. FURTHER ASSIGNMENT BY ASSIGNEE

The Assignee may assign all of its right, title and interest in and to this Collateral Assignment of Leases and Rents to any person or entity to whom the Loan Documents are assigned and upon such assignment, the holder of the Loan Documents shall have all the rights and powers contained herein as if an original party hereto.

## 12. CONSENT

Should the Assignor be a corporation, the Assignor hereby expressly certifies that this Assignment was approved and authorized by the board of directors of such corporation and that there is no requirement under the corporation's certificate of incorporation or by-laws that require the consent of the shareholders.

Should the Assignor be a partnership, the execution and delivery of this Collateral Assignment of Lease and Rents have been duly approved by its partners.

Should the Assignor be a limited liability company, the execution and delivery of this Collateral Assignment of Leases and Rents have been duly approved pursuant to its operating agreement, or if none, by its managing member.

## 13. DESCRIPTION OF PREMISES

The Premises are more particularly described on Schedule A which is attached hereto and made a part hereof.

## 14. SATISFACTION OF UNDERLYING DEBT

Upon the payment in full of all indebtedness secured by the Loan Documents, Assignee shall execute and deliver, in recordable form, a release of this Collateral Assignment of Leases and Rents.

**15. ASSIGNOR'S COLLECTION OF RENTS**

Provided that Assignor is not in default under the Loan Documents, Assignor shall have the right to collect, but not more than thirty (30) days prior to accrual, all rents, issues and profits from the Premises and to retain, use and enjoy same.

**16. AGREEMENT BINDING**

This Collateral Assignment of Leases and Rents shall be binding on the Assignor and its successors and assigns and shall inure to the benefit of Assignee, its successors and assigns. This Collateral Assignment of Leases and Rents may not be changed orally but only by an agreement in writing signed by the parties hereto.

**17. LAW GOVERNING**

The terms, conditions and provisions of this Collateral Assignment of Leases and Rents shall be governed by the laws of the State of New York.

**18. PRIOR ASSIGNMENT**

Assignor represents and warrants that it is the owner in fee of the Premises and has not executed any prior assignment or pledge of any of its rights, nor are its rights encumbered, with respect to the leases assigned hereunder, or any of the rents, income or profits due or to become due from the Premises, except as are encumbered by the Loan Documents. Assignor further represents and warrants that it shall not assign, pledge or encumber the leases to any party or entity during the terms of this Collateral Assignment of Leases and Rents.

**19. LEASES**

Annexed hereto and made a part hereof as Exhibit B are the existing leases for the Premises.

IN WITNESS WHEREOF, the Assignor has executed this Collateral Assignment of Leases and Rents the date and year first written above.

ASSIGNOR: TEIGNMOUTH HALL LLC

By: _____ MBR

CHRISTOPHER P. QUINN
MEMBER

ACKNOWLEDGEMENT TAKEN IN NEW YORK STATE

State of New York, County of NASSAU , ss:

On the 16TH day of OCTOBER in the year 2014 , before me, the undersigned, personally appeared CHRISTOPHER P. QUINN, personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

LAURA BUTLER
Notary Public, State of New York
No. 41-4964188
Qualified in Queens County
Commission Expires

ACKNOWLEDGEMENT TAKEN IN NEW YORK STATE

State of New York, County of , ss:

On the day of in the year , before me, the undersigned, a Notary Public in and for said State, personally appeared , the subscribing witness to the foregoing instrument, with whom I am personally acquainted, who, being by me duly sworn, did depose and say that he/she/they reside(s) in


(if the place of residence is in a city, include the street and street number if any, thereof); that he/she/they know(s)

to be the individual described in and who executed the foregoing instrument; that said subscribing witness was present and saw said

execute the same; and that said witness at the same time subscribed his/her/their name(s) as a witness thereto


**Title No**

## TEIGNMOUTH HALL LLC
### TO
### ABL ONE, LLC

| DISTRIBUTED BY |
| --- |

ACKNOWLEDGEMENT TAKEN IN NEW YORK STATE

State of New York, County of , ss:

On the day of in the year , before me the undersigned, personally appeared , personally known to me proved to me on the basis of satisfactory evidence to be t individual(s) whose name(s) is (are) subscribed to the with instrument and acknowledged to me that he/she/they executed t same in his/her/their capacity(ies), and that by his/her/th signature(s) on the instrument, the individual(s), or the pers upon behalf of which the individual(s) acted, executed t instrument.

### ACKNOWLEDGEMENT TAKEN OUTSIDE NEW YOR STATE

*State of , County of , ss:

*(Or insert District of Columbia, Territory, Possession or Forei County)

On the day of in the year , before me, the undersigned personal appeared

Personally known to me or proved to me on the basis satisfactory evidence to be the individual(s) whose name(s) (are) subscribed to the within instrument and acknowledged me that he/she/they executed the same in his/her/th capacity(ies), that by his/her/their signature(s) on the instrume the individual(s) or the person upon behalf of which t individual(s) acted, executed the instrument, and that su individual make such appearance before the undersigned in the

(add the city or political subdivision and the state or country other place the acknowledgement was taken).

SECTION:     sec

BLOCK:     02.00

LOT:     008.000

COUNTY OR TOWN: SUFFOLK

RETURN BY MAIL TO:
**LAW OFFICE OF STEVEN RUBEL, PC
100 MERRICK ROAD, SUITE 340W
ROCKVILLE CENTRE, NEW YORK 11570**

# STEWART TITLE
## INSURANCE COMPANY

### SCHEDULE A
*(continued)*

### Description

ALL that certain plot, piece or parcel of land, situate, lying and being in the Town of Brookhaven, County of Suffolk and State of New York, bounded and described as follows:

BEGINNING at a point in the northerly line of Upper Devon Road where the same is intersected by the dividing line between Plot Nos. 73 and 74 at Monument No. 145-B, as shown on a map of a portion of Belle Terre Estates, filed in the Office of the Clerk of the County of Suffolk on the 3rd day of November 1910, by the File No. 469;

RUNNING THENCE along said dividing line north 03 degrees 55 minutes east one hundred seventy-eight and six-tenths (178.6) feet to the southerly line of High Path at Monument No. 145-B;

THENCE north 03 degrees 55 minutes east thirty-three and five-tenths (33.5) feet to a point in High Path;

THENCE along High Path south 84 degrees 15 minutes east seventy and one-tenth (70.1) feet;

THENCE along said path on a curve to the left having a radius of three hundred forty-six and nine-tenths (346.9) feet and the chord of which curve bears north 87 degrees 48 minutes east and has a length of ninety-nine (99) feet a distance of ninety-nine and three-tenths (99.3) feet;

THENCE on a curve to the right having a radius of forty-four and seven-tenths (44.7) feet and the chord of which curve bears south 67 degrees 14 minutes east and has a length of forty-eight and six-tenths (48.6) feet, a distance of fifty-one and three-tenths (51.3) feet to the center line of Bridge Lane;

THENCE along the line of said Lane south 34 degrees 19 minutes east one hundred and nine and two-tenths (109.2) feet;

THENCE along said line of said Lane on a curve to the right having a radius of four hundred and fifty-four and five-tenths (454.5) feet and the chord of which curve bears south 32 degrees 12 minutes east and has a length of thirty-three and seven-tenths (33.7) feet, a distance of thirty-three and seven-tenths (33.7) feet;

THENCE on a curve to the right having a radius of fifty (50) feet and the chord of which curve bears south 24 degrees 55 minutes west and has a length of eighty-one and nine-tenths (81.9) feet, a distance ninety-six (96) feet to the center line of Upper Devon Road;

THENCE along said line of said road on a curve to the right having a radius of ten hundred and fifty-two and eight-tenths (1052.8) and the chord of which curve bears south 87 degrees 23 minutes west and has a length of two hundred and seventy-four (274) feet, a distance of two hundred seventy-four and eight-tenths (274.8) feet;

THENCE north 03 degrees 55 minutes east sixteen (16) feet to the point of place or beginning containing within said bounds one and thirty-seven one-hundredths of an acre (1.37 acres) be the same more or less, the said premises being shown on said map as Plot No. 74.

FOR INFORMATION ONLY, NOT FOR POLICY.

Section: 008.00 Block: 02.00 Lot: 008.000.

Premises being known as:       21 Bridge Lane
                               Port Jefferson, NY 11777

### TitleLand Agency, Inc.

# COLLATERAL ASSIGNMENT OF LEASES AND RENTS
## SECTION 255 AFFIDAVIT

RECORDED
2014 Dec 10 09:42:40 AM
JUDITH A. PASCALE
CLERK OF
SUFFOLK COUNTY
L D00012799
P 417
DF031798

STATE OF New York}
COUNTY OF Nassau} ss.

Steven Rubel being duly sworn deposes and says:

1. He is an attorney at law admitted to practice in the State of New York with offices located at 100-Merrick Road, Suite 340W, Rockville Centre, New York 11570 New York and is acting as legal counsel to ABL One, LLC (the "Mortgagee") in connection with a mortgage loan transaction between said Mortgagee and Teignmouth Hall LLC (the "Borrower") pertaining to premises known as 21 Bridge Lane, in the city of Belle Terre, County of Suffolk, and State of New York.

2. The Borrower has applied to Mortgagee for a loan in the total principal amount of $742,000.00

3. Said loan will be evidenced by a certain Note from Mortgagor to Mortgagee dated October 16, 2014 and will be secured by a Mortgage and Security Agreement made by Mortgagor to Mortgagee covering the mortgaged property, dated October 16, 2014, (the "Mortgage") ,which is intended to be recorded in the County Clerk's office prior to the recording of this Agreement.

4. In connection with the foregoing Mortgage and Security Agreement there is herewith offered and presented to the Clerk of the County of a Collateral Assignment of Leases and Rents between said Mortgagor and Mortgagee dated October 16, 2014, by which Mortgagee is assigned certain rights in rents and other moneys relating to the occupancy of the premises encumbered by the aforesaid Mortgage and as security collateral to such mortgage.

5. Such Collateral Assignment of Leases and Rents neither creates nor secures any original, new or further principal indebtedness or obligation in addition to or not already secured by or which under any contingency may be secured by or which under any contingency may be secured by the aforesaid Mortgage.

This affidavit is submitted to the Register/Clerk of Suffolk County in support of the exemption of the foregoing Conditional Assignment of Leases and Rents from he imposition or payment of mortgage tax under Article 11 of the Tax Law pursuant to provisions of Section 255 of the Tax Law of the State of New York.

Steven Rubel, Esq.

Sworn to before me this
16th day of October, 2014

AUDREY COFFIN
Notary Public, State of New York
01C06034599
Qualified in Nassau County
Commission Expires December 13, 2017

Exhibit F

7013 3020 0001 0793 8020

PLACE STICKER AT TOP OF ENVELOPE TO THE RIGHT
OF THE RETURN ADDRESS, FOLD AT DOTTED LINE

**CERTIFIED MAIL™**

7013 3020 0001 0793 8020
7013 3020 0001 0793 8020

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Christpher P. Quinn, Guarantor
1303 Main Street
Port Jefferson, NY 11777

2. Article Number
(Transfer from service label)

PS Form 3811, July 2013    Domestic Return Receipt

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X   ☐ Agent   ☐ Addressee

B. Received by (Printed Name)    C. Date of Delivery

D. Is delivery address different from item 1? ☐ Yes
If YES, enter delivery address below: ☐ No

3. Service Type
☐ Certified Mail®   ☐ Priority Mail Express™
☐ Registered   ☐ Return Receipt for Merchandise
☐ Insured Mail   ☐ Collect on Delivery

4. Restricted Delivery? (Extra Fee)   ☐ Yes

**U.S. Postal Service™**
**CERTIFIED MAIL™ RECEIPT**
(Domestic Mail Only; No Insurance Coverage Provided)

For delivery information visit our website at www.usps.com®

**OFFICIAL USE**

Postage | $
Certified Fee
Return Receipt Fee (Endorsement Required)
Restricted Delivery Fee (Endorsement Required)
Total Postage & Fees | $

Postmark Here

Sent To Christpher P. Quinn, Guarantor
Street, Apt. No.; or PO Box No. 1303 Main Street
City, State, ZIP+4 Port Jefferson New York 11777

PS Form 3800, August 2006   See Reverse for Instructions

**PULVERS, THOMPSON & FRIEDMAN, LLP**

t Law

VENUE, 11TH FLOOR, NEW YORK, NY 10022

Christopher P. Quinn, Guarantor
1303 Main Street
Port Jefferson, New York 11777

# PULVERS, PULVERS, THOMPSON & FRIEDMAN, LLP
## Counselors at Law

950 THIRD AVENUE, 11TH FLOOR, NEW YORK, NY 10022-1304
Telephone: (212) 471-5199|Facsimile: (212) 355-900

March 30, 2015

**Sent Via Certified and Regular Mail**

CHRISTOPHER P. QUINN, GUARANTOR
1303 MAIN STREET
PORT JEFFERSON, NEW YORK 11777

Creditor:   ABL ONE, LLC
Property:   21 Bridge Lane, Port Jefferson, New York 11777

Dear CHRISTOPHER P. QUINN, GUARANTOR:

This office represents the above named creditor. Please be advised that a claim in the amount of $471,465.00 calculated through March 31, 2015, has been referred to us for appropriate action, such as a mortgage foreclosure proceeding.

As of the date of this letter, unless you have received a discharge in bankruptcy, you owe $471,465.00 comprised of the following.

| | |
|---|---|
| Principal Amount: | $457,000.00 |
| Interest at 12% from 12/1/14 up to and including 1/20/15 [On $422,000.00 UPB] | $7,032.90 |
| Interest at 12% from 1/21/15 up to and including 3/31/15 [On $457,000.00 UPB] | $6,117.10 |
| Late Charges | $1,315.00 |
| TOTAL: | $471,465.00 |

We urge you to bring your account current by paying the reinstatement amount of $14,465.00 no later than April 3, 2015 to avoid possible loss of your home through a foreclosure.

Because of interest, late charges, property tax advances, property insurance advances, inspection fees and other charges that may vary from day to day, the amount due on the date payment is made may be greater. Hence, if the amount shown above is paid, an adjustment may be necessary after payment is received, in which event we will inform you before depositing the payment.

For further information, call ABL ONE, LLC at 201-942-9090. If you are actively engaged in military service, or have been activated from reserve status, it is important that you contact us.

# PULVERS, PULVERS, THOMPSON & FRIEDMAN, LLP
## Counselors at Law

---

### 950 THIRD AVENUE, 11TH FLOOR, NEW YORK, NY 10022-1304
### Telephone: (212) 471-5199|Facsimile: (212) 355-900

Unless you notify us within 5 days after the date of this letter that you dispute the validity of the debt, or any portion thereof, the debt will be assumed by us to be valid. If you notify us in writing within the aforementioned period that the debt or any portion of thereof is disputed, we will obtain verification of the debt or a copy of a judgment against you, if any, and we will mail you a copy of such verification of judgment. Upon your written request within the aforementioned period, we will provide you with the name and address of the original creditor, if different from your current creditor.

If you dispute the amount due we would appreciate your submitting any documentation or evidence that you have in support of your contention that the amounts due are not correct.

Once the above amount is received foreclosure will be stopped, and no Claim of Lien will be recorded if the payment of that about brings your account current. If not, a lien will be recorded in the public records of Nassau County to secure this debt, as well as costs, interest and attorney's fees incurred in collecting the additional amounts.

Very Truly Yours,

Michael P. DeRosa, Esq.

**THIS COMMUNICATION IS AN ATTEMPT TO COLLECT A DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE. HOWEVER, IF YOU HAVE RECEIVED A DISCHARGE OF THIS DEBT IN BANKRUPTCY OR ARE CURRENTLY IN A BANKRUPTCY CASE, THIS NOTICE IS NOT INTENDED AS AN ATTEMPT TO COLLECT A DEBT AND, THIS COMPANY HAS A SECURITY INTEREST IN THE PROPERTY AND WILL ONLY EXERCISE ITS RIGHTS AS AGAINST THE PROPERTY.**

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Teignmouth Hall LLC
1303 Main Street
Port Jefferson, NY 11777

2. Article Number
(Transfer from service label)

PS Form 3811, July 2013      Domestic Return Receipt

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X
☐ Agent
☐ Addressee

B. Received by (Printed Name)      C. Date of Delivery

D. Is delivery address different from item 1?   ☐ Yes
If YES, enter delivery address below:   ☐ No

3. Service Type
☐ Certified Mail®     ☐ Priority Mail Express™
☐ Registered          ☐ Return Receipt for Merchandise
☐ Insured Mail        ☐ Collect on Delivery

4. Restricted Delivery? (Extra Fee)   ☐ Yes

7013 3020 0001 0793 8037

**PLACE STICKER AT TOP OF ENVELOPE TO THE RIGHT**
OF THE RETURN ADDRESS, FOLD AT DOTTED LINE

**CERTIFIED MAIL**™

7013 3020 0001 0793 8037
7013 3020 0001 0793 8037

**U.S. Postal Service™**
**CERTIFIED MAIL™ RECEIPT**
(Domestic Mail Only; No Insurance Coverage Provided)

For delivery information visit our website at www.usps.com®

OFFICIAL USE

Postage   $

Certified Fee

Return Receipt Fee
(Endorsement Required)

Restricted Delivery Fee
(Endorsement Required)

Total Postage & Fees   $

Sent To  Teignmouth Hall LLC

Street, Apt. No.; 1303 Main Street
or PO Box No.

City, State, ZIP+4  Port Jefferson NY 11777

Postmark
Here

PS Form 3800, August 2005          See Reverse for Instructions

PULVERS, THOMPSON & FRIEDMAN, LLP

t Law

VENUE, 11TH FLOOR, NEW YORK, NY 10022

Teignmouth Hall LLC
1303 Main Street
Port Jefferson, New York 11777

# PULVERS, PULVERS, THOMPSON & FRIEDMAN, LLP
## Counselors at Law

950 THIRD AVENUE, 11TH FLOOR, NEW YORK, NY 10022-1304
Telephone: (212) 471-5199|Facsimile: (212) 355-900

March 30, 2015

**Sent Via Certified and Regular Mail**

TEIGNMOUTH HALL LLC
1303 MAIN STREET
PORT JEFFERSON, NEW YORK 11777

Creditor:  ABL ONE, LLC
Property:  21 Bridge Lane, Port Jefferson, New York 11777

Dear TEIGNMOUTH HALL LLC:

This office represents the above named creditor. Please be advised that a claim in the amount of $471,465.00 calculated through March 31, 2015, has been referred to us for appropriate action, such as a mortgage foreclosure proceeding.

As of the date of this letter, unless you have received a discharge in bankruptcy, you owe $471,465.00 comprised of the following.

| | |
|---|---|
| Principal Amount: | $457,000.00 |
| Interest at 12% from 12/1/14 up to and including 1/20/15 [On $422,000.00 UPB] | $7,032.90 |
| Interest at 12% from 1/21/15 up to and including 3/31/15 [On $457,000.00 UPB] | $6,117.10 |
| Late Charges | $1,315.00 |
| | --------------------- |
| TOTAL: | $471,465.00 |

We urge you to bring your account current by paying the reinstatement amount of $14,465.00 no later than April 3, 2015 to avoid possible loss of your home through a foreclosure.

Because of interest, late charges, property tax advances, property insurance advances, inspection fees and other charges that may vary from day to day, the amount due on the date payment is made may be greater. Hence, if the amount shown above is paid, an adjustment may be necessary after payment is received, in which event we will inform you before depositing the payment.

For further information, call ABL ONE, LLC at 201-942-9090. If you are actively engaged in military service, or have been activated from reserve status, it is important that you contact us.

# PULVERS, PULVERS, THOMPSON & FRIEDMAN, LLP
## Counselors at Law

### 950 THIRD AVENUE, 11TH FLOOR, NEW YORK, NY 10022-1304
### Telephone: (212) 471-5199|Facsimile: (212) 355-900

Unless you notify us within 5 days after the date of this letter that you dispute the validity of the debt, or any portion thereof, the debt will be assumed by us to be valid. If you notify us in writing within the aforementioned period that the debt or any portion of thereof is disputed, we will obtain verification of the debt or a copy of a judgment against you, if any, and we will mail you a copy of such verification of judgment. Upon your written request within the aforementioned period, we will provide you with the name and address of the original creditor, if different from your current creditor.

If you dispute the amount due we would appreciate your submitting any documentation or evidence that you have in support of your contention that the amounts due are not correct.

Once the above amount is received foreclosure will be stopped, and no Claim of Lien will be recorded if the payment of that about brings your account current. If not, a lien will be recorded in the public records of Nassau County to secure this debt, as well as costs, interest and attorney's fees incurred in collecting the additional amounts.

Very Truly Yours

Michael P. DeRosa, Esq.

**THIS COMMUNICATION IS AN ATTEMPT TO COLLECT A DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE. HOWEVER, IF YOU HAVE RECEIVED A DISCHARGE OF THIS DEBT IN BANKRUPTCY OR ARE CURRENTLY IN A BANKRUPTCY CASE, THIS NOTICE IS NOT INTENDED AS AN ATTEMPT TO COLLECT A DEBT AND, THIS COMPANY HAS A SECURITY INTEREST IN THE PROPERTY AND WILL ONLY EXERCISE ITS RIGHTS AS AGAINST THE PROPERTY.**