UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------------x

CHRISTOPHER QUINN, and TEIGNMOUTH
HALL, LLC,

                    Plaintiffs,

   -against-

CROSBY CAPITAL USA LLC, BRIDGE LANE NY
LLC, PORT JEFFERSON LLC, YONEL DEVICO,
JOSEPH DeRUSCIO, ANNA CARLEY, DAVID
SHAULIAN, ASSET BASED LENDING, ABL
ONE LLC, ABL TWO LLC, ABL THREE LLC,
ASSET BASED MANAGERS LLC, PAUL
ULLMAN, KEVIN RODMAN, THE LAW OFFICE
OF STEVEN RUBEL, and STEVEN RUBEL,
ESQ.,

                    Defendants.

---------------------------------------------------------------x

**REPORT AND
RECOMMENDATION**
20-cv-358 (GRB)(SIL)

**STEVEN I. LOCKE, United States Magistrate Judge:**

By way of Complaint dated January 22, 2020, later modified by an Amended

Complaint dated February 19, 2020, *pro se* Plaintiff Christopher Quinn ("Plaintiff" or

"Quinn"), on behalf of himself and his limited liability company, Teignmouth Hall

LLC ("Teignmouth"), commenced this action against Defendants Crosby Capital USA

LLC ("Crosby Capital"), Bridge Lane NY LLC ("Bridge Lane"), Port Jefferson LLC

("Port Jefferson"), Yonel Devico ("Devico"), Joseph DeRuscio ("DeRuscio"), Anna

Carley ("Carley"), David Shaulian ("Shaulian" and collectively with Crosby Capital,

Bridge Lane, Port Jefferson, Devico, DeRuscio, and Carley, the "Crosby Capital

Defendants"), Asset Based Lending ("ABL"), ABL One LLC ("ABL One"), ABL Two

LLC ("ABL Two"), ABL Three LLC ("ABL Three"), Asset Based Managers LLC

("ABM"), Paul Ullman ("Ullman"), Kevin Rodman ("Rodman" and collectively with ABL, ABL One, ABL Two, ABL Three, ABM, and Ullman, the "ABL Defendants"), the Law Office of Steven Rubel (the "Law Office"), and Steven Rubel, Esq. ("Rubel" and together with the Law Office, the "Rubel Defendants") (the Crosby Capital Defendants, the ABL Defendants, and the Rubel Defendants collectively, "Defendants"). *See* Complaint ("Compl."), Docket Entry ("DE") [1]; Amended Complaint ("Am. Compl."), DE [17]. The Complaint and Amended Complaint allege violations of: (1) the Civil Racketeering Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961-68; (2) the prohibition against making false statements to the government, 18 U.S.C. § 1001; (3) the Frauds and Swindles Act, 18 U.S.C. § 1341; (4) the Real Estate Settlements and Procedures Act ("RESPA"), 12 U.S.C. § 2603; and (5) Title XIV of the Dodd-Frank Act, as well as state law causes of action for: (6) fraud; (7) breach of contract; (8) negligent misrepresentation; (9) conversion; and (10) constructive trust. *See id.* Plaintiff broadly directs all claims against all Defendants. *Id.*

Presently before the Court, on referral from the Honorable Gary R. Brown for Report and Recommendation, are Defendants' motions to dismiss the Amended Complaint for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) and failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure ("Fed. R. Civ. P."). *See* Rubel Defendants' Motion to Dismiss Plaintiff's Amended Complaint ("Rubel Motion" or "Rubel Mot."), DE [75]; ABL Defendants' Motion to Dismiss Plaintiff's Amended Complaint ("ABL Motion" or "ABL Mot."), DE [80];

Crosby Capital Defendants' Motion to Dismiss Plaintiff's Amended Complaint ("Crosby Capital Motion" or "Crosby Mot."), DE [87] (collectively, "Defendants' Motions").

For the reasons set forth herein, the Court respectfully recommends that Defendants' Motions be granted and that the Amended Complaint be dismissed with prejudice.

## I.   BACKGROUND

### A. <u>Materials Considered by the Court</u>

In light of the liberal pleading standard applicable to *pro se* complaints in this Circuit, *see Thompson v. Carter*, 284 F.3d 411, 419 (2d Cir. 2002), the Court draws the following facts from Plaintiff's Response in Opposition to Defendants' Motions to Dismiss ("Plaintiff's Response" or Pl. Resp.") DE [85], in addition to the Complaint and Amended Complaint. *See Washington v. Westchester Cnty. Dep't of Correction*, No. 13-cv-5322, 2015 WL 408941, at *1, n.1 (S.D.N.Y. Jan. 30, 2015) ("While the Court ordinarily may not consider factual allegations contained in opposition papers to a motion to dismiss, given Plaintiff's *pro se* status, the Court will consider new factual allegations contained in Plaintiff's opposition.").

Moreover, the Court considers the factual allegations set forth in the original Complaint and its attachments, to the extent such allegations are not repeated in the Amended Complaint or Plaintiff's Response. *See id.* ("[G]iven Plaintiff's *pro se* status, . . . the Court will consider facts from the Plaintiff's Complaint . . . that have not been repeated in the Amended Complaint." (citations omitted)); *see also Fleming v. City of*

*New York*, No. 10-cv-3345, 2014 WL 6769618, at *3 (S.D.N.Y. Nov. 26, 2014) ("Since *pro se* civil rights complaints should be read with . . . generosity, [Plaintiff's original] complaint must be given the benefit of incorporation." (alterations in original) (quoting *Camarano v. City of New York*, 624 F. Supp. 1144, 1147-48 (S.D.N.Y. 1986))).

The Court also considers all exhibits attached to Defendants' Motions, to the extent relied upon or referenced in the Amended Complaint or Plaintiff's Response. Although Defendants, and not Plaintiff, filed these documents with the Court, Plaintiff's Response repeatedly references portions of documents attached to Defendants' Motions as exhibits. Because the Court is construing Plaintiff's Response as an extension of the Amended Complaint, materials referenced therein are properly considered at this juncture. *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002) (noting that, for purposes of Fed. R. Civ. P. 12(b), "the complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference" (citation omitted)).

B. <u>Facts</u>

Plaintiff Quinn is a New York resident, and the sole owner of Teignmouth, a Delaware limited liability company. *See* Am. Compl. at 4; Pl. Resp. Ex. A (October 16, 2014 loan agreement). As to the Crosby Capital Defendants: Crosby Capital and Port Jefferson[1] are Florida limited liability companies; Bridge Lane is a New York limited liability company; Devico, DeRuscio, and Carley are Florida residents; and Shaulian is a New York resident. *Id.* at 3. As to the ABL Defendants: ABL, ABL

---

[1] Based on the parties' pleadings, at one point, Port Jefferson appears to have been a subsidiary of Crosby Capital. *See generally* Pl. Resp.

One[2], ABL Two, ABL Three, and ABM are New Jersey limited liability companies; and Ullman and Rodman are residents of New Jersey. *Id.* Both of the Rubel Defendants are citizens of New York. *Id.* Plaintiff individually names, but does not provide the title, role, or responsibilities of the following individuals and entities: (1) Yonel Devico; (2) Joseph DeRuscio; (3) Anna Carley; (4) Paul Ullman; (5) Kevin Rodman; (6) ABL Two; (7) ABL Three; and (8) ABM.

On October 16, 2014, Plaintiff "obtained a purchase and construction" loan from ABL for the purchase and improvement of a commercial property located at 21 Bridge Lane, Port Jefferson, New York 11777 (the "Property"). Am. Compl. at 6. According to Quinn, because neither "ABL One [n]or Asset Based Lending [were] licensed lender[s or] bank[s,]" ABL instructed Plaintiff to "fo[rm] an LLC to serve as the Mortgagor, so that the [ABL] could falsely categorize this loan as commercial in nature" and ABL could "deprive [Plaintiff of his] rights under [RESPA]." *Id.* Quinn formed Teignmouth to act as the mortgagor, and personally guaranteed the loan. *See* Pl. Resp. Ex. B (September 18, 2014 ABL loan terms sheet); Crosby Mot. Ex. A (Personal Guaranty, signed by Quinn and attached to the June 1, 2015 foreclosure Complaint (the "Guaranty")) at 50-56. In the Guaranty, Plaintiff "absolutely, unconditionally and irrevocably waive[d] any and all right to assert any defense, setoff counterclaim or crossclaim of any nature whatsoever with respect to this Guaranty or the obligations of the undersigned [Quinn] under this Guaranty or the obligations of any other person or party (including, without limitation, borrower)

---

[2] Based on the parties' pleadings, at one point, ABL One appears to have been a subsidiary of ABL. *See generally* Pl. Resp.

relating to this Guaranty or otherwise with respect to the Loan….” *Id.* at ¶ 12. The parties further agreed that Quinn's obligations under the Guaranty extended to ABL's “heirs, executors, administrators, legal representatives, successors and assigns….” *Id.* at ¶ 8.

At closing, ABL allegedly “certified on the HUD-1 Form the existence of a construction escrow account in the amount of $320,000.” *Id.* Rubel, representing ABL at the closing, apparently certified the existence of this account to Plaintiff. *See id.* Quinn alleges that, notwithstanding the representation, the escrow account “was [later] discovered not to have existed.” *Id.* The loan subsequently closed and was properly registered. *See id.*

On or about December 9, 2014, Rodman, on behalf of ABL, “sent an email to the Plaintiff advising that a wire transfer for the requested construction draw of $68,000 would be forthcoming the following morning[,]” and “requested the wire transfer instructions for the Plaintiff.” *Id.* The next morning, ABL apparently did not send the promised wire transfer, “but instead busied themselves registering the Mortgage with the Suffolk County Clerk as well as assignments of leases and rents.” *Id.*

Teignmouth subsequently defaulted on the mortgage, and ABL One (the entity then holding the note and mortgage) commenced foreclosure proceedings on June 1, 2015. *See* ABL Mot. Ex. A (June 1, 2015 Foreclosure Action Supplemental Summons and Notice). On or about January 21, 2016, ABL One transferred Plaintiff's mortgage and associated note to Port Jefferson. *See* ABL Mot. Ex. B (Suffolk County Clerk's

Assignment of Mortgage). Quinn contends that this transfer was "illegal" because "the address for the subject property used in the transfer document [wa]s erroneous, there [wa]s no Schedule A attached to clarify the parcel of the subject property[,]" and "Federal Standards were not met with regard to informing the borrower of the new lender by name, and providing contact information including telephone number, address, and loan balance." *See* Am. Compl. at 6. On July 6, 2016, after Plaintiff and Teignmouth failed to respond to the June 1, 2015 notice, Port Jefferson moved for a default judgment and the appointment of a referee to compute the sum owed to Port Jefferson by Quinn and Teignmouth. *See* ABL Mot. Ex. D (July 6, 2016 Default Judgment Order). Suffolk County Supreme Court Justice Joseph A. Santorelli entered the default judgment Order on July 15, 2016. *Id.*

Quinn alleges that, in or about July 2016, he and counsel for Defendants engaged in "settlement talks," but that the Crosby Capital Defendants allegedly misled Plaintiff and his counsel "into thinking that a settlement was imminent, exchanging emails negotiating same with the Plaintiff and the Plaintiff's counsel at the time while contemporaneously obtaining a default judgment for an inflated amount of money in Riverhead Court against Plaintiff." *Id.* Quinn further alleges that Defendants "manipulate[d] a local court to decide in their favor on the matter of foreclosure, while concealing the illegal nature of the loan and note transfers[,]" and that Plaintiff "was never heard by the local court in the matter of the foreclosure." *Id.* Defendants dispute these contentions. *See generally* Defendants' Motions.

On December 15, 2016, ABL One filed a motion for judgment of foreclosure and sale. *See* Rubel Mot. Ex. 2 (December 15, 2016 ABL One motion for judgment of foreclosure and sale). On January 4, 2017, Quinn and Teignmouth opposed ABL One's motion and filed a cross-motion seeking to vacate their default. *See* Rubel Mot. Ex. 3 (Quinn and Teignmouth opposition to ABL's December 15, 2016 motion). On April 10, 2017, Judge Santorelli issued an Order granting Port Jefferson's motion for a judgment of foreclosure and sale, and denying Plaintiff and Teignmouth's cross-motion seeking to vacate the default. *See* Rubel Mot. Ex. 4 (April 10, 2017 Order, issued by Judge Santorelli). In his Order, Judge Santorelli determined that Quinn and Teignmouth failed to demonstrate a reasonable excuse or a meritorious defense. *Id.* Judge Santorelli entered the judgment of foreclosure and sale on April 19, 2017. *See* Rubel Mot. Ex. 5-6.

On May 19, 2017, Port Jefferson noticed a sale of the Property that was to take place on June 30, 2017. *See* Crosby Mot. Ex. G (May 19, 2017 Notice of Sale). On June 30, 2017 at 9:17 AM, Teignmouth filed for Chapter 11 Bankruptcy protection in the United States Bankruptcy Court for the Eastern District of New York. *See* Crosby Mot. Ex. H (Teignmouth Chapter 11 Bankruptcy filing). The sale was cancelled to comply with the bankruptcy stay. After the Chapter 11 proceedings were dismissed on November 30, 2017, Port Jefferson noticed a sale of the Property by auction to take place on January 5, 2018. *See* Crosby Mot. Ex. I (November 30, 2017 Notice of Sale).

On March 20, 2018, Quinn filed for Chapter 13 Bankruptcy protection. *See* Crosby Mot. Ex. J (Quinn Chapter 13 Bankruptcy filing). In order to comply with the

mandatory stay, Port Jefferson did not sell the Property at that time. *See id.* On April 27, 2018, an order was issued lifting the automatic stay. *See* Crosby Mot. Ex. K (April 27, 2018 Order lifting bankruptcy stay). On May 16, 2018, Port Jefferson again noticed a sale of the Property to take place on June 7, 2018. *See* Crosby Mot. Ex. L (May 16, 2018 Notice of Sale). On June 7, 2018, the Property was sold to Bridge Lane for $100, leaving a deficiency of $810,768.45. *See* Crosby Mot. Ex. M (Referee's July 11, 2018 Report of Sale).

During the summer of 2017, Shaulian became the new owner of Port Jefferson. *See* Am. Compl. at 6. Quinn alleges that the transfer of ownership to Shaulian was illegal because Plaintiff, as borrower, was not given "written notice…within 30 days identifying the new lender by name, address, and telephone number, while also making the borrower aware of the current balance." *Id.* On August 17, 2017, Port Jefferson filed a petition seeking leave to file a separate deficiency action against Quinn, as guarantor of Teignmouth's initial loan on the Property. *See* Am. Compl. at 6-7. On November 2, 2017, Judge Santorelli entered an Order granting Port Jefferson leave to file a deficiency action against Plaintiff. *See* Rubel Mot. Ex. 6 (November 2, 2017 Order granting Port Jefferson leave, signed by Judge Santorelli).

On December 4, 2017, Port Jefferson commenced a deficiency action against Quinn in the Suffolk County Supreme Court, under Index No. 623208/2017, wherein it filed a motion for summary judgment in lieu of a complaint for a deficiency judgment. *See* Rubel Mot. Ex. 10. On July 18, 2018, the Suffolk County Supreme Court Justice William G. Ford entered an Order granting Port Jefferson summary

judgment. *See* Rubel Mot. Ex. 11. On August 29, 2018, Port Jefferson filed a motion seeking to confirm the report of sale and seeking a deficiency judgment against Quinn. *See* Rubel Mot. Ex. 8. On September 26, 2018, Judge Santorelli issued a Deficiency Judgment Order in favor of Port Jefferson against Plaintiff in the amount of $240,768.45.[3] *See* Am. Compl. at 8; Rubel Mot. Ex. 9. Judge Santorelli entered the Order on December 19, 2018. *See* Rubel Mot. Ex. 12.

## C. <u>Procedural History</u>

Quinn commenced this action against Defendants by way of Complaint dated January 22, 2020, and filed the Amended Complaint on February 19, 2020. *See* Compl.; Am. Compl. After Plaintiff filed the Amended Complaint, the Law Office was dismissed from this matter, and typographical errors in the Amended Complaint's caption were corrected. *See* February 19, 2020 Electronic Order.

On August 19, 2020, Judge Brown dismissed Teignmouth – as well as the causes of action levied against Defendants by Teignmouth – from the matter because, although Teignmouth had been "given 60 days to find counsel and was warned that [it] could be dismissed if counsel was not retained[,]" it "failed to retain counsel to represent it in this action." *See* August 19, 2020 Electronic Order (quoting *Rowland v. California Mens Colony, Unit II Mens Advisory Council*, 506 U.S. 194, 201-02 (1993) ("It has been the law for the better part of two centuries... that a corporation may appear in the federal courts only through licensed counsel."); *Cao v. Jones,* No.

---

[3] Judge Santorelli appears to have decreased the amount of the September 26, 2018 Deficiency Judgment Order against Quinn from $810,768.45 to $240,768.45. *See* Rubel Mot. Ex 9 at 2 (changed sum accompanied by Judge Santorelli's signature). The reason for this decrease is not apparent from the parties' pleadings or exhibits.

17-cv-7568, 2019 WL 1316910, at *5 (E.D.N.Y. Mar. 21, 2019) (citing *Lattanzio v. COMTA*, 481 F.3d 137, 139 (2d Cir. 2007)) ("Limited liability companies ("LLCs") are not exempt from this rule and a limited liability company may only appear in federal court through a licensed attorney."); *Grace v. Bank Leumi Tr. Co. of NY*, 443 F.3d 180, 192 (2d Cir. 2006) ("In particular, this rule has been applied to dismiss any action or motion filed by a corporation [or LLC] purporting to act pro se.")).

Defendants sought to file pre-answer motions to dismiss for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1) and for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6), and were permitted to do so by Judge Brown. On May 29, 2020, the ABL Defendants filed the ABL Motion, and on June 1, 2020, the Crosby Capital Defendants and the Rubel Defendants filed the Crosby Capital Motion and the Rubel Motion, respectively. Quinn opposed Defendants' Motions on September 25, 2020. *See* Pl. Resp. Judge Brown referred Defendants' Motions to this Court for report and recommendation on October 13, 2020, November 17, 2020, and November 19, 2020, respectively. *See* October 13, 2020 Electronic Order; November 17, 2020 Electronic Order; November 19, 2020 Electronic Order.

## II.    LEGAL STANDARDS

### A.  Fed. R. Civ. P. 12(b)(1)

"It is axiomatic that federal courts are courts of limited jurisdiction and may not decide cases over which they lack subject matter jurisdiction." *Lyndonville Sav. Bank & Tr. Co. v. Lussier*, 211 F.3d 697, 700 (2d Cir. 2000). To that end, "[d]etermining the existence of subject matter jurisdiction is a threshold inquiry and

a claim is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Morrison v. Nat'l Austl. Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008). In deciding a motion to dismiss for lack of subject matter jurisdiction, "a court must accept as true all material factual allegations in the complaint and refrain from drawing inferences in favor of the party contesting jurisdiction." *U.S. ex rel. Phipps v. Comprehensive Cmty. Dev. Corp.*, 152 F. Supp. 2d 443, 449 (S.D.N.Y. 2001).

However, "[w]here subject matter jurisdiction is challenged, ... a court may consider materials outside the pleadings, such as affidavits, documents and testimony." *Id.*; *see also All. For Envtl. Renewal, Inc. v. Pyramid Crossgates Co.*, 436 F.3d 82, 89, n.8 (2d Cir. 2006) ("The presentation of affidavits on a motion under Rule 12(b)(1) ... does not convert the motion into a motion for summary judgment under Rule 56.").

Lower federal courts lack subject matter jurisdiction over direct appeals of state court judgments under the *Rooker-Feldman* doctrine. *See Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 416-17, 44 S. Ct. 149, 150-51 (1923) (holding that only the Supreme Court can entertain a direct appeal from a state court judgment); *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 483, n.3, 103 S. Ct. 1303, 1308 (1983) (finding that federal courts lack jurisdiction over claims which are "inextricably intertwined" with prior state court determinations).

## B. <u>Fed. R. Civ. P. 12(b)(6)</u>

To survive a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1940 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1960 (2007)). A claim is considered plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678, 129 S. Ct. at 1949. But, a pleading "that offers only 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555, 127 S. Ct. at 1965). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 557, 127 S. Ct. at 1966).

In deciding a motion to dismiss under Fed. R. Civ. P. 12(b)(6), "a court must 'accept all allegations in the complaint as true and draw all inferences in the non-moving party's favor.'" *U.S. ex rel. Siegel v. Roche Diagnostics Corp.*, 988 F. Supp. 2d 341, 343 (E.D.N.Y. 2013) (quoting *LaFaro v. N.Y. Cardiothoracic Grp.*, 570 F.3d 471, 475 (2d Cir. 2009)). Nevertheless, "threadbare recitals of the elements of a cause of action" that are supported by "conclusory" statements and mere speculation are inadequate and subject to dismissal. *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010) (internal quotation and citation omitted); *see Iqbal*, 556 U.S. at 678, 129 S. Ct. at 1949 ("[T]he tenet that a court must accept as true all of the allegations contained

in a complaint is inapplicable to legal conclusions."). "The court's consideration on a motion under Fed. R. Civ. P. 12(b)(6) is limited to the factual allegations in the complaint; documents incorporated by reference into the complaint; matters of which judicial notice may be taken; and documents either in plaintiff's possession or of which plaintiff had knowledge and relied on in bringing suit." *Messina v. Mazzeo*, 854 F. Supp. 116, 128 (E.D.N.Y. 1994) (citing *Brass v. American Film Technologies, Inc.*, 987 F.2d 142, 150 (2d Cir. 1993)); *see also Burton v. Am. Fed'n of Gov't Employees (AFGE) 1988*, No. 11-cv-1416, 2012 WL 3580399, at *5 (E.D.N.Y. Aug. 17, 2012).

### C. *Pro Se* **Pleadings**

It is well-established that pleadings by *pro se* plaintiffs are held "to less stringent standards than formal pleadings drafted by lawyers." *Hughes v. Rowe*, 449 U.S. 5, 9, 101 S. Ct. 173, 176 (1980); *see also Erickson v. Pardus*, 551 U.S. 89, 94, 127 S. Ct. 2197, 2200 (2007) ("A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.") (internal citations omitted). The Second Circuit has held that a court reviewing a *pro se* complaint must "construe the complaint broadly, and interpret it to raise the strongest arguments that it suggests." *Weixel v. Bd. of Educ. of the City of New York*, 287 F.3d 138, 146 (2d Cir. 2002) (internal alterations omitted); *see also Rene v. Citibank N.A.*, 32 F. Supp. 2d 539, 541 (E.D.N.Y. 1999) (holding that a court must "make reasonable allowances so that . . . *pro se* plaintiffs do not forfeit their rights by virtue of their lack of legal training"). However, the court "need not argue a *pro se* litigant's case nor create a case for the

*pro se* which does not exist." *Ogunmokun v. Am. Educ. Servs./PHEAA*, No. 12-cv-4403, 2014 WL 4724707, at *3 (E.D.N.Y. Sept. 23, 2014) (quoting *Molina v. New York*, 956 F. Supp. 257, 259 (E.D.N.Y. 1995)).

## III. DISCUSSION

The Complaint and Amended Complaint allege causes of action under: (1) RICO, 18 U.S.C. §§ 1961-68; (2) "Fraud and False Statements," 18 U.S.C. § 1001; (3) the Frauds and Swindles Act, 18 U.S.C. § 1341; (4) RESPA, 12 U.S.C. § 2603; and (5) Title XIV of the Dodd-Frank Act, as well as state law causes of action for: fraud, breach of contract, negligent misrepresentation, conversion, and constructive trust. *See id.* Applying the standards outlined above, and for the reasons set forth below, the Court respectfully recommends that Defendants' Motions be granted and that the Amended Complaint be dismissed with prejudice against the Rubel and ABL Defendants on *res judicata* and collateral estoppel grounds, which were raised only by the Rubel and ABL Defendants, and that Plaintiff's claims against the Crosby Capital Defendants be dismissed with prejudice pursuant to the signed Guaranty, an argument that was made only by the Crosby Capital Defendants. Nevertheless, and for the sake of a more complete reading, the Court addresses Defendants' other arguments as well.

### A. <u>Defendants' Motions to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(1)</u>

Initially, Defendants assert that the Amended Complaint should be dismissed pursuant to the *Rooker-Feldman* doctrine because Plaintiff's claims "are nothing more than an improper subsequent attack on a judgment of foreclosure, and

subsequent deficiency judgments," *see* Rubel Defendants' Memorandum of Law in Support of their Motion to Dismiss ("Rubel Defendants' Memorandum" or "Rubel Mem."), DE [77], at 10, which "are essentially attempting to challenge" and "singularly derive from" the state court judgments. *See* Crosby Capital Defendants' Memorandum of Law in Support of their Motion to Dismiss ("Crosby Defendants' Memorandum" or "Crosby Mem."), DE [87-21], at 10; ABL Defendants' Memorandum of Law in Support of their Motion to Dismiss ("ABL Defendants' Memorandum" or "ABL Mem."), DE [84], at 4. Quinn counters that the "fraud exception to *Rooker-Feldman*" – upon which Plaintiff does not elaborate – should save his claims from dismissal. *See* Pl. Resp. at 2. The Court agrees with Defendants, and concludes that dismissal of the Amended Complaint for lack of subject matter jurisdiction under the *Rooker-Feldman* doctrine is appropriate.

The *Rooker-Feldman* doctrine "recognizes that 'federal district courts lack jurisdiction over suits that are, in substance, appeals from state-court judgments.'" *Alston v. Sebelius*, No. 13-cv-4537, 2014 WL 4374644, at *11 (E.D.N.Y. Sept. 2, 2014) (quoting *Hoblock v. Albany Cnty. Bd. of Elections*, 422 F.3d 77, 84 (2d Cir. 2005)); *see also Gribbin v. N.Y. State Unified Court Sys.*, 838 Fed. App'x 646 (2d. Cir. 2021) (summary order) (quoting *Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 644, n.3, 122 S. Ct. 1753, 1762, n.3 (2002)) ("'The *Rooker-Feldman* doctrine merely recognizes that 28 U.S.C. § 1331 is a grant of original jurisdiction, and does not authorize district courts to exercise appellate jurisdiction over state-court judgments,' a power reserved exclusively to the Supreme Court."); *Barbato v. U.S.*

*Bank Nat'l Assoc.*, No. 14-cv-2233, 2016 WL 158588, at *2 (S.D.N.Y. Jan. 12, 2016)

(citing *Vossbrinck v. Accredited Home Lenders, Inc.*, 773 F.3d 423, 426 (2d Cir. 2014))

(The *Rooker-Feldman* doctrine denies "federal district courts…jurisdiction over cases

that essentially amount to appeals of state court judgments."). "Underlying

the *Rooker-Feldman* doctrine is the principle, expressed by Congress in 28 U.S.C. §

1257, that within the federal judicial system, only the Supreme Court may review

state-court decisions." *Green v. Mattingly*, 585 F.3d 97, 101 (2d Cir.

2009) (quoting *Hoblock*, 422 F.3d at 85) (internal citations omitted).

The Second Circuit has identified four requirements that must be satisfied

before the doctrine applies:

- The federal-court plaintiff must have lost in state court;

- The plaintiff must 'complain [ ] of injuries caused by [a] state-court judgment[;]'

- The plaintiff must 'invite district court review and rejection of [that] judgment;' and

- The state-court judgment must have been 'rendered before the district court proceedings commenced'— *i.e., Rooker-Feldman* has no application to federal-court suits proceeding in parallel with ongoing state-court litigation.

*Hoblock*, 422 F.3d at 85 (quoting *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544

U.S. 280, 282, 125 S. Ct. 1517, 1521-22 (2005)); *see also T.A. v. Leff*, No. 17-cv-4291,

2018 WL 5077163, at *6-7 (E.D.N.Y. Jul. 19, 2018). This doctrine also prohibits a

district court review of claims that are "inextricably intertwined" with a state court's

judgment. *Kropelnicki v. Siegel*, 290 F.3d 118, 128 (2d Cir. 2002). A claim is

inextricably intertwined with the state court judgment if "the federal claim succeeds only to the extent that the state court wrongly decided the issues before it." *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 25, 107 S. Ct. 1519, 1533 (1987).

The Court concludes that all four factors of the *Rooker-Feldman* doctrine are present here. Quinn's claims in the current proceeding were fully and fairly litigated as part of the state court proceedings and he lost. Plaintiff's allegations, even construed liberally in his favor, essentially challenge the validity of the state court's findings and judgments. In broad terms, Quinn alleges that an overarching racketeering enterprise tainted the state court proceeding and those involved conspired to, among other things, deprive him from fully and properly using the loan that he received from ABL. *See generally* Compl.; Am. Compl. Plaintiff's claims thus presuppose and hinge on the allegation of unlawful conduct in the loan process and ensuing litigation. In essence, Quinn requests review of the merits of the state court judgments, including a finding that the state court judgments against him were "illegal" or "fraudulent." *See* Am. Compl. at 6-8. It is also undisputed that the state court litigation concluded, and the judgments were rendered before this federal action was commenced.

Notwithstanding the *Rooker-Feldman* doctrine's apparent applicability, Plaintiff contends that his claims are exempt because of the fraud exception to the *Rooker-Feldman* doctrine. *See* Pl. Resp. at 2. Defendants counter that Quinn's assertion is baseless, and unsupported by law or fact. *See* Rubel Defendants' Reply in support of their Motion to Dismiss ("Rubel Defendants' Reply" or "Rubel Reply"),

DE [79], at 1-2; ABL Defendants' Reply in Support of their Motion to Dismiss ("ABL Defendants' Reply" or "ABL Reply"), DE [86], at 2-4; Crosby Capital Defendants' Reply in Support of their Motion to Dismiss ("Crosby Defendants' Reply" or "Crosby Reply"), DE [87-21], at 3-4. The Court agrees.

The Second Circuit has "never recognized a blanket fraud exception to *Rooker-Feldman*." *Kropelnicki v. Siegel*, 290 F.3d 118, 128 (2d Cir. 2002) (internal quotation marks and citation omitted); *see also Swiatkowski v. Citibank*, 745 F. Supp. 2d 150, 166 (E.D.N.Y. 2010). In *Kropelnicki*, the plaintiff asserted she was kept out of the state court proceedings due to the defendant's fraud, but the Second Circuit nevertheless concluded that the plaintiff had failed to show an adequate reason that precluded her from raising her claims in state court. The Second Circuit stated that the plaintiff had to show "some factor independent of the actions of the opposing party that precluded [her] from raising [her] federal claims." *Kropelnicki*, 290 F.3d at 128-29 (internal quotation marks and citations omitted).

Here, Quinn alleges that the following acts, committed by Defendants, render the *Rooker-Feldman* doctrine inapplicable:

- "Defendants ABL One, Asset Based Managers, Steven Rubell and the Law office of Steven Rubell defrauded the Plaintiff when at loan closing the Escrow Balance was falsely indicated on the HUD-1 Document.";

- "Defendant Kevin Rodman defrauded the Plaintiff when he emailed that a wire transfer for construction draw funds would be coming the following day on December 9, 2014."; and

- "Defendant David Shaulian [d]efrauded the Plaintiff when he falsely entered an additional [default judgment] of $958,404.40 in December 2018."

*See* Pl. Resp. at 2. Notwithstanding Plaintiff's allegations, he fails to specify how these acts render the underlying default judgment fraudulent, and thus exempt from the *Rooker-Feldman* doctrine. Quinn's vague and conclusory allegations, without specific factual support, fail to sufficiently establish that the Court has subject matter jurisdiction over these claims. Accordingly, the Court respectfully recommends that Plaintiff's claims be dismissed for lack of subject matter jurisdiction. Ordinarily, the Court would recommend leave to replead this cause of action to permit Quinn an opportunity to cure the deficiencies in the Amended Complaint. Nevertheless, because dismissal with prejudice is appropriate on other grounds, leave to replead is unwarranted.

## B. <u>Defendants' Motions to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6)</u>

### 1. *Res Judicata*

At the outset, the Rubel and ABL Defendants also move to dismiss the Amended Complaint pursuant to the doctrine of *res judicata*, *see* Rubel Mem. at 12-13; ABL Mem. at 6-9, which is properly considered under Rule 12(b)(6). *See Brown Media Corp. v. K &L Gates, LLP*, 551 B.R. 708, 717 (E.D.N.Y. 2015) (quoting *Thompson v. County of Franklin*, 15 F.3d 245, 253 (2d Cir. 1994)) ("*Res judicata* challenged may properly be raised via a motion to dismiss for failure to state a claim under Rule 12(b)(6)."). Quinn asserts that *res judicata* should not apply, because his attorney in the underlying foreclosure action "missed a deadline[,]" and "[had] not

been responsive [to] the [C]ourt[,]" resulting in a default judgment. *See* Pl. Resp. at 2.

*Pro se* litigants, like represented litigants, are bound by the doctrine of *res judicata. Romaka v. H&R Block Mortg. Corp.*, No. 17-cv-7411, 2018 WL 4783979, at *5 (E.D.N.Y. Sept. 30, 2018) (citation omitted). The doctrine of *res judicata* "prevents a plaintiff from raising a claim that was or could have been raised in a prior suit." *McKithen v. Brown*, 481 F.3d 89, 104 (2d Cir. 2007); *see also Farbstein v. Hicksville Pub. Library*, 323 F. Supp. 2d 414, 422 (E.D.N.Y. 2004)*; Migra v. Warren City Sch. Dist. Bd. Of Educ.*, 465 U.S. 75, 81, 104 S. Ct. 892, 896 (1984). To determine whether *res judicata* precludes subsequent litigation, a court must find that "(1) the previous action involved an adjudication on the merits; (2) the previous action involved the [same parties] or those in privity with them; [and] (3) the claims asserted in the subsequent action were, or could have been, raised in the prior action." *Pike v. Freeman*, 266 F.3d 78, 91 (2d Cir. 2001) (alterations in original) (internal quotation marks and citations omitted); *see also Monahan v. N.Y. City Dep't of Corr.*, 214 F.3d 275, 285 (2d Cir. 2000); *Kesten v. Eastern Sav. Bank*, No. 07-cv-2071, 2009 WL 303327, *3 (E.D.N.Y. Feb. 9, 2009) (citing *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994)) (under New York's "transactional" approach to claim preclusion, a claim should have been brought if it arises "out of the same factual grouping as an earlier litigated claim even if the later claim is based on different legal theories or seeks dissimilar or additional relief").

In the foreclosure context, specifically, "Courts in this Circuit have found a plaintiff's federal court claim is precluded by a state-court judgment in a foreclosure action when the plaintiff has alleged in federal court that the defendants acted improperly in connection with the making, validity, or enforcement of the underlying mortgage." *Bell v. Deutsche Bank*, No. 18-cv-1593, 2019 WL 4917901, at *5 (E.D.N.Y. Sept. 30, 2019) (citing *George v. Nationstar Mortg., LLC*, No. 16-cv-261, 2017 WL 3316065, at *7 (E.D.N.Y. Aug. 2, 2017) (internal quotation marks omitted); *Zap v. Fed. Home Mortg. Corp.*, No. 15-cv-0624, 2016 WL 2992147, at *4 (N.D.N.Y. May 20, 2016); *Gordon v. First Franklin Fin. Corp.*, No. 15-cv-0775, 2016 WL 792412, at *7 (E.D.N.Y. Feb. 29, 2016)); *see also Solomon v. Ocwen Loan Servicing, LLC*, No. 12-cv-2856, 2013 WL 1715878, at *7 (E.D.N.Y. Apr. 12, 2013).

Applying the above standards, the Court finds that the Rubel and ABL Defendants have satisfied the three elements necessary to establish *res judicata*, and preclude Quinn's claims. As to the underlying foreclosure action's default judgment resolution, courts have held that, under New York law, a default judgment "has *res judicata* effect equal to that of a judgment on the merits." *Simmons v. Trans Express Inc.*, 355 F. Supp. 3d 165, 173 (E.D.N.Y. 2019) (quoting *Clark v. Cavalry Portfolio Servs., LLC*, No. 17-cv-99, 2017 WL 6757224, at *3 (S.D.N.Y. Dec. 29, 2017)); *see also Niles v. Wilshire Inv. Group, LLC*, 859 F. Supp. 2d 308, 338 (E.D.N.Y. 2012) (quoting *Done v. Wells Fargo Bank, N.A.*, No. 08-cv-3040, 2009 WL 2959619, at *4 (E.D.N.Y. Sept. 14, 2009)) ("A judgment of foreclosure and sale obtained by default constitutes a decision on the merits."); *Gianatasio v. D'Agostino*, 862 F. Supp. 2d 343, 349

(S.D.N.Y. 2012) (quoting *Dillard v. Henderson,* 43 F. Supp. 2d 367, 369 (S.D.N.Y. 1999)) (Noting that "[a] judgment on the merits for purposes of *res judicata* is not necessarily a judgment based upon a trial of contested facts; it may, for example, be a default judgment, a judgment on stipulation or agreement, or a summary judgment."). As such, the Court finds that Defendants have established that the underlying judgment was rendered on the merits. Further, despite Plaintiff's contentions to the contrary, Defendants have established that the state foreclosure proceedings involved the same parties or those in privity with them. *Pike*, 266 F.3d at 91. Plaintiff, Teignmouth, ABL, ABL One, Port Jefferson, and Shaulian participated in the foreclosure proceedings and are involved in this matter. *See* Rubel Mot. Ex. 3-12.

The Rubel and ABL Defendants have also demonstrated that the claims asserted by Quinn in this action "were, or could have been, raised in the prior action." *Pike*, 266 F.3d at 91. Indeed, Plaintiff had the opportunity to assert these claims during the foreclosure and deficiency proceedings but, apparently, failed to do so. Quinn's claims that Defendants committed fraud (a) in originating and enforcing the terms of the mortgage loan, (b) commencing and prosecuting the foreclosure action, and (c) obtaining and enforcing the foreclosure judgments would have been central to deciding entitlement to judgment in the foreclosure action. *See SSJ Dev. of Sheepshead Bay I, LLC v. Amalgamated Bank,* 128 A.D.3d 674, 675, 10 N.Y.S.3d 105, 107-8 (2d Dept. 2015); *New Horizons Inv'rs v. Marine Midland Bank,* 248 A.D.2d 449, 450, 669 N.Y.S.2d 666, 667 (2d Dept. 1998) (finding that "[t]he issues raised by the

plaintiffs in the instant case concern the parties' rights and obligations under the mortgage agreement and could have been raised as equitable defenses in the foreclosure action"). These claims also arise out of the same transaction or series of transactions as the foreclosure action, signaling the applicability of *res judicata*. *See Bell v. Deutsche Bank*, No. 18-cv-1593, 2019 WL 4917901, *5 (E.D.N.Y. Sept. 30, 2019); *Done v. Wells Fargo Bank*, N.A., No. 08-cv-3040, 2009 WL 2959619, at *3 (E.D.N.Y. Sept. 14, 2009). Accordingly, the Court respectfully recommends that the Rubel and ABL Defendants' motions to dismiss on this alternative basis be granted, and that the Amended Complaint be dismissed with prejudice as to them on *res judicata* grounds.

### 2. Collateral Estoppel

The Rubel and ABL Defendants likewise move to dismiss the Amended Complaint pursuant to the doctrine of collateral estoppel, which is also properly reviewed under Rule 12(b)(6). *See* Rubel Mem. at 12-13; ABL Mem. at 9-10; *see also Bd. of Managers of 195 Hudson Street Condominium v. Jeffrey M. Brown Associates, Inc.*, 652 F. Supp 2d. 463, 470 (S.D.N.Y. 2009) (citing *Sassower v. Abrams*, 833 F. Supp. 253, 264, n.18 (S.D.N.Y. 1993) (finding it "well settled that a court may dismiss a claim on *res judicata* or collateral estoppel grounds on a Rule 12(b)(6) motion."). Plaintiff does not explicitly address Defendants' motions for dismissal on this ground. *See generally* Pl. Resp.

Under New York law, collateral estoppel bars re-litigation of an issue when (1) "the identical issue necessarily was decided in the prior action and is decisive of the

present action"; and (2) "the party to be precluded from re-litigating the issue had a full and fair opportunity to litigate the issue in the prior action." *See Caldwell v. Gutman, Mintz, Baker & Sonnenfeldt*, 701 F. Supp. 2d 340, 349-50 (E.D.N.Y. 2010); *see also In re Hyman*, 502 F.3d 61, 65 (2d Cir. 2007); *Fletcher v. Atex, Inc.*, 68 F.3d 1451, 1457 (2d Cir. 1995) (Finding that "the doctrine of collateral estoppel precludes a party from litigating in a subsequent action or proceeding on an issue clearly raised in a prior action or proceeding and decided against that party…whether or not the tribunals or causes of action are the same.") (internal quotations and citations omitted).

Applying these standards, the Court again concludes that the Rubel and ABL Defendants have established that Plaintiff is collaterally estopped from prosecuting his Amended Complaint as to them. Again, the claims brought here would have to have been – and, in fact, were – "necessarily decided" by Judge Santorelli in his April 10, 2017 decision, prior to which Quinn "had a full and fair opportunity to litigate the issue[s] in the prior action." *Caldwell*, 701 F. Supp. 2d at 349-50. Accordingly, the Court respectfully recommends that the Rubel and ABL Defendants' motions to dismiss the Amended Complaint on this alternative basis be granted with prejudice as well. Notwithstanding the Court's recommendations as to the Rubel and ABL Defendants' arguments under *res judicata* and collateral estoppel, the Court still evaluates whether Quinn's individual causes of action should be dismissed for failure to state a claim, pursuant to Fed. R. Civ. P. 12(b)(6).

### 3. RICO

In the Amended Complaint, Quinn broadly asserts a RICO cause of action against all Defendants. *See* Am. Compl. at 4. Defendants contend that the Amended Complaint fails to set forth a plausible RICO claim, because it is not pled with the required particularity under Rule 9(b). *See* Rubel Mem. at 15-17; ABL Mem. at 11-13; Crosby Mem. at 11-13. Quinn does not specifically address Defendants' argument. *See generally* Pl. Resp.

Congress enacted RICO to prevent organized crime from infiltrating America's legitimate business organizations. *See Manley v. Doby*, No. 12-cv-4835, 2012 WL 5866210, at *3 (E.D.N.Y. Nov. 19, 2012) (citing *Moccio v. Cablevision Sys. Corp.*, 208 F. Supp. 2d 361, 371 (E.D.N.Y. 2002)). The Act contains a criminal provision, *see* 18 U.S.C. § 1962, and a civil provision, *see* 18 U.S.C. § 1964. To establish a civil RICO claim, "a plaintiff must show: '(1) a violation of the RICO statute, 18 U.S.C. § 1962; (2) an injury to business or property; and (3) that the injury was caused by the violation of Section 1962.'" *DeFalco v. Bernas*, 244 F.3d 286, 305 (2d Cir. 2001) (quoting *Pinnacle Consultants, Ltd. v. Leucadia Nat'l Corp.*, 101 F.3d 900, 904 (2d Cir. 1996)).

Here, Plaintiff's pleading burden is twofold. First, he must allege that Defendants have "violated the substantive RICO statute," commonly known as "criminal RICO." *See Moss v. Morgan Stanley, Inc.*, 719 F.2d 5, 17 (2d Cir. 1983). In order to do so, Quinn must allege "seven constituent elements: (1) that the defendant (2) through the commission of two or more acts (3) constituting a 'pattern' (4) of

'racketeering activity' (5) directly or indirectly invests in, or maintains an interest in, or participates in (6) an 'enterprise' (7) the activities of which affect interstate or foreign commerce." *Id.* (quoting 18 U.S.C. §§ 1962(a)-(c)). Next, Plaintiff must show that Defendants have injured his "business or property by reason of a violation of section 1962." *Id.* "A complaint alleging [federal] mail and wire fraud must show (1) the existence of a scheme to defraud, (2) defendant's knowing or intentional participation in the scheme, and (3) the use of interstate mails or transmission facilities in furtherance of the scheme." *S.Q.K.F.C., Inc. v. Bell Atl. TriCon Leasing Corp.*, 84 F.3d 629, 633 (2d Cir. 1996) (citing *United States v. Gelb,* 700 F.2d 875, 879 (2d Cir. 1983)). Moreover, "in order to prevail in a civil RICO action predicated on any type of fraud, ... the plaintiff must establish 'reasonable reliance' on the defendants' purported misrepresentations or omissions." *Bank of China, N.Y. Branch v. NBM LLC*, 359 F.3d 171, 178 (2d Cir. 2004).

The federal offenses of wire and mail fraud are predicate offenses which qualify as "racketeering activity." 18 U.S.C. § 1961(1); *see also* 18 U.S.C. §§ 1341, 1343. An essential element of wire and mail fraud is a "scheme or artifice to defraud;" it requires "proof that defendants possessed a fraudulent intent." *United States v. Starr*, 816 F.2d 94, 98 (2d Cir. 1987); *see also Beck v. Mfrs. Hanover Trust Co.*, 820 F.2d 46, 49 (2d Cir. 1987) ("In general, the mail and wire fraud statutes require, *inter alia*, a showing of intentional fraud."), *abrogated on other grounds by United States v. Indelicato*, 865 F.2d 1370, 1378 (2d Cir. 1989).

Where the predicate acts alleged involve mail or wire fraud, allegations must satisfy the particularity requirement of Rule 9(b). *See McLaughlin v. Anderson*, 962 F.2d 187, 191 (2d Cir. 1992). Fed. R. Civ. P. 9(b) provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). To satisfy Rule 9(b), a complaint "must adequately specify the statements it claims were false or misleading, give particulars as to the respect in which plaintiff contends the statements were fraudulent, state when and where the statements were made, and identify those responsible for the statements." *Cosmas v. Hassett*, 886 F.2d 8, 11 (2d Cir. 1989). Allegations of mail or wire fraud must also "specify the use of the mails and wires with particularity." *Zaro Licensing, Inc. v. Cinmar, Inc.*, 779 F. Supp. 276, 281 (S.D.N.Y. 1991). Further, where the fraudulent wire scheme involves more than one defendant, the plaintiff must "particularize and prove each defendant's participation in the fraud and each defendant's enactment of the two necessary predicate acts." *USA Certified Merchs., LLC v. Koebel*, 262 F. Supp. 2d 319, 332 (S.D.N.Y. 2003) (citing *DiVittorio v. Equidyne Extractive Indus., Inc.*, 822 F.2d 1242, 1247 (2d Cir. 1987).

Applying these standards, the Court concludes that the Amended Complaint fails to set forth a plausible RICO cause of action. First, Plaintiff fails to allege, with the *required* particularity, that Defendants – either jointly or individually – committed two or more injurious acts, such that they could be considered a "pattern." Indeed, while Quinn claims that subsets of Defendants allegedly behaved in a

"fraudulent" manner when interacting with him, he fails to identify any individual Defendant's purported wrongful acts or omissions with the particularity required by Rule 9(b). *See Green v. Harris*, 309 F. Supp. 3d 21, 23 (W.D.N.Y. 2018) (quoting *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009)) ("Even in a pro se case, however, 'although a court must accept as true all of the allegations contained in a complaint, that tenet is inapplicable to legal conclusions, and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice'"); *see also, Curtis & Assocs., P.C. v. Law Offices of David M. Bushman, Esq.*, 758 F. Supp. 2d 153, 167 (E.D.N.Y. 2010) (citing *City of New York v. Smokes-Spirits.com, Inc.*, 541 F.3d 425, 446 (2d Cir. 2008)) ("Moreover, where, as here, a plaintiff alleges RICO predicate acts based upon fraudulent activities such as mail or wire fraud, a plaintiff must additionally satisfy the particularity requirements of Federal Rule of Civil Procedure 9(b).").

Further, the Amended Complaint does not plausibly allege that Defendants were engaged in a "racketeering activity" or how they participated in an "enterprise." *See First Nationwide Bank v. Gelt Funding, Corp.*, 820 F. Supp. 89, 98 (S.D.N.Y. 1993), *aff'd*, 27 F.3d 763 (2d Cir. 1994) ("[A] series of discontinuous independent frauds is no more an "enterprise" than it is a single conspiracy."). These omissions are fatal to Quinn's RICO claim, especially in light of his burden to allege multiple predicate acts, which constitute a pattern of racketeering activity. *See Red Ball Interior Demolition Corp. v. Palmadessa,* 874 F. Supp. 576, 583 (S.D.N.Y. 1995) (citing *H.J., Inc. v. Northwestern Bell Tel. Co.,* 492 U.S. 229, 249-50, 109 S. Ct. 2893,

2905-06 (1989)).  Based on Plaintiff's failure to plead several key elements, the Court concludes that Quinn has failed to properly allege a RICO claim.  Accordingly, the Court respectfully recommends that Defendants' motions to dismiss Plaintiff's RICO claim be granted on this alternative basis.[4]

### 4. Frauds and Swindles Act

Defendants argue that Quinn fails to state a cause of action against Defendants under the Frauds and Swindles Act, 18 U.S.C.A. § 1341, because civil enforcement of the mail, wire, and bank fraud statutes is not permitted.  *See* Rubel Mem. at 16; ABL Mem. at 14; Crosby Mem. at 12.  Plaintiff again does not address Defendants' assertions.  *See generally* Pl. Resp.

In this Circuit, it is well settled that there is no private right of action under 18 U.S.C. § 1341, the Frauds and Swindles Act.  *See Vidurek v. Koskinen*, 789 Fed. App'x 889, 894 (2d Cir. 2019); *Kashelkar v. Bluestone*, 306 Fed. App'x 690, 692 (2d Cir. 2009); *see also In re Trilegiant Corp., Inc.*, 11 F Supp 3d 132, 140-41 (D. Conn. 2014) (holding that "[T]here is no independent civil cause of action for mail, wire, and bank fraud."); *Garay v. Bancorp*, 303 F. Supp. 2d 299, 303 (E.D.N.Y. 2004) (citing *Silva v. Neumei*, 152 F.3d 920, 920 (2d Cir. 1998); *Pharr v. Evergreen Gardens, Inc.*, No. 03-cv-5520, 2004 WL 42262, at *1, n.2 (S.D.N.Y. Jan. 5, 2004); *Fitzgerald v. Pharmacia Corp.*, No. 01-cv-6974, 2002 WL 826824, at *1, n.2 (S.D.N.Y. Apr. 30, 2002)).

---

[4] Again, leave to replead is denied because Plaintiff's claim is barred on other grounds.

Applying these standards, the Court finds that Plaintiff has inappropriately asserted a claim against Defendants for violation of the Frauds and Swindles Act. Accordingly, the Court respectfully recommends that Defendants' motions to dismiss this cause of action be granted, and that this claim be dismissed on this alternate ground with prejudice.

### 5. Fraud and False Statements

Plaintiff next claims – albeit broadly – that he was harmed by Defendants' alleged violation of 18 U.S.C. § 1001. *See* Am. Compl. at 4. In response, Defendants argue again that this cause of action must be dismissed because Quinn, as a private citizen, cannot enforce section 1001 – a criminal statute. *See* Rubel Mem. at 16; ABL Mem. at 14; Crosby Mem. at 12-13.

Section 1001(a) provides that:

> Except as otherwise provided in this section, whoever, in any matter within the jurisdiction of the executive, legislative, or judicial branch of the Government of the United States, knowingly or willfully — (1) falsifies, conceals, or covers up by any trick, scheme, or device a material fact; (2) makes any materially false, fictitious, or fraudulent statement or representation; or (3) makes or uses any false writing or document knowing the same to contain any materially false, fictitious or fraudulent statement or entry; shall be fined under this title, [or imprisoned].

18 U.S.C. § 1001(a). "Section 1001 criminalizes false statements and similar misconduct occurring 'in any matter within the jurisdiction of any department or agency of the United States.'" *Hubbard v. United States*, 514 U.S. 695, 699, 115 S. Ct. 1754, 1757 (1995). The statute is a criminal statute with no "explicit evidence of

Congressional intent" to create a private cause of action. *See Cenzon-DeCarlo v. Mount Sinai Hosp.*, 626 F.3d 695, 697 (2d Cir. 2010) ("Federal courts have inferred private rights of action, but only when there is explicit evidence of Congressional intent."); *see also Zito v. NYC Office of Payroll Admin*, No. 11-cv-2779, 2011 WL 5420054, at *3 (S.D.N.Y. Nov. 9, 2011) ("A private right of action will not be implied without 'explicit evidence of Congressional intent.'" (quoting *Cenzon-DeCarlo*, 626 F.3d at 697)). Where "there is no explicit evidence of Congressional intent" to create a private cause of action, a private citizen cannot enforce this federal criminal law. *See Momot v. Dziarcak*, 208 F. Supp. 3d 450, 460 (N.D.N.Y. 2016) ("Courts examining [section 1001(a)] have concluded that [section 1001(a)] contains no implied right of a civil action."); *see also Forkin v. Local 804 Union (IBT)*, 394 F. Supp. 3d 287, 308 (E.D.N.Y. 2019).

Applying these standards, the Court finds that Plaintiff, as a private citizen, cannot enforce this statute through a civil lawsuit. Accordingly, the Court respectfully recommends that Defendants' motions to dismiss Quinn's section 1001 claim on this basis be granted with prejudice.

### 6. RESPA

Plaintiff next asserts a claim against Defendants for their alleged technical violation of RESPA. *See* Am. Compl. at 4. Specifically, Quinn alleges that, "[a]t the time of Closing, [the ABL Defendants] certified on the HUD-1 Form the existence of a construction escrow account in the amount of $320,000…[which] was discovered not to have existed during later due diligence." Am. Compl. at 6. Collectively, Defendants

contend that Plaintiff has failed to state a claim for relief under RESPA because: (1) the loan at issue is a commercial loan, and thus not governed by RESPA; (2) RESPA does not provide a private right of action for alleged technical violations of its disclosure requirements; and (3) RESPA claims are subject to a one-year statute of limitations. *See* Rubel Mem. at 17; ABL Mem. at 14-17; Crosby Mem. at 13-14.

Courts in this Circuit have routinely held that RESPA only applies to residential loans, and that commercial loans to not fall within RESPA's ambit. *See Sylvester v. Interbay Funding LLC*, No. 15-cv-1736, 2017 WL 4382056, at *4 (S.D.N.Y. Sept. 29, 2017) (holding that "RESPA does not apply to [b]usiness purpose loans,…which are defined as extension[s] of credit primarily for a business, commercial, or agricultural purpose…" (internal quotation marks omitted)); *Royal Host Realty, LLC v. 793 Ninth Avenue Realty, LLC*, 192 F. Supp. 3d 348, 354 (S.D.N.Y. 2016); *Mauro v. Countrywide Home Loans, Inc.*, 727 F. Supp. 2d 145, 150, n.5 (E.D.N.Y. 2010). Further, it is settled that RESPA provides no private right of action for technical violations of its disclosure mandates, *see Knox v. Countrywide Bank*, No. 13-cv-3789, 2015 WL 5254519, at *6 (E.D.N.Y. Jul. 29, 2015); *see also Nelson v. JPMorgan Chase Bank, N.A.*, 707 F. Supp. 2d 309, 317 (E.D.N.Y. 2009) (citing *Ianuzzi v. Washington Mut. Bank,* No. 07-cv-964, 2008 WL 3978189, *7, n.3 (E.D.N.Y. Aug. 21, 2008); *Mercado v. Playa Realty Corp.*, No. 03-cv-33427, 2005 WL 1594306, at *9 (E.D.N.Y. Jul. 7, 2005); *Collier v. Home Plus Associates*, No. 43481/03, 2007 WL 4793201, at *6 (Sup. Ct. N.Y. Cnty Dec. 21, 2007)), and that "claims under RESPA are subject to a one[-]year statute of limitations." *Knox*, 2015 WL 5254519,

at *7 (citing *Bosch v. Lamattina*, No. 08-cv-238, 2008 WL 4820247, at *2 (E.D.N.Y. Nov. 4, 2008)).

Applying the standards above, the Court finds that Plaintiff has failed to state a plausible claim for relief under RESPA. Initially, the parties do not dispute that the loan procured from ABL by Teignmouth was commercial in nature, and was "secured by a Building Mortgage." *See* Rubel Mot. Ex. 13 & 14. Additionally, notwithstanding Quinn's allegation that ABL instructed Plaintiff to "form an LLC to serve as the Mortgagor, so that [ABL] could falsely categorize this loan as commercial in nature[,]" in order to "deprive [Quinn of] his rights under RESPA," Am. Compl. at 6, this claim fails as a matter of law, because Teignmouth's loan was inherently commercial and acquired for a business purpose. *See Sylvester*, 2017 WL 4382056, at *4. Further, even if Plaintiff's claim were permitted as a matter of law, it would still be time-barred by RESPA's one-year statute of limitations. *See Knox*, 2015 WL 5254519, at *7. Since the mortgage loan was executed on October 16, 2014, the longest possible timeframe for Quinn to assert a claim under RESPA expired on October 16, 2015; Quinn did not file this lawsuit until January 2020. *See* Compl; Am. Compl. For these reasons, this claim fails as a matter of law. Accordingly, the Court respectfully recommends that Defendants' motions to dismiss Plaintiff's RESPA cause of action be granted, and that this claim be dismissed with prejudice on this additional ground.

### 7. Title XIV of the Dodd-Frank Act

As best gleaned from the Complaint, Quinn also asserts a claim under Title XIV of the Dodd-Frank Wall Street Reform and Consumer Protection Act ("Dodd-Frank Act"), citing amendments to the Truth in Lending Act ("TILA"), 15 U.S.C. §§ 1639(a) and (b). *See* Am. Compl. at 4. Defendants contend that this claim should be dismissed with prejudice because none of the Defendants can be properly defined as a "mortgage originator" under the Dodd-Frank Act, *see* Rubel Mem. at 17; Crosby Mem. at 14-15; ABL Mem. at 16. Outside of his allegations in the Complaint and Amended Complaint, Plaintiff does not explicitly address Defendants' arguments. *See generally* Pl. Resp.

The Dodd-Frank act defines a "mortgage originator" as an individual or entity who, "for direct or indirect compensation or gain, or in the expectation of direct or indirect compensation or gain (i) takes a residential mortgage loan application; (ii) assists a consumer in obtaining or applying to obtain a residential mortgage loan; or (iii) offers or negotiates terms of a residential mortgage loan…" *See* 15 U.S.C. § 1602(dd)(2)(A). An individual or entity who do not "receive cash compensation or gain" for assisting residential loan applicants, or are creditors of such applicants expressly *cannot* be considered a "mortgage originator." *Id*; *see also Federal Housing Finance Agency for Federal National Mortgage Assoc. v. Nomura Holding America, Inc.*, 873 F.3d 85, 102 (2d Cir. 2017) (citing *United States ex rel. O'Donnell v. Countrywide Home Loans, Inc.*, 822 F.3d 650, 653, n.2 (2d Cir. 2016)).

It is established that commercial loans do not fall under the purview of this section of the Dodd-Frank Act. *See id.* Further, plaintiffs who wish to assert a cause of action grounded in a violation of 15 U.S.C. §§ 1639(a), 1639(b), or 1639(c), must do so within three years from the date on which the alleged violation first occurred. *See* 15 U.S.C. § 1640(e); *see also Simpson v. Wells Fargo Bank*, No. 15-cv-1487, 2016 WL 10570967, at *3, n.2 (S.D.N.Y. Dec. 15, 2016); *Kahraman v. Countrywide Home Loans, Inc.*, 886 F. Supp. 2d 114, 119, n.1 (E.D.N.Y. 2012).

Applying these standards, the Court finds that none of the Defendants can be properly categorized as a "mortgage originator" under Title XIV of the Dodd-Frank Act. As set forth above, the parties do not dispute that the loan, which was procured by Teignmouth, was commercial in nature, as the underlying note was "secured by a Building Mortgage." *See* Rubel Mot. Ex. 13 (copy of Teignmouth's Oct. 16, 2014 Building Loan Note, signed by Quinn) & 14 (copy of Teignmouth's Oct. 16, 2014 Mortgage, signed by Quinn). As such, the provisions of Dodd-Frank are inapplicable. *See* 15 U.S.C. §§ 1639(a)-(c); *see also Sundby v. Marquee Funding Group, Inc.*, No. 19-cv-00390, 2019 WL 3945445, at *5 (S.D. Cal. Aug. 21, 2019) (finding that the Dodd-Frank Act placed residential mortgage lending practices "under increased scrutiny").

Further, even if Plaintiff's claim were otherwise viable, it would still be time-barred by Dodd-Frank's three-year exception to its typical one-year statute of limitations for claims brought under 15 U.S.C. §§ 1639(a), 1639(b), or 1639(c). *Id.* at *7-8 (finding that causes of action for violations of §§ 1639(c), 1639b, and 1639c, "fall within the three-year exception" to Dodd-Frank's typical one-year statute of

limitations). Since the mortgage loan was executed on October 16, 2014, the longest possible timeframe for Quinn to assert a claim under RESPA expired on October 16, 2017; this lawsuit was not commenced until January 2020. *See* Compl; Am. Compl. For these reasons, this claim again fails as a matter of law.

Accordingly, Quinn has failed to state a claim against Defendants for violation of Title XIV of the Dodd-Frank Act, and the Court recommends that Defendants' motions to dismiss this cause of action be granted, and that the claim be dismissed with prejudice.

## C. **The Crosby Capital Defendants' Affirmative Defense**

The Crosby Capital Defendants further seek dismissal of Plaintiff's claims against them because Quinn allegedly "waived all claims and defenses to the Loan given by ABL One" when he personally guaranteed ABL's loan to Teignmouth. *See* Crosby Mem. at 9; Crosby Mot. Ex. A at 50-56. The procedural posture is unusual in that the Crosby Capital Defendants are using Plaintiff's waiver to preclude his claims against them – Quinn is not asserting the Guaranty as an affirmative defense.

Under New York law, "[w]here a guaranty states that it is absolute and unconditional, guarantors are generally precluded from raising any affirmative defense." *See Duval v. Albano*, No. 16-cv-7810, 2017 WL 30553157, at *13 (S.D.N.Y. Jul. 18, 2017) (quoting *HSH Nordbank Ag New York Branch v. Swerdlow*, 672 F. Supp. 2d 409, 418 (S.D.N.Y. 2009)); *LG Funding, LLC v. Florida Tilt, Inc.*, No. 15-cv-631, 2015 WL 4390453, at *3 (E.D.N.Y. Jul. 15, 2015). "[U]nconditional guarantees are enforceable if written in clear and unambiguous terms." *See HSH Nordbank Ag*

*New York Branch*, 672 F. Supp. 2d at 418. "[A] guarantor cannot assert defenses that it expressly waived in the Guaranty agreement." *See id.* A guarantor is also barred from raising any claims or counterclaims relating to the underlying debt. *See Compagnie Financiere de CIC et de L'Union Europeenne v. Merrill Lynch, Pierce, Fenner & Smith Inc.,* 188 F.3d 31, 35 (2d Cir. 1999); *see also Citibank, N.A. v. Plapinger,* 66 N.Y.2d 90, 95-6, 495 N.Y.S.2d 309, 312 (1985). Courts in this Circuit have held that parties to a guaranty may use its terms defensively against a guarantor whose claims are expressly prohibited by the language of a guaranty. *See Saud v. Bank of New York*, 929 F.2d 916, 920-21 (2d Cir. 1991); *see also Aghaeepour v. Northern Leasing Systems, Inc.*, No. 14-cv-5449, 2015 WL 7758894, at *8-9 (S.D.N.Y. Dec. 1, 2015).

Applying the above standards, the Court finds that Plaintiff should be barred from prosecuting his Amended Complaint against the Crosby Capital Defendants pursuant to the language of the Guaranty. Here, Quinn signed the Guaranty in support of ABL's loan to Teignmouth, and in doing so, "absolutely, unconditionally and irrevocably waive[d] any and all right to assert any defense, setoff counterclaim or crossclaim of any nature whatsoever with respect to this Guaranty or the obligations of the undersigned [Quinn] under this Guaranty or the obligations of any other person or party (including, without limitation, borrower) relating to this Guaranty or otherwise with respect to the Loan…." Crosby Mot. Ex. A at ¶ 12. Plaintiff's obligations under the Guaranty extended to ABL's "heirs, executors, administrators, legal representatives, successors and assigns…" *Id.* at ¶ 8.

Accordingly, Quinn is barred from asserting claims against the Crosby Capital Defendants by virtue of the language of the Guaranty, and the Court recommends that the Crosby Capital Defendants' motion to dismiss Amended Complaint be granted, and that the claim be dismissed with prejudice as to the Crosby Capital Defendants.

### D. <u>State Law Claims</u>

Having determined that Quinn's federal claims should be dismissed, the Court recommends declining to exercise supplemental jurisdiction over his state law claims. *See Kolari v. N.Y.-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) ("[A] district court may decline to exercise supplemental jurisdiction if it has dismissed all claims over which it has original jurisdiction." (internal quotation marks omitted)); *see also Quiroz v. U.S. Bank Nat'l Ass'n*, No. 10-cv-2485, 2011 WL 2471733, at *8 (E.D.N.Y. May 16, 2011) (recommending that the district court decline to exercise supplemental jurisdiction), *report and recommendation adopted*, 2011 WL 3471497 (E.D.N.Y. Aug. 5, 2011); *Itar-Tass Russian News Agency v. Russian Kurier, Inc.*, 140 F.3d 442, 448 (2d Cir. 1998) ("The discretion to decline supplemental jurisdiction is available only if founded upon an enumerated category of subsection 1367(c).").

Indeed, "[i]n the interest of comity, the Second Circuit instructs that 'absent exceptional circumstances,' where federal claims can be disposed of pursuant to Rule 12(b)(6) or summary judgment grounds, courts should 'abstain from exercising pendent jurisdiction.'" *Birch v. Pioneer Credit Recovery, Inc.*, No. 06-cv-6497, 2007 WL 1703914, at *5 (W.D.N.Y. June 8, 2007), *aff'd sub nom. Burch v. Pioneer Credit*

*Recovery, Inc.*, 551 F.3d 122 (2d Cir. 2008) (quoting *Walker v. Time Life Films, Inc.*, 784 F.2d 44, 53 (2d Cir. 1986), *cert. denied*, 476 U.S. 1159, 1159, 106 S. Ct. 2278, 2278 (1986)); *see also City of Chi. v. Int'l Coll. of Surgeons*, 522 U.S. 156, 173, 118 S. Ct. 523, 534 (1997) (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350, 108 S. Ct. 614, 619 (1988)) ("[T]he statute reflects the understanding that, when deciding whether to exercise supplemental jurisdiction, a 'federal court should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness and comity.'"). Accordingly, the Court respectfully recommends that Plaintiff's causes of action for: (1) fraud; (2) breach of contract; (3) negligent misrepresentation; (4) conversion; and (5) constructive trust, also be dismissed.

### E. **Leave to Replead**

Given that Quinn is proceeding in a *pro se* capacity, and because it is apparent at this juncture that further amendment would be futile, the Court recommends that he not be granted an additional opportunity to replead his claims in a Second Amended Complaint.

## IV. CONCLUSION

For the reasons set forth above, the Court respectfully recommends that Defendants' Motions be granted and that the Amended Complaint be dismissed with prejudice.

## V. OBJECTIONS

A copy of this Report and Recommendation is being served on Defendants by electronic filing on the date below. Defendants are directed to promptly serve a copy

of this Report and Recommendation on Plaintiff and file proof of service. Any objections to this Report and Recommendation must be filed with the Clerk of the Court within 14 days of receipt of this report. Failure to file objections within the specified time waives the right to appeal the District Court's order. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 72; *Ferrer v. Woliver*, No. 05-3696, 2008 WL 4951035, at *2 (2d Cir. Nov. 20, 2008); *Beverly v. Walker*, 118 F.3d 900, 902 (2d Cir. 1997); *Savoie v. Merchants Bank*, 84 F.3d 52, 60 (2d Cir. 1996).

Dated:      Central Islip, New York
            May 8, 2021

                                        /s/ Steven I. Locke
                                        STEVEN I. LOCKE
                                        United States Magistrate Judge